## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as Administrator of the Local 103, I.B.E.W. Health Benefit Plan, the Electrical Workers Pension Fund, Local 103, I.B.E.W., the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W., the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W., and the Electrical Industry Labor-Management Cooperation Trust, <br>                        Plaintiffs, <br> v. <br><br> NETVERSANT-NEW ENGLAND, INC., <br>                     Defendant, <br> and <br><br> Walsh Brothers, Incorporated, Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc. <br>           Reach and Apply Defendants. | CIVIL ACTION <br> NO. 04-10559NG |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RETRAINING
## ORDER/PRELIMINARY INJUNCTION

### STATEMENT OF CASE

This is an action brought by Plaintiff, Russell F. Sheehan, in his capacity as the

Administrator (the "Administrator") of five distinct trust funds, to enforce the terms of various

collective bargaining agreements, as interpreted and found binding upon Defendant Netversant-

New England, Inc. ("Netversant") by a judgment in the form of an arbitration decision which has

been enforced by a final judgment entered in *JCI Communications, Inc. d/b/a Netversant-New*

*England v. International Brotherhood of Electrical Workers Union, Local 103*, 2002 U.S. Dist.

LEXIS 16283 (D. Mass. 2002), *affirmed*, 324 F.3d 42 (1st Cir. 2003), and which found, *inter*

*alia*, that Netversant violated the terms of these collective bargaining agreements by failing to make contributions to these trust funds and file the required reports with these trust funds for all employees employed by Netversant who performed work within the scope of work clause of these collective bargaining agreements. Netversant has refused and failed to comply with the judgment by (1) failing to file the monthly payroll reports with the Administrator for each month beginning with October, 1998 to the present and failing to make payment of contributions in accordance with such reports and (2) failing to file project specific information required once the Arbitration Award was decided. The Administrator seeks injunctive relief to enjoin these violations of the Arbitration Award and to implement the first step of the Administrator's reach and apply action by restraining the Reach and Apply Defendants from paying Netversant.

STATEMENT OF FACTS

The Administrator is employed by the Board of Trustees of the following trust funds: the Electrical Workers Pension Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2), 29 U.S.C. §1002(2)); the Local 103, I.B.E.W. Health Benefit Plan (an "employee welfare benefit plan" within the meaning of ERISA §3(1), 29 U.S.C. §1002(1)), the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2), 29 U.S.C. §1002(2)); the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W. (an "employee welfare benefit plan" within the meaning of ERISA §3(1), 29 U.S.C. §1002(1)), and the Electrical Industry Labor-Management Cooperation Trust (hereinafter collectively the "Funds"). See Affidavit of Russell F. Sheehan ("Aff. Sheehan"), ¶1. The Funds are employee benefit plans which were established in accordance with various subsections of 29 U.S.C. §186(c) and are maintained by

2

employers and an employee organization within the meaning of §4(a) of ERISA, 29 U.S.C. §1003(a). Aff. Sheehan, ¶3.

Netversant signed and had filed with the Funds and LMCT a Letter of Assent in October 1998 by which it agreed to the terms of a collective bargaining agreement between the Electrical Contractors Association of Greater Boston, Inc. Boston Chapter NECA and Local 103, I.B.E.W. (the "Union"), which was succeeded by subsequent agreements (referred to hereinafter as the "Collective Bargaining Agreement(s)"). Aff. Sheehan, ¶5. The Collective Bargaining Agreements included a dispute resolution mechanism that culminated in an arbitration proceeding before an arbitration panel designated as the Joint Conference Committee and comprised of members representing both employers and the Union. Id. at ¶6.

In January, 2002, the Union initiated arbitration and complained that Netversant had breached the Collective Bargaining Agreements by, among other things, assigning work covered by the Collective Bargaining Agreements to employees who were not members of the Union and failing to pay the required contributions to the Funds and LMCT for all employees performing work within the scope of work provision of the Collective Bargaining Agreements in violation of such Collective Bargaining Agreements. Id. After a hearing, on February 4, 2002 the Joint Conference Committee issued an award (the "Arbitration Award") in favor of the Union on each and every one of the alleged violations of the Collective Bargaining Agreements. Id. at ¶6, Exhibit 1. The Arbitration Award was confirmed by a judgment entered in *JCI Communications, Inc. d/b/a Netversant-New England v. International Brotherhood of Electrical Workers Union, Local 103*, 2002 U.S. Dist. LEXIS 16283 (D. Mass. 2002) and affirmed by a final judgment entered on appeal by the United States Court of Appeals for the First Circuit and reported at 324

3

F.3d 42 (1st Cir. 2003). Id. at ¶6.

Under the Collective Bargaining Agreements, as interpreted and determined by the Arbitration Award, Netversant owes contributions for employees of Netversant that performed work within the scope of work provisions of the Collective Bargaining Agreements for the period October 1, 1998 until Defendant complied with the Collective Bargaining Agreement. Id. at ¶7. The Collective Bargaining Agreements and the Arbitration Award required Netversant to (a) make monthly contributions to the Funds and LMCT at specified rates and (b) provide monthly payroll reports listing all employees for whom contributions are owed and listing all hours worked by covered employees, as well as providing the other information required by the reporting form. Id. at ¶7. The Collective Bargaining Agreements required the monthly contributions and reports to arrive at the office of the Funds and LMCT by no later than the fifteenth (15th) day of the month following the month in which the hours were worked. Id. at ¶7, Exhibit 2. These reporting rules are also set forth in the Collection Policy adopted by the Boards of Trustees, to which each employer is bound under section 4.09 of the Collective Bargaining Agreements. Id. at ¶, Exhibit 3.

Since the Arbitration Award was affirmed on appeal, Netversant has refused to make file the reports and make any payment to the Funds and LMCT as required by the Arbitration Award despite repeated demand to do so. Id. at ¶8, Exhibit 4. The information contained on the monthly reports that Netversant failed to file with the Funds is used by the Funds to comply with the requirements of ERISA. Id. at ¶9. The information on the reports, such as employee information and contribution information, is used by the Funds' auditors in the preparation of the Funds' annual reports (Form 5500 series) required to be filed annually with the United States

4

Department of Labor in accordance with ERISA §104 (29 U.S.C. §1024). Id. As a result of Netversant's failure and continuing failure to file these reports, such information could not be included on these annual reports and will not be included on upcoming reports required to be filed in the near future. Id.

The information contained in the monthly reports that Netversant did not file with the Electrical Workers Pension Fund, Local 103, I.B.E.W. is used by that Fund's enrolled actuary to prepare actuarial reports to the Board of Trustees of that Fund which are used to determine funding needs. Id. at ¶10. As a result of Netversant's failure and continuing failure to file these reports, such information could not be included in the actuary's report. Id. The information contained in the monthly reports that Netversant failed to file with the Funds is used to determine eligibility of employees and their dependents or beneficiaries for benefits under the Electrical Workers Pension Fund, Local 103, I.B.E.W., Electrical Workers Deferred Income Fund, Local 103, I.B.E.W., and the Local 103, I.B.E.W. Health Benefit Plan. Id. at ¶11. As a result of Netversant's failure to file these reports, such employees and their dependents or beneficiaries may lose benefits to which they may otherwise have been entitled or at a minimum such eligibility will be delayed. Id. at ¶11.

Netversant owes the Funds and LMCT an estimated $2,000,000 for the period October 1, 1998 to the present under the Arbitration Award based upon estimated hours and contribution rates. Id. at ¶12. This estimate is based upon both an audit conducted by the Funds for the period July 1, 2000 through June 30, 2001 which indicated that 198,531 hours may have been performed by employees of Netversant in the scope of work provisions of the Collective Bargaining Agreements for that one year period and that Netversant itself reported aggregate

hours of 146,302 that were not previously reported. Id. at ¶12, Exhibits 5 and 6.

Netversant has breached the Collective Bargaining Agreements, as interpreted and determined by the Arbitration Award, by failing to: (a) submit monthly payroll reports for all covered employees of Netversant in a timely fashion; and (b) make the contributions required by the Arbitration Award for the period October 1, 1998 to the present and on an ongoing basis for all employees of Netversant that performed work within the scope of work provisions of the Collective Bargaining Agreements. Id. at ¶13.

The Collective Bargaining Agreements require an employer who becomes delinquent in the payment of contributions owed to the Funds and LMCT to furnish project specific records, including employment records and a current list of projects to include the names and addresses of the project owner, construction manager, general contractor, and the person for whom the employer has performed work, including each subcontractor or other person with whom Netversant has contracted or is under contract. Id. at 14. Netversant is required by the Collective Bargaining Agreements and the Arbitration Award to provide such information from October 1, 1998 to the present, and as a continuing obligation. Id. Netversant has failed to date to provide such information to the Funds and the LMCT. Id. As a result, the Funds and LMCT have been unable to attach and secure bonds, mechanic's liens, and engage in such other activities as would secure the obligation to the Funds and LMCT. The Funds therefore have and will continue to suffer immediate and irreparable harm if Netversant is not enjoined from further violating the Collective Bargaining Agreements by the Court's requiring Netversant to furnish the required project specific reports for each month beginning with October 1, 1998 through to the present and for as long thereafter as Netversant employs employees working within the scope

6

of work clause of the Collective Bargaining Agreements. Id.

Netversant's failure to produce the payroll reports and other records required pursuant to the Collective Bargaining Agreements, the Arbitration Award, and the Collection Policy of the Trustees of the Funds and LMCT, has prevented the Funds from crediting employees with hours of service and from seeking to collect from other sources, such as by attachment of interests in contracts or making claims under payment bonds and from providing information to bonding and surety companies about the Administrator's claim. Id. at 15. The Funds and LMCT will suffer immediate and irreparable harm if the Defendant is not enjoined from further violating the Collective Bargaining Agreements by the Court's requiring it to furnish the required monthly reports for each month beginning with October 1, 1998 through to the present and for as long thereafter as Netversant employs employees working within the scope of work clause of the Collective Bargaining Agreements. Id. at 16. Such failure by Netversant to provide these reports results in information omitted from annual reports, loss of eligibility of employees and their dependents and beneficiaries, and the inability of the Funds and LMCT to adequately project funding requirements and related expenses.

Netversant is currently working or has recently worked as a subcontractor to Defendants Walsh Brothers, Incorporated, Daisy Electric, Inc., Maiuri Electrical Corporation, and Partners HealthCare Sytem, Inc. (collectively the "Reach and Apply Defendants"), and these entities still owe or will owe in the future Netversant for work performed for them. Id. at ¶17. The Funds and LMCT will suffer immediate and irreparable harm if the Reach and Apply Defendants pay Netversant or its agents, successors, parent company, or assigns on its contracts for the work that has been and/or is being performed by Netversant since Netversant has refused and continues to

refuse to pay its obligations to the Funds and LMCT under the final judgment and, on information and belief, there exists no other means by which the Funds and LMCT at present can attain satisfaction of contributions owed under the Arbitration Award. Id. at ¶18, 24.

An employer's failure to timely make required contributions adversely affects the Funds' and LMCT's financial integrity. Lost contributions mean lost investment income. Id. at ¶19. Unpaid contributions also adversely affect the Funds' actuarial soundness because, in many instances, the Funds continue to provide benefits or incur obligations to provide benefits to employees and their beneficiaries. Consequently, Netversant's failure to pay the Funds the amounts due pursuant to the Arbitration Award seriously undermines the Funds' ability to meet their obligations to participants and beneficiaries. Id. at ¶20. The longer it takes to make the Funds whole with the amounts due to it, the more investment income is lost to the Funds and LMCT, the more expenses incurred, all to the detriment of the Funds's participants and their beneficiaries. Id. at ¶21. On information and belief, Netversant is undercapitalized; it leases its vans and leases its office and warehouse space. Id. at ¶22. If the Funds and LMCT are deprived of the amounts due to Netversant by the Reach and Apply Defendants, it is unlikely that Netversant by itself will be able to satisfy the expected judgment of $2,000,000, plus additional interest, statutory assessments, costs and attorneys fees. Id. at ¶23. The Funds and their participants and beneficiaries will suffer the loss of benefits and income. Id.

8

## ARGUMENT

**I.    THE ADMINISTRATOR IS ENTITLED TO INJUNCTIVE RELIEF UNDER RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND AS TO THE FUNDS UNDER ERISA §502(a)(3).**

### A.    Rule 65 Of The Federal Rules Of Civil Procedure And ERISA §502(a)(3) As To The Funds Authorizes This Court To Grant The Requested Injunctive Relief.

A temporary restraining order and/or preliminary injunction is appropriate where (1) plaintiff demonstrates a likelihood of success on the merits, (2) there is a potential that plaintiff will suffer irreparable harm, (3) the hardship that plaintiff will sustain without the injunction is greater than any hardship that the defendant might suffer because of the injunction, and (4) granting the injunction weighs in favor of the public interest. Phillip Morris v. Harshbarger, 159 F.3d 670, 673 (1st Cir. 1998). "Likelihood of success is the touchstone of the preliminary injunction inquiry." Id. In this case, the Administrator seeks to enforce payment of contributions and provision of reports that have already been awarded and ordered in the Arbitration Award, a final judgment, against Netversant.

In addition, the Administrator's action in behalf of the Funds is brought pursuant to ERISA §502(a)(3), which provides an express injunctive remedy and states:

> A civil action may be brought...by a...fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title [title I] or the terms of the plan.

The Administrator's action seeks to enforce contributions owed under the Collective Bargaining Agreements pursuant to ERISA §515, which is part of title I. Courts interpreting ERISA §502(a)(3) have established broad federal common law equitable remedies to protect employee

9

benefit plans, including but not limited to injunctive relief. Many of these courts have granted

the relief sought here by the Administrator. See e.g. Laborers Fringe Ben. Funds-Detroit &

Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352-1353 (6th Cir. 1981);

Anthony v. Texaco, Inc., 803 F.2d 593 (10th Cir. 1986); National Shopmen Pension Fund v.

Burtman Iron Works, Inc., 148 F. Supp.2d 60, 67 (D.D.C. 2001)(enjoining defendants from

failing to submit required contributions and remittance reports in accordance with bargaining

agreement); Southern Electrical Health Fund, ___ F. Supp.2d ___, 2003 U.S. Dist. LEXIS 24396

(M.D. Tenn. 2003)(converting temporary injunction requiring payment of contributions and

filing of monthly payroll reports into permanent injunction); Demolition Workers Union, Local

95 v. Mackroyce Constr. Corp., ___F. Supp.2d ___, 2000 U.S. Dist. LEXIS 3548 (S.D.N.Y.

2000)(entering preliminary injunction requiring contributions to be deposited in registry of

court); Onadaga County Laborers' Health, Welfare, Pension, Annuity & Training Funds v. Sal

Masonry Contractors, Inc., ___ F. Supp. ___, 1992 U.S. Dist. LEXIS 4715 (N.D.N.Y.

1992)(entering permanent injunction requiring defendant to make contributions in accordance

with agreement); Laborers Intern. Union of America National Pension Fund v. Pacific Ascorp.,

1990 U.S. Dist. LEXIS 19030 (D.D.C. 1990); Central States Southeast and Southwest Areas

Pension Fund et. al. v. Jack Cole-Dixie Highway Company, Inc., and Admiral Merchants Motor

Freight, Inc., 511 F. Supp. 38, 43 (D. Minn. 1980), aff'd, 642 F.2d 1122 (8th Cir. 1981). Finally,

ERISA §515 demonstrates that Congress intended plan fiduciaries to be able to obtain remedies

such as injunctions to collect delinquent contributions. ERISA §515 provides:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such contributions in
> accordance with the terms and conditions of such plan or such agreement.

ERISA §§502(a)(3) and 515 make clear that Congress was concerned about employers failing to make contributions to trust funds for employee benefits and intended to protect the funds by legislative action.  In fact, a clear statement of Congressional purpose in enacting this provision is contained in the legislative history:

> The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection.

Staff of Senate Comm. on Labor and Human Resources, 96th Cong. 2nd Sess., S. 1076. The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration (Comm. Spring 1980) at 43-44.  By passing ERISA §502(a)(3), Congress sought to "provide the full range of legal and equitable remedies available in both state and federal courts . . . for recovery of benefits due to participants." H.R. Rep. No. 93-533, 93rd Cong., 2d Sess. (1974), 17 reprinted in U.S.C.C.A.N, 4655.  By establishing new remedies under this section, Congress made it clear that employers will not be permitted to circumvent or ignore their funding, payment and other obligations under the Act.  Laborers Fringe Benefit Funds - Detroit and Vicinity, 640 F.2d at 1352.  On the basis of the plain language of the statute and the attendant legislative history, §502(a)(3) is unambiguous evidence of Congress' express intent to permit federal courts to issue injunctions and grant other equitable relief as is necessary to collect delinquent contributions due to employee benefit plans. See Id.  Thus there is ample authority under ERISA §502(a)(3) and under Rule 65 for the granting of the injunctive relief sought here by the Administrator.

**B.    There Is A Substantial Likelihood That The Administrator Will Prevail On The Merits Of His Claims.**

      **1.    The Arbitration Award is enforceable by the Administrator against Netversant under principles of offensive issue preclusion.**

As already indicated, there is a final judgment in the form of an Arbitration Award and two court decisions enforcing it. Aff. Sheehan, ¶6, Exhibit 1. The Arbitration Award, which was issued on February 4, 2002, interpreted the Collective Bargaining Agreements to require Netversant to make contributions to the Funds and LMCT for all covered employees. The Arbitration Award required Netversant to file the required reports beginning October 1, 1998 and thereafter which reflected all covered employees. While the Administrator was not a party to the Arbitration Award, he may enforce the judgment against Netversant under principles of issue preclusion. Under federal law, "issue preclusion" or "collateral estoppel" prevents a litigant from re-litigating issues that had previously already been litigated and for which a final judgment was entered. An arbitration award is generally given preclusive effect as to all issues heard by the arbitrators. *Apparel Art Intern., Inc. v. Amertex Enterprises LTD., et al.*, 48 F.3d 576, 585 (1st Cir. 1995). There the court stated:

> A judgment by a federal court confirming an arbitration award under the Federal Arbitration Act has "the same force and effect, in all respects, as, and [is] subject to all the provisions of law relating to, a judgment in an action . . . ." *9 U.S.C § 13* (1988). Therefore, when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award.

*Id.* There are four essential elements which must be present for the successful application of issue preclusion: (1) the determination must be over an issue which was actually litigated in the first forum; (2) that determination must result in a valid and final

judgment; (3) the determination must be essential to the judgment which is rendered by, and in, the first forum; and (4) the issue before the second forum must be the same as the one in the first forum. *NLRB v. Donna-Lee Sportswear Co., Inc., et al.*, 836 F.2d 31(*1st* Cir. 1987). *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).

All of these requirements are satisfied here. The issue of whether Netversant was required by the Collective Bargaining Agreements to contribute to the Funds and LMCT for all of its employees working within the scope of work clause, including members of Local 2222, was the central issue of the arbitration. Both Judge Zobel, in confirming the Arbitration Award, and the First Circuit in affirming Judge Zobel's decision, addressed all of the defenses raised by Netversant and held that they were either litigated before the arbitrators or should have been litigated before the arbitrators and could not be re-litigated in the courts. JCI Communications, Inc. d/b/a Netversant-New England v. International Brotherhood of Electrical Workers Union, Local 103, 2002 U.S. Dist. LEXIS 16283 (D. Mass. 2002), aff'd, 324 F.3d 42 (1st Cir. 2003). If Netversant had complied with the remedy set forth in the Arbitration Award, this suit would not have been necessary. Courts have precluded a defendant under principles of collateral estoppel from relitigating its obligation to make contributions to benefit funds with the trustees of such benefit funds where it lost that issue in arbitration with the union. See American Federation of Television & Radio Artists Health & Retirement Funds v. WCCO Television, Inc., 934 F.2d 987 (8th Cir. 1991). Therefore, since the liability of Netversant has been established by the Arbitration Award as well as the requirement that

it submit the reports requested here by the Administrator, the only issue to litigate is the amount of the contributions, which can be determined when Netversant files the required reports. Based upon aggregate hours submitted, this amount is estimated to approximate $2,000,000. Aff. Sheehan, ¶12.

> 2.    **The reach and apply remedy afforded by M.G.L. c. 214, §3(6) is appropriate for securing and collecting a judgment under Rule 64 of the Federal Rules of Civil Procedure.**

Reach and apply is a remedy available to the Administrator as an applicable state remedy under Federal Rules of Civil Procedure, Rule 64, and in accordance with the Court's supplemental jurisdiction over M.G.L. c. 214, §3(6). Rule 64 provides that state law remedies for seizure of property to secure satisfaction of a judgment ultimately to be entered in an action are available in actions brought in the Federal Courts:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

Rule 64 applies to all actions, whether based upon a statute or common law. <u>See</u> Wright and Miller, <u>Federal Practice and Procedure,</u> §2931.

Reach and apply relief under M.G.L. c.214, §3(6) is just such an equitable remedy. The statute permits creditors to initiate reach and apply actions to obtain a debtor's right, title or

interest in property, legal or equitable, which cannot be reached by attachment or taken on execution to satisfy an obligation. It affords creditors a method of reaching property of a defendant debtor they could not otherwise reach. See Boston Five Cents Sav. Blank v. Trustees of Methodist Religious Soc. in Boston, 4 N.E.2d 315, 318, 295 Mass. 480 (1936). It provides another means of pre-judgment security and affords a creditor a means by which to secure satisfaction of the judgment ultimately to be entered. "In an action to reach and apply, the court must engage in a two-step process to establish (1) the indebtedness of the defendant and (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." GMAC v. Camilleri Bros. Chevrolet of Holyoke, Inc., 188 F. Supp.2d 73, 76 (D. Mass. 2001). In the present case, the Administrator satisfies both prongs of the two-step inquiry as to the Reach and Apply Defendants. (See supra.; Aff. Sheehan, ¶17). To satisfy the statute's second requirement, the Administrator must show that the potential amounts due to Netversant from the Reach and Apply Defendants are by nature incapable of being attached or taken on execution in a legal action. Massachusetts Elec., 462 N.E.2d at 1372. There is no question that this requirement is also met. Recovery on the indebtedness of one party to another is intangible. Like corporate stock, accounts receivable are subject to a reach and apply action.

Given the absence of liability insurance to cover the amount due to the Funds and LMCT, and the magnitude of Netversant's debt, reach and apply is especially appropriate in this case. It is unlikely the judgment will ever be paid if the Funds and LMCT cannot reach the monies due or to become due from the Reach and Apply Defendants to Netversant. Denying the motion will clearly prejudice the Funds and the LMCT who will have no protection from Netversant's continued refusal to adhere to the Arbitration Award.

**C.    The Funds And LMCT Will Suffer Irreparable Harm Unless The Court Grants Plaintiffs A Temporary Restraining Order And Preliminary Injunction.**

The Arbitration Award issued February 4, 2002.  Since then, Netversant has refused to file the monthly payroll reports and project specific reports, or pay anything portion of the estimated $2,000,000 in contributions owed, even after two court decisions and a final judgment was entered enforcing the Arbitration Award.  The Administrator is not aware of any liability or other insurance which will be available to satisfy the judgment for the delinquent contributions, plus interest, liquidated damages, costs and attorneys' fees, and Netversant certainly appears to be undercapitalized, leasing all of its office and factory space, as well as its fleet of vans.  Aff. Sheehan, ¶18, 22, 24.  It is inexcusable that Netversant has refused and continues to refuse to produce the monthly payroll reports despite repeated demand to do so (Aff. Sheehan, ¶8, 9) in violation of the Arbitration Award, the Collective Bargaining Agreements, and 18 U.S.C. §1027.

The Funds cannot comply with their obligations under ERISA to notify employees and credit hours, where applicable, without the filing of the required reports.  Such employees may lose eligibility or rights under the Funds as a result, and the Funds continue to incur potential unknown liabilities that affect the actuarial soundness of these Funds without the funding that Netversant is obligated to provide.  Aff. Sheehan, ¶15-24.  The Funds and LMCT will suffer irreparable harm if the project specific reports are not timely provided because they allow the Administrator to identify possible other sources of recovery, such as bonds, mechanics' liens, attachments and accounts receivable.  Netversant has demonstrated that it seeks to walk away from the final judgment of the Arbitration Award, which may explain why it refuses to provide the information that can be used to force it to comply.

16

Because Netversant has demonstrated that it will not pay the Funds and LMCT, unless the Reach and Apply Defendants are enjoined from disbursing the monies and ordered to pay the monies directly to the Funds and LMCT, the Administrator will have no sources from which to collect the contributions owed under the Arbitration Award.

**D.**     **The Harm To The Funds And The LMCT Far Outweighs Any Harm To Netversant Or To The Reach And Apply Defendants If This Court Grants The Requested Injunctive Relief.**

       **1.**     **Netversant will not be harmed by requiring it to comply with its obligations under the Collective Bargaining Agreements that have been established by a final judgment and two court decisions.**

Netversant had its day in court: once in the arbitration, once before Judge Zobel, and once before the First Circuit. It lost in each forum. It is no legal harm to Netversant to require it to file the required monthly and project specific payroll reports and to pay to the Funds or LMCT, or into the Court pursuant to Rule 67, the contributions owed to the Funds and LMCT. The Funds and LMCT, and the employees of Netversant who cannot be notified of their eligibility, have and will continue to be harmed until Netversant is enjoined from its continued violation of the Collective Bargaining Agreements.

       **2.**     **Neither Netversant nor the Reach and Apply Defendants will be significantly harmed by the issuance of an injunction while the Funds and LMCT will be significantly harmed if monies are paid to Netversant by the Reach and Apply Defendants.**

There can be no significant prejudice or harm to Netversant or the Reach and Apply Defendants in ordering the Reach and Apply Defendants to refrain from disbursing the monies to persons other than the Funds or to pay over to the Funds the amount it would otherwise owe Netversant. A final judgment already exists requiring Netversant to pay the Funds and LMCT. Netversant has already demonstrated that it has no intention of paying the Funds and LMCT,

having refused to pay any portion of the judgment for over two years. Without the requested injunction, it is likely that the Reach and Apply Defendants will have paid over all amounts owed to Netversant, or Netversant will have encumbered such amounts, thus in effect rendering the Administrator's reach and apply action meaningless. The Funds' and LMCT's fiscal integrity will be negatively impacted if the requested relief is not granted.

**E.    The Public Interest Weighs In Favor Of Granting The Requested Relief.**

In passing ERISA, Congress clearly indicated its intention to protect the interests of participants and beneficiaries in multiemployer benefit plans from inadequately funded plans. See 29 U.S.C. §1001(a)(ERISA's purpose is to secure "the soundness and stability of plans with respect to adequate funds to pay promised benefits"). With respect to the timely filing of monthly payroll reports and project specific information, because this information is used by the Funds in the filing of their annual report (Form 5500 series) with the U.S. Department of Labor, Congress made it a crime to knowingly conceal or omit information required to be included on payroll reports to employee benefit plans, thereby signaling the importance of timely production of such information to the public interest. See 18 U.S.C. §1027; U.S. v. S & Vee Cartage Co., Inc., 704 F.2d 914 (6th Cir. 1983), cert. denied, 464 U.S. 935 (1983). Here, Congress' intention and the public's interest in protecting against inadequately funded multiemployer benefit plans are served by granting the requested injunction enjoining further violation by Netversant of the Collective Bargaining Agreements and the Arbitration Award by requiring it to pay the required contributions to the Administrator or into the Court pursuant to Rule 67, producing the required monthly payroll and project specific reports, and prohibiting the Reach and Apply Defendants from disbursing any monies due or to become due to Netversant to anyone other than the

Administrator.  Granting the Administrator the requested injunctive relief will minimize the losses that the Funds and LMCT may incur, which is in the public's best interest.

## CONCLUSION

For the foregoing reasons, the Administrator's Motion should be allowed.

Respectfully submitted,

RUSSELL F. SHEEHAN, as Administrator
of the Local 103, I.B.E.W. Health Benefit
Plan, the Electrical Workers Pension Fund,
Local 103, I.B.E.W., the Electrical Workers
Deferred Income Fund, Local 103, I.B.E.W.,
the Joint Apprenticeship and Training Trust
Fund, Local 103, I.B.E.W., and the
Electrical Industry Labor-Management
Cooperation Trust,

By their attorney,

David W. Healey (BBO# 548262)
DAVID W. HEALEY & ASSOCIATES
77 Franklin Street, Suite 805
Boston, MA  02110
(617) 457-3131

## CERTIFICATE OF SERVICE

I, David W. Healey, hereby certify that on April 12, 2004 I caused to be served a copy of this instrument by mailing same first class mail, postage prepaid, to Robert Feldman, President, NetVersant-New England, Inc., 100 Franklin Street, Boston, MA  02110.

David W. Healey