UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
RUSSELL F. SHEEHAN, as Administrator )
of the Local 103, I.B.E.W. Health Benefit )   CIVIL ACTION
Plan, the Electrical Workers Pension Fund, )  NO. 04-10559NG
Local 103, I.B.E.W., the Electrical Workers )
Deferred Income Fund, Local 103, I.B.E.W. )
the Joint Apprenticeship and Training Trust )
Fund, Local 103, I.B.E.W., and the )
Electrical Industry Labor-Management )
Cooperation Trust, )
                    Plaintiffs, )
v. )
)
NETVERSANT-NEW ENGLAND, INC., )
                    Defendant, )
v. )
)
Walsh Brothers, Incorporated, )
Maiuri Electrical Company, and )
Daisy Electric, Inc. )
     Reach and Apply Defendants. )
)
                  Defendant. )

## AFFIDAVIT OF RUSSELL F. SHEEHAN

I, Russell F. Sheehan, being first duly sworn, hereby depose and say of my own personal knowledge and belief:

1.     I am the Administrator employed by the Board of Trustees of the following trust funds: the Electrical Workers Pension Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2), 29 U.S.C. §1002(2)); the Local 103, I.B.E.W. Health Benefit Plan (an "employee welfare benefit plan" within the meaning of ERISA §3(1), 29 U.S.C. §1002(1)), the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2), 29 U.S.C. §1002(2)); the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W. (an "employee welfare benefit plan" within the meaning of ERISA §3(1), 29 U.S.C. §1002(1)), and the Electrical Industry Labor-Management Cooperation Trust (hereinafter collectively the "Funds"). The regular place

of business of the Funds and the LMCT is at 256 Freeport Street, Boston, Massachusetts. I have served in the capacity of Administrator since 1995.

2. Defendant Netversant-New England, Inc., ("Netversant" or "Defendant") has a listed business address with the Funds and LMCT of 100 Franklin Street, 5th Floor, Boston, Massachusetts. Netversant was formerly known as JCI Communcations, Inc. before its name was changed to Netversant - New England, Inc. JCI Communications, Inc. was formerly known as Jemd Com, Inc. before its name was changed to JCI Communciations, Inc.

3. The Funds are employee benefit plans which were established in accordance with various subsections of 29 U.S.C. §186(c) and are maintained by employers and an employee organization within the meaning of §4(a) of ERISA, 29 U.S.C. §1003(a).

4. In my capacity of Administrator for the Funds and the LMCT, I am authorized by the Boards of Trustees of the Funds and LMCT to collect contributions owed to the respective Funds and LMCT.

5. Netversant signed and had filed with the Funds and LMCT a Letter of Assent in October 1998 by which it agreed to the terms of a collective bargaining agreement between the Electrical Contractors Association of Greater Boston, Inc. Boston Chapter NECA and Local 103, I.B.E.W. (the "Union"), which was succeeded by subsequent agreements (referred to hereinafter as the "Collective Bargaining Agreement(s)").

6. The Collective Bargaining Agreements included a dispute resolution mechanism that culminated in an arbitration proceeding before an arbitration panel designated as the Joint Conference Committee and comprised of members representing both employers and the Union. In January, 2002, the Union initiated arbitration and complained that Netversant had breached the Collective Bargaining Agreements by, among other things, assigning work covered by the Collective Bargaining Agreements to employees who were not members of the Union and failing

to pay the required contributions to the Funds and LMCT for all employees performing work within the scope of work provision of the Collective Bargaining Agreements in violation of such Collective Bargaining Agreements. After a hearing, on February 4, 2002 the Joint Conference Committee issued an award (the "Arbitration Award") in favor of the Union on each and every one of the alleged violations of the Collective Bargaining Agreements. A true copy of the Arbitration Award without the appended exhibits is attached hereto and incorporated herein by reference as Exhibit 1. The Arbitration Award was confirmed by a judgment entered in *JCI Communications, Inc. d/b/a Netversant-New England v. International Brotherhood of Electrical Workers Union, Local 103*, 2002 U.S. Dist. LEXIS 16283 (D. Mass. 2002) and affirmed by a final judgment entered on appeal by the United States Court of Appeals for the First Circuit and reported at 324 F.3d 42 (1st Cir. 2003).

7. Under the Collective Bargaining Agreements, as interpreted and determined by the Arbitration Award, Defendant Netversant owes contributions for employees of Netversant that performed work within the scope of work provisions of the Collective Bargaining Agreements for the period October 1, 1998 until Defendant complied with the Collective Bargaining Agreement. The Collective Bargaining Agreements and the Arbitration Award required Netversant to (a) make monthly contributions to the Funds and LMCT at specified rates and (b) provide monthly payroll reports listing all employees for whom contributions are owed and listing all hours worked by covered employees, as well as providing the other information required by the reporting form. The Collective Bargaining Agreements required the monthly contributions and reports to arrive at the office of the Funds and LMCT by no later than the fifteenth (15th) day of the month following the month in which the hours were worked. A copy of the provisions concerning the filing of monthly reports and the date of payment is attached hereto and incorporated herein by reference as Exhibit 2. These reporting rules are also set forth

in the Collection Policy adopted by the Boards of Trustees, to which each employer is bound under section 4.09 of the Collective Bargaining Agreements. A true copy of the Collection Policy of the Trustees is attached hereto and incorporated herein as Exhibit 3.

8. Since the Arbitration Award was affirmed on appeal, I have caused to be made repeated demands for the filing of the required reports by the Defendant and payment of contributions as required by the Arbitration Award. Copies of letters sent to the Defendant are attached hereto and incorporated herein by reference as Exhibit 4. Defendant has refused to file the required reports or may any payment as required by the Arbitration Award despite the entry of a final judgment concerning the Arbitration Award.

9. The information contained on the monthly reports that Defendant did not file with the Funds is used by the Funds to comply with the requirements of ERISA. The information on the reports, such as employee information and contribution information, is used by the Funds' auditors in the preparation of the Funds' annual reports (Form 5500 series) required to be filed annually with the United States Department of Labor in accordance with ERISA §104 (29 U.S.C. §1024). As a result of Defendant's failure and continuing failure to file these reports, such information could not be included on these annual reports and will not be included on upcoming reports required to be filed in the near future.

10. The information contained in the monthly reports that Defendant did not file with the Electrical Workers Pension Fund, Local 103, I.B.E.W. is used by that Fund's enrolled actuary to prepare actuarial reports to the Board of Trustees of that Fund which are used to determine funding needs. As a result of Defendant's failure and continuing failure to file these reports, such information could not be included in the actuary's report.

11. The information contained in the monthly reports that Defendant did not file with the Funds is used to determine eligibility of employees and their dependents or beneficiaries for

benefits under the Electrical Workers Pension Fund, Local 103, I.B.E.W., Electrical Workers Deferred Income Fund, Local 103, I.B.E.W., and the Local 103, I.B.E.W. Health Benefit Plan. As a result of Defendant's failure to file these reports, such employees and their dependents or beneficiaries may lose benefits to which them may otherwise have been entitled or at a minimum such eligibility will be delayed.

12. The Defendant owes the Funds and LMCT an estimated $2,000,000 for the period March 1, 1998. This estimate is based upon the following information received by the Funds and LMCT. The first is an audit conducted by the Funds for the period July 1, 2000 through June 30, 2001 which indicated that 198,531 hours may have been performed by employees of Defendant in the scope of work provisions of the Collective Bargaining Agreements for that one year period. A true copy of the audit report without attachments is attached hereto and incorporated herein by reference as Exhibit 5. Defendant itself reported that 146,302 hours had been worked and not previously reported for the period November 1, 1998 through December 6, 2003. A true copy of a letter dated January 9, 2004 from the Defendant is attached hereto and incorporated herein by reference as Exhibit 6.

13. The Defendant Netversant has breached the Collective Bargaining Agreements, as interpreted and determined byArbitration Award, by failing to: (a) submit monthly payroll reports for all covered employees of Netversant in a timely fashion; and (b) make the contributions required by the Arbitration Award for the period October 1, 1998 to the present and on an ongoing basis for all employees of Netversant that performed work within the scope of work provisions of the Collective Bargaining Agreements.

14. The Collective Bargaining Agreements requires an employer who becomes delinquent in the payment of contributions owed to the Funds and LMCT to furnish project specific records, including employment records and a current list of projects to include the names

and addresses of the project owner, construction manager, general contractor, and the person for whom the employer has performed work, including each subcontractor or other person with whom Defendant has contracted or is under contract. Netversant is required by the Collective Bargaining Agreements and the Arbitration Award to provide such information from October 1, 1998 to the present, and as a continuing obligation. Netversant has failed to date to provide such information to the Funds and the LMCT. As a result, the Funds and LMCT have been unable to attach and secure bonds, mechanic's liens, and engage in such other activities as would secure the obligation to the Funds and LMCT. The Funds therefore will suffer immediate and irreparable harm if Netversant is not enjoined from further violating the Collective Bargaining Agreements by the Court's requiring Netversant to furnish the required project specific reports for each month beginning with October 1, 1998 through to the present and for as long thereafter as Netversant employs employees working within the scope of work clause of the Collective Bargaining Agreements.

15. Defendant Netversant's failure to produce the payroll reports and other records required pursuant to the Collective Bargaining Agreements, the Arbitration Award, and the Collection Policy of the Trustees of the Funds and LMCT, has prevented the Funds from crediting employees with hours of service and from seeking to collect from other sources, such as by attachment of interests in contracts or making claims under payment bonds and from providing information to bonding and surety companies about the Plaintiffs' claims.

16. The Funds and LMCT will suffer immediate and irreparable harm if the Defendant is not enjoined from further violating the Collective Bargaining Agreements by the Court's requiring it to furnish the required monthly reports for each month beginning with October 1, 1998 through to the present and for as long thereafter as Netversant employs employees working within the scope of work clause of the Collective Bargaining Agreements.

Such failure by Netversant to provide these reports results in information omitted from annual reports, loss of eligibility of employees and their dependents and beneficiaries, and the inability of the Funds and LMCT to adequately project funding requirements and related expenses.

17. On information and belief, Defendant is currently working or has recently worked as a subcontractor to Defendants Walsh Brothers, Incorporated, Daisy Electric, Inc. and Maiuri Electrical Corporation (collectively the "Reach and Apply Defendants"), and that these entities still owe or will owe in the future Defendant for work performed for them.

18. The Funds and LMCT will suffer immediate and irreparable harm if the Reach and Apply Defendants pay Netversant or its agents, successors, or assigns on its contracts for the work that has been and/or is being performed by Netversant since Netversant has refused and continues to refuse to pay its obligations to the Funds and LMCT under the judgment and, on information and belief, there exists no other means by which the Funds and LMCT at present can attain satisfaction of contributions owed under the Arbitration Award.

19. An employer's failure to make required contributions timely adversely affects the Funds' and LMCT financial integrity. Lost contributions mean lost investment income.

20. Unpaid contributions also adversely affect the Funds' actuarial soundness because, in many instances, the Funds continue to provide benefits or incur obligations to provide benefits to employees and their beneficiaries. Consequently, Netversant's failure to pay the Funds the amounts due pursuant to the Arbitration Award seriously undermines the Funds' ability to meet their obligations to participants and beneficiaries.

21. The longer it takes to make the Funds whole with the amounts due to it, the more investment income is lost to the Funds and LMCT, the more expenses incurred, all to the detriment of the Funds's participants and their beneficiaries.

22. On information and belief, Netversant is undercapitalized; it leases its vans and leases its office and warehouse space.

23. If the Funds and LMCT are deprived of the amounts due to Netversant by the Reach and Apply Defendants, it is unlikely that Netversant by itself will be able to satisfy the expected judgment of $2,000,000, plus additional interest, statutory assessments, costs and attorneys fees. The Funds and their participants and beneficiaries will suffer the loss of benefits and income.

24. I have no knowledge of any liability insurance which would be available to pay any judgment the Funds and LMCT are awarded in this litigation.

Signed and sworn to under the pains and penalties of perjury this 7th day of April, 2004.

_____
Russell F. Sheehan, Administrator