UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NETVERSANT-NEW ENGLAND, INC. and )<br>Walsh Brothers, Incorporated, Maiuri Electrical )<br>Company, Daisy Electric, Inc., and Partners )<br>Healthcare Systems, Inc., )<br>)<br>Defendants. )<br>) | Civil Action No.  04-10559 (NG) |

## AFFIDAVIT OF ROBERT N. FELDMAN

I, Robert N. Feldman, being duly sworn, do hereby depose and say as follows:

1. I am currently the Executive Vice President for NetVersant-New England ("NetVersant" or the "Company"). I have been employed by NetVersant or its predecessors since September of 1993.

2. I am familiar with the underlying dispute between and among the International Brotherhood of Electrical Workers Union, Local 103 ("Local 103"), Local 2222 and NetVersant that has given rise to the instant litigation and have knowledge of the facts set forth herein as an authorized representative of the Company.

3. NetVersant is a telecommunications service company. In 1998, the Company decided that it wanted to compete to do work on construction cable and data voice projects in the Greater Boston, Massachusetts area. Such work was regularly performed by members of Local 103. As a result, in 1998, the Company approached Local 103 about NetVersant's interest in becoming a signatory to the collective bargaining agreement between Local 103 and the Electrical Contractors Association of Greater Boston.

4. Since the collective bargaining agreement between Local 103 and the Electrical Contractors Association of Greater Boston covered work that was being performed by Local 2222 employees of the Company, the Company told Local 103 that it intended to continue to use its Local 2222 to perform jobs traditionally related to telecommunications systems and software and therefore, the Company would only agree to become a signatory to the collective bargaining agreement between Local 103 and the Electrical Contractors Association of Greater Boston if Local 103 would enter into a separate Jurisdictional Agreement which would explicitly set forth how work would be allocated between members of Local 2222 and Local 103.

5. In an effort to resolve this jurisdictional dispute that would arise if the Company became a signatory to the collective bargaining agreement between Local 103 and the Electrical Contractors Association of Greater Boston, NetVersant entered into negotiations with the International Brotherhood of Electrical Workers Union (the "International"), represented by Frank J. Carroll, the International's Vice President for the 2nd District, Local 103, represented by Business Manager Paul Ward, and Local 2222, represented by Business Manager Myles J. Calvey.

6. In October 1998, after extensive negotiations with Mr. Carroll, Mr. Ward and Mr. Calvey, NetVersant entered into a Jurisdictional Agreement with the International, Local 103 and Local 2222 that, among other things, explicitly set forth how work would be assigned between members of Local 103 and Local 2222.

7. The Jurisdictional Agreement also required NetVersant to transfer all cable installers hired after October 1, 1997 from Local 2222 to Local 103 effective as of the close of business on October 3, 1998. As a result of this provision of the Jurisdictional Agreement, ten members of Local 2222 became members of Local 103.

8.  At this same time, on or about October 1, 1998, based upon representations by Mr. Ward, on behalf of Local 103, that the Jurisdictional Agreement would be honored by Local 103, NetVersant entered into a Letter of Assent with Local 103 by which the Company agreed to the terms of the Collective Bargaining Agreement between Local 103 and the Electrical Contractors Association of Greater Boston.

9.  NetVersant, the International, Local 103 and Local 2222 operated in accordance with the terms of the Jurisdictional Agreement for more than three years – from October, 1998 until January, 2002.  During this time period, the International, Local 103 or Local 2222 never raised any objection to the Company's assignment of work to members of Local 103 and Local 2222 in accordance with the Jurisdictional Agreement.

10. In January, 2002, Local 103 for the first time raised an objection to NetVersant allocating work to members of Local 103 and Local 2222 in accordance with the Jurisdictional Agreement.  At this time, Local 103 filed a grievance alleging that the Company failed to assign all of its work to Local 103 members as required by the Collective Bargaining Agreement between Local 103 and the Electrical Contractors Association of Greater Boston.

11. NetVersant submitted to the Joint Conference Committee, who heard the grievance filed by Local 103, the Jurisdictional Agreement and the Letter of Assent, which showed that the Company assigned work in accordance with the Jurisdictional Agreement and its past practice with Local 103 and Local 2222.

12. By letter dated February 22, 2002, the Company learned that the Joint Conference Committee had granted the grievance filed by Local 103 and further that the Joint Conference Committee had found the Jurisdictional Agreement to be unenforceable.  As a result of this decision, the solution negotiated by NetVersant, the International, Local 103 and Local 2222 to

the jurisdictional dispute in the assignment of work between members of Local 103 and Local 2222 was vacated, but the jurisdictional dispute between the two local unions remained.

13. Since the decision of the Joint Conference Committee to date, NetVersant has continued to allocate work between members of Local 2222 and Local 103 in accordance with the terms of the Jurisdictional Agreement.

14. Beginning in the Spring of 2003 until the end of December of 2003, I had discussions with Michael Monahan, the Business Manager for Local 103, to resolve the jurisdictional dispute and to effectuate the Company's compliance with the decision of the Joint Conference Committee.

15. In the Spring of 2003, to resolve the jurisdictional dispute between Local 103 and Local 2222, the Company decided to transfer the members of Local 2222 to Local 103. To that end, I entered into extensive discussions with Michael Monahan, the Business Manager for Local 103, to work out the details of implementing such a transfer so as to resolve the jurisdictional dispute and to effectuate the Company's compliance with the decision of the Joint Conference Committee.

16. During this same time period, Myles Calvey, Business Manager for Local 2222, and Robert Morrison, Business Agent for Local 2222, informed me that they planned to work with Frank Carroll, the International's Vice President for the 2nd District, to resolve the jurisdictional dispute between Local 2222 and Local 103.

17. Although NetVersant and Local 103 agreed on transferring members of Local 2222 to Local 103, there were significant problems in implementing this transfer because Local 2222 and Local 103 had different pay rates, different skill levels (i.e. Local 2222 members have systems and technical certifications and Local 103 members do not), and different benefit packages. Despite the many obstacles, Mr. Monahan and I continued to work together

-4-

throughout the year to implement the transfer and to effectuate the Company's compliance with the decision of the Joint Conference Committee. During this time period, the Company, without any objection from Mr. Monahan, the International or Local 2222, continued to allocate work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement.

18. During these discussions, Mr. Monahan repeatedly assured me that he would talk to representatives of the Local 103, I.B.E.W. Health Benefit Plan, the Electrical Workers Pension Fund, Local 103, I.B.E.W., the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W. the Joint Apprenticeship and Training Trust Fund, Local I.B.E.W., and the Electrical Industry Labor-Management Cooperation Trust (collectively, the "Trusts") and inform them of our discussions to resolve the jurisdictional dispute and to effectuate NetVersant's compliance with the decision of the Joint Conference Committee.

19. At no time during my discussions with Mr. Monahan did the Trusts ever raise any objection to either NetVersant's on-going negotiations with Local 103 or NetVersant's continued allocation of work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement.

20. During my on-going discussions with Mr. Monahan, I provided documents to him regarding, among other things, personnel and payroll data for the Company's Local 2222 employees and the estimated additional cost to the Company of providing benefits to members of Local 2222 if they had been members of Local 103.

21. In or about December, 2003, Mr. Monahan and I met with representatives of the Trusts to discuss the on-going negotiations between the Company and Local 103. In attendance at this meeting were Mr. Monahan, Russell Sheehan, the Administrator of the Trusts, Richard Giambino, a representative of Local 103, David Healy, counsel for the Trusts, and Mr. Dumont, counsel for NetVersant at the time.

22.     During this meeting, the Trusts did not raise any objections to NetVersant's discussions with Local 103 to implement the transfer of Local 2222 members to Local 103 or to effectuate NetVersant's compliance with the decision of the Joint Conference Committee.  Nor did the Trusts raise any objection to NetVersant's continued allocation of work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement.  At this meeting, the Trusts sought to make the Company understand that the Trusts were separate entities than Local 103 and their concern regarding what they believed to be their legal obligation to collect the monies seemingly due to the Trusts pursuant to the decision of the Joint Conference Committee.  No agreement was reached at this meeting regarding the amount of monies due to the Trusts pursuant to the decision of the Joint Conference.

23.     Following this meeting, I reached out to Mr. Monahan to continue our discussions on implementing the transfer of members of Local 2222 to Local 103 and to effectuate compliance with the decision of the Joint Conference Committee.   Mr. Monahan never responded to my overtures; he simply broke off our discussions.

24.     The members of Local 2222 have been throughout this dispute (and continue to be) employees of NetVersant.  As employees of the Company, members of Local 2222 have participated (and continue to participate) in Company sponsored health, pension and other benefits plans.  In accordance with the terms of these plans, the Company has made (and continues to make) contributions on behalf of its Local 2222 employees.

25.     Members of Local 103 who are assigned work by NetVersant are also employees of the Company, but unlike members of Local 2222, members of Local 103 do not participate in Company sponsored health, pension and other benefits plans.  Employees of NetVersant who are members of Local 103 participate in Local 103 sponsored health, pension and other benefits

-7-

plans. The Company has made (and continues to make) contributions to the Trusts on behalf of its Local 103 employees.

26.     Despite the fact that the Trusts have known the identities of some, if not all, of NetVersant's Local 2222 employees since January, 2002, it is my understanding that, to date, the Trusts have never treated any of these employees as participants in Local 103 plans; they have neither sent enrollment forms nor advised these employees of their rights under any of the Trusts plans.

Signed under the pains and penalties of perjury this _22_ day of _April_, 2004.

/s/ Robert Feldman_____
Robert N. Feldman