UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator,<br><br>_Plaintiff_,<br><br>v.<br><br>NETVERSANT-NEW ENGLAND, INC. and Walsh Brothers, Incorporated, Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc.,<br><br>_Defendants_. | Civil Action No. 04-10559NMG |

**NETVERSANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR AN ORDER OF ATTACHMENT BY TRUSTEE PROCESS**

Defendant NetVersant-New England, Inc. ("NetVersant" or the "Company") hereby opposes Plaintiff's Motion for an Order of Attachment By Trustee Process of all monies or other things due (whether or not now payable) by Maiuri Electrical Company and Defendant Partners HealthCare System, Inc., in the amount of $1,392,278. As grounds for its opposition, NetVersant states that (i) attachment by trustee process is inappropriate for insufficient evidence of a debt equal to or greater than the amount to be attached, and (ii) Plaintiff's request for attachment by trustee process is inconsistent with his pending request to reach and apply the same property. NetVersant's reasons are set forth further below.

**Attachment by Trustee Process is Inappropriate for Insufficient Evidence of a Debt
Equal To or Greater Than the Amount to Be Attached**

An attachment, whether by trustee process, a bill to reach and apply, or any other means, is inappropriate unless and until the plaintiff proves a likelihood of success in recovering

judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment, over and above any liability insurance shown by the defendant to be available to satisfy the judgment. *See, e.g., Anderson Foreign Motors, Inc. v. New England Toyota Distributors, Inc.*, 475 F. Supp. 973, 978 (D. Mass. 1979) ("The conditions for issuance of a writ of attachment are set forth in Mass.R.Civ.Pro., Rule 4.1(c), which requires that the plaintiff show 'a reasonable likelihood that (he) will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.'"); *Murray v. Lyon*, 11 B.R. 611, 613-614 (D. Mass. 1981).

Here, the Plaintiff has not furnished the prerequisite for an attachment of any amount because he has not proved the amount of any debt owed by the defendant. To attach property, the Plaintiff must establish the debt owed to him by NetVersant. *See, e.g., Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) ("'The first step is in the nature of an action at law and requires the plaintiff to establish the debt owed by the principal defendant to the plaintiff'" (quoting *Trustees v. Baldwin Steel Co., Inc.*, 2001 U.S. Dist. Lexis 14236, No. 00-10686-MBB, at *12 (D. Mass. 2001)). Plaintiff is attempting to attach property before the existence, or any amount, of a debt has been established. By merely showing the amount of hours worked – which is but one element Plaintiff must show to win in this action – Plaintiff wrongly asserts that trustee process can be used to secure a "debt" that does not at this point exist. Contrary to Plaintiff's assertion, there is no debt due at this time by NetVersant to Plaintiff.

This Court has declined to enter the provisional remedy of reach and apply precisely because the Plaintiff had failed to prove the existence of a debt and the amount of any debt. That

failure is fatal for trustee process as well.  Plaintiff has failed to address, let alone dispose of, any of NetVersant's defenses.  NetVersant has set forth three main defenses, and the amount of any "debt" owed to Plaintiff by NetVersant is dependent upon resolution of factual and legal issues that have not been addressed, let alone decided, in this action.

First, the sums the Local 103 plans request would result in a windfall to the plans, which would be due to the plans' having breached their "watchdog" duties as fiduciaries under ERISA.  The Local 103 plans seek recovery of contributions in respect of the hours worked by employees of NetVersant, who are members of Local 2222, which hours they say should have been worked instead by members of Local 103.  Presumably, the amounts recovered would be for the benefit of the persons who actually worked the hours that generated the payments; otherwise, the recovery would be a complete and absolute windfall that would be inequitable, inappropriate as a matter of law and thus not in conformance with the arbitral order.  *See Agathos v. Starlite Motel*, 977 F. 2d 1500 (3rd Cir. 1992) (holding that collection of contributions in respect of persons who have no viable claim for benefits is inappropriate as a matter of law).

The Plaintiff has never treated NetVersant employees as participants in the Local 103 plans he administers.  He has not taken the first step toward discharging the fiduciary duties he would owe them if they were participants in the plans, namely, the step of informing them of their participation and their resulting rights.  *See, e.g.,* 29 U.S.C. §§ 1021, 1022, 1024(b) (imposing duties to provide all participating employees with certain materials describing their rights and obligations under the plans).  *See also Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F. 2d 132 (3rd Cir. 1993) (noting funds' fiduciary duties include identifying all participants and beneficiaries so that participants may be made aware of their rights and notifying participants of an employer's failure to contribute to fund as required

3

by "pension agreement"). He has known the identities of some, if not all, of these persons since at least January 2002, when their names were entered into the record of the arbitration of the grievance that gave rise ultimately to this action. They are all members of the International IBEW, Local 2222, and their identities are not hidden.

Plaintiff has disregarded the persons on whose behalf he now seeks recovery. While the Plaintiff disregarded the persons on whose behalf he now seeks recovery, NetVersant was funding their pensions and medical benefits, and paying their health and welfare claims and their pensions under its own Company-sponsored plans. In these circumstances, the Plaintiff's breach of his fiduciary duties to the Local 2222 members he now claims as participants in his plans, and NetVersant's discharge of its responsibilities to these same persons, would cause the Plaintiff's collection of what he seeks to amount to an inequitable windfall, which the law does not permit, let alone require. *See, e.g., Agathos v. Starlite Motel*, 977 F. 2d 1500 (3rd Cir. 1992).

The second defense that Plaintiff ignores is laches, which protects NetVersant in these circumstances from the harm that would result from requiring payments of double contributions. This harm would be caused by the Plaintiff's failure to advise affected employees of their participation in the Local 103 plans and their rights under them, and his sitting idly by watching NetVersant make payments on behalf of these employees and paying benefits to them from its own sponsored health and pension plans. The Plaintiff has known since October 1998 or thereabouts that NetVersant was acting in accordance with the Jurisdictional Agreement under which some work covered by the Local 103 collective bargaining agreement was performed by employees of the Company, who are not members of Local 103 on whose behalf pension and welfare contributions were made to Company-sponsored plans and not to Local 103 plans. He did nothing to collect contributions in respect of that work before the 2002 arbitration or

afterwards, up to April 2004, when he filed this action. He voiced no objection to that course of conduct until late 2003. For more than five years, he watched as NetVersant engaged in conduct – the funding and payment of claims and pensions under the Company's plans – that he knew with absolute certainty would be unnecessarily harmful to NetVersant if he were to force the Company to make duplicate contributions in respect of the same employees for the same work to his Local 103 plans. He could have intervened at any point to minimize the unnecessary harm that would ensue, given that he would intervene at some point. Instead, he waited, letting the unnecessary harm expand. And NetVersant relied – to its detriment, it is now clear – on his acquiescence.

That kind of gratuitous infliction of harm bars Plaintiff's recovery, in whole or in part, under the equitable defense of laches. *See, e.g., K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 911 (1st Cir. 1989) ("The equitable doctrine of laches bars assertion of a claim where the party's delay in bringing suit was 1) unreasonable, and 2) resulted in prejudice to the opposing party"). Indeed, Plaintiff's multi-year delay in bringing this suit has caused NetVersant substantial prejudice. Every day the Plaintiff delayed, NetVersant funded and paid claims and pensions under the Company's plans – payments that Plaintiff knew would be unnecessarily harmful to NetVersant if he were to force the Company to make duplicate contributions to his Local 103 plans in respect of the same employees for the same work. The Plaintiff's current claim for duplicate contributions – which is the direct result of his delay – is the paradigm of prejudice against which the defense of laches protects.

The third defense that Plaintiff ignores is that the "make whole" remedy contained in the arbitral reward requires that Local 103 members have been available and qualified to do the "systems" work they claim they should have done instead of Local 2222 members, and there is

5

no proof that Local 103 members were either available or qualified to do that work. Indeed, Local 103 members likely were unqualified to do the systems work in question, which members of Local 2222 were trained and certified to do. Furthermore, Local 103 members were employed to capacity during the relevant time period, and would have been unavailable to do systems work even if they were qualified to do such work.

In moving for trustee process, Plaintiff ignores all of these defenses and thus ignores the fact that the existence of a debt owed by NetVersant to Plaintiff has not yet been established. As the Plaintiff has not proved the amount of any debt owed by NetVersant, he has not provided the prerequisite for an attachment of any amount, and therefore may not appropriately attach by trustee process any more than he could reach and apply the same property.

### Plaintiff's Request for Attachment by Trustee Process is Inconsistent With His Pending Request to Reach and Apply the Same Property

Trustee process is a legal remedy that may be used to attach a debt that is absolute and unconditional except for the passage of time. M.G.L. c. 246, § 32 (2004). *See, e.g., Jordan v. Lavin*, 319 Mass. 362, 366, 66 N.E.2d 41, 44 ("Trustee process is a legal remedy, not an equitable one…"); *Chang v. BankBoston, N.A.*, 58 Mass. App. Ct. 111, 114, 787 N.E.2d 1144, 1147 (Mass. App. Ct. 2003) ("Money that is susceptible to attachment [by trustee process] must be due from the trustee to the defendant 'absolutely and without any contingency'" (quoting *Jordan v. Lavin*, 319 Mass. 362, 365, 66 N.E.2d 41, 43 (1946)); *Krogman v. Rice Bros. Co.*, 241 Mass. 295, 300, 135 N.E. 161,164 (Mass. 1922) ("Money cannot be attached by trustee process, unless when service is made on the trustee it is due absolutely and without any contingency, except that of time").

A bill to reach and apply is an equitable remedy that may be invoked only when there is no legal remedy available. Therefore, a bill to reach and apply may not properly be invoked when the debt to be attached is subject to trustee process. *See, e.g., In Re Rare Coin Galleries of America, Inc. v. Vinick & Young*, 862 F. 2d 896, 903 (1st Cir. 1988) ("The bill to reach and apply has been defined as 'a prejudgment security device which is equitable in nature: it seeks either to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim, or to restrain a third party's disposition of the defendant's intangible or equitable property, and then to reach and apply that property to satisfy the plaintiff's claim.'" (quoting Gilleran, *Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply*, 69 Mass. L. Rev. 156, 169 (1984)); *Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57-58 (D. Mass. 2002) ("the plaintiff 'must show that this property, by its nature, is incapable of attachment or of taking on execution in a legal action.'" (quoting *Trustees v. Baldwin Steel Co., Inc.*, 2001 U.S. Dist. LEXIS 14236, 2001 WL 1555539, No. 00-10686-MBB, at *14 (D. Mass. 2001)); *U.S. Trust v. American Travel, Inc.*, 1995 Mass. Super. LEXIS 218, No. 92-5307, at *10 (Super. Ct. Mass. Sep. 14, 1995) ("an action to reach and apply is an equitable action that may not be used to reach assets that can be reached through an action at law, i.e., through trustee process"); *Venable v. Rickenberg*, 152 Mass. 64, 66-67, 24 N.E. 1083, 1084 (Mass. 1890) ("Debts can be attached by trustee process in actions at law only. . .If the property in its nature is attachable by trustee process, a suit in equity cannot be maintained to reach and apply it in payment of a debt . . .").

Plaintiff continues through his pending motion for a bill to reach and apply to assert that the debts he seeks to attach may not be attached by trustee process. His position is legally and

7

logically inconsistent, as well as lacking fundamental preconditions for either of the provisional remedies he inconsistently requests.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Order of Attachment By Trustee Process should be denied.

By its attorneys,

NetVersant-New England, Inc.

/s/ Steven A. Kaufman
Steven A. Kaufman (BBO# 262230)
Ropes & Gray LLP
One International Place
Boston MA 02110
(617) 951-7000

Dated: July 12, 2004