UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator,<br><br>    Plaintiff,<br><br> v.<br><br>NETVERSANT-NEW ENGLAND, INC. and Walsh Brothers, Incorporated, Maiuri Electrical Company, Daisy Electric, Inc., and Partners Healthcare Systems, Inc.,<br><br>    Defendants.<br><br> and<br><br>NETVERSANT-NEW ENGLAND, INC.,<br><br>    Third-Party Plaintiff,<br><br> v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO-CLC, LOCAL UNION 103 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, FRANK J. CARROLL and PAUL WARD,<br><br>    Third-Party Defendants. | Civil Action No. 04-10559NMG |

## THIRD-PARTY COMPLAINT

NetVersant-New England is the victim of material misrepresentations made by an international union, one of its locals, and union officials. The misrepresentations concerned the unions' assent to a so-called Jurisdictional Agreement allocating work among members of two locals of the international. As set forth below, those misrepresentations have caused NetVersant-

New England substantial business harm and exposed the Company to significant claims, including those asserted against NetVersant-New England by Administrator Russell F. Sheehan in the above-captioned action. By this Third-Party Complaint, NetVersant-New England seeks indemnification and contribution for any and all liabilities that it may incur in connection with the above-captioned action.

## PARTIES

1. Defendant and Third-Party Plaintiff NetVersant-New England, Inc. ("NetVersant" or the "Company") is engaged primarily in the business of providing telecommunications delivery and service to residential and commercial customers within and outside the Commonwealth of Massachusetts. NetVersant's principal place of business is 100 Franklin Street, Boston, Massachusetts. NetVersant did business as JCI Communications, Inc. before doing business as NetVersant-New England, Inc.; and JCI Communications, Inc. did business as JEMD-COM, Inc. before doing business as JCI Communications, Inc.

2. Third-Party Defendant Local Union 103 of the International Brotherhood of Electrical Workers ("Local 103") is, upon information and belief, a voluntary association and an unincorporated labor organization engaged in representing employees in collective bargaining with employers. Upon information and belief, Local 103 maintains its principal office and place of business at 256 Freeport Street, Dorchester, Massachusetts, 02122.

3. Third-Party Defendant International Brotherhood of Electrical Workers, AFL-CIO-CLC (the "International") is, upon information and belief, an unincorporated labor organization and the parent of Local 103 and Local 2222 of the International Brotherhood of Electrical Workers. Upon information and belief, the International maintains its principal office and place of business at 1125 15th Street, NW, Washington, D.C., 20005.

4.     Third-Party Defendant Frank J. Carroll ("Carroll") is, and/or at all times relevant was, the International Vice President of the International's 2nd District, which covers the New England region, including Massachusetts. Upon information and belief, Carroll maintains his principal office and place of business at 4 Armstrong Road, 2nd Floor, Shelton, Connecticut, 06484, and is responsible for governance of the International's 2nd District.

5.     Third-Party Defendant Paul Ward ("Ward") at times relevant was the Business Manager for Local 103. Upon information and belief, Ward maintains, and/or at all times relevant maintained, his principal office and place of business at 256 Freeport Street, Dorchester, Massachusetts, 02122.

## ALLEGATIONS

6.     NetVersant is the victim of a jurisdictional dispute between two locals of the International: Local 103 and Local 2222 of the International Brotherhood of Electrical Workers ("Local 2222"). The jurisdictional dispute dates back to at least 1998 and concerns the provision of work and benefits to and among members of Local 103 and Local 2222. In or about October 1, 1998, each of Local 103, the International, Carroll and Ward represented to NetVersant that the jurisdictional dispute between Local 103 and Local 2222 had been resolved. Those representations, it is now clear, were untrue. NetVersant thus has been the victim of a pattern of deception and misrepresentation committed by Local 103, the International and their officials.

7.     NetVersant is, and at all times relevant has been, a member of the Electrical Contractors Association of Greater Boston, Inc., Boston Chapter, National Electrical Contractor's Association, some of whose members are engaged in the teledata industry of Greater Boston (the "Electrical Contractors Association").

8. The Electrical Contractors Association entered into a multiemployer collective bargaining agreement with Local 103 on September 1, 1997 (the "Telecommunications Agreement") and since then has continued to deal with Local 103 as its exclusive representative for work covered by the Telecommunications Agreement and succeeding collective bargaining agreements.

9. In 1998, NetVersant sought to compete to do work on construction and data voice projects in the Greater Boston, Massachusetts area. At the time, members of Local 103 regularly performed such work. Accordingly, in 1998, so as to compete for such work, NetVersant approached Local 103 and expressed interest in becoming a signatory to the Telecommunications Agreement.

10. At the time that NetVersant approached Local 103 about becoming a signatory to the Telecommunications Agreement, NetVersant was a party to a collective bargaining agreement with Local 2222, another local of the same International union. NetVersant had recognized Local 2222 as a representative of certain of its employees since June 29, 1993 and continued to recognize Local 2222 as a representative of certain of its employees at the time that NetVersant approached Local 103 about becoming a signatory to the Telecommunications Agreement.

11. NetVersant recognized, and disclosed to Local 103, that the Telecommunications Agreement covered certain work that was being performed by Company employees who were represented by Local 2222. NetVersant advised Local 103 that the Company intended to continue to use those employees represented by Local 2222 to perform jobs traditionally related to telecommunications systems and software (e.g., installing and programming telephone systems and software applications). Accordingly, NetVersant stated to Local 103 that the

-4-

Company would agree to become a signatory to the Telecommunications Agreement only if Local 103 would enter into a separate jurisdictional agreement that would set forth explicitly how work would be allocated by the Company to and among members of Local 2222 and Local 103. In short, NetVersant recognized a potential jurisdictional dispute between Local 103 and Local 2222 concerning the allocation of work and insisted that Local 103 and the International agree to a resolution of that jurisdictional dispute before the Company would agree to the Telecommunications Agreement.

12. In an effort to resolve the potential jurisdictional dispute that would arise between the International's two local unions if the Company became a signatory to the Telecommunications Agreement, NetVersant entered into negotiations with the International, Local 103 and Local 2222 in 1998. At all times in these negotiations, Carroll represented the International, Ward represented Local 103, and Business Manager Myles J. Calvey ("Calvey") represented Local 2222. Each of Carroll, Ward and Calvey represented to NetVersant that they spoke for the organizations they respectively represented; and each represented to NetVersant that they had the authority to agree to terms on behalf of, and to bind to those terms, the organizations that they respectively represented.

13. Negotiations over a resolution of the potential jurisdictional dispute between Local 103 and Local 2222 continued throughout much of 1998. At all times, Local 103 and the International represented that they were committed to obtaining a resolution of the potential jurisdictional dispute. Evidencing that is a letter dated March 23, 1998, from Local 103 Business Manager Ward to NetVersant (then doing business as JCI Communications, Inc.) stating that he would "continue to work with Local 2222 in order to formalize a jurisdictional agreement in line with our previous discussions and would be willing to sign an Assent form with a side letter on

the jurisdictional guidelines." A true copy of the letter from Ward to Stephen Gillis, then the President of JCI Communications, Inc., is attached hereto as <u>Exhibit 1</u>. Ward further made statements to NetVersant asserting and representing his intent to obtain a jurisdictional resolution and to stand behind the jurisdictional resolution that would be obtained.

14. In October 1998, after extensive negotiations with Local 103 and the International, represented respectively by Ward and Carroll, as well as with Local 2222, represented by Calvey, Netversant, the International, Local 103 and Local 2222 agreed to a resolution of the jurisdictional dispute. The terms of the parties' resolution were memorialized in a document entitled "Agreement" (the "Jurisdictional Agreement"). Among other things, the Jurisdictional Agreement explicitly set forth the parties' agreement as to how work would be assigned among and between members of Local 103 and members of Local 2222. The Jurisdictional Agreement also required NetVersant to transfer all cable installers hired after October 1, 1997 from Local 2222 to Local 103 effective as of the close of business on October 3, 1998; and, in compliance with that requirement, ten NetVersant employees who were members of Local 2222 became members of Local 103. A true copy of the Jurisdictional Agreement is attached hereto as <u>Exhibit 2</u>.

15. The Jurisdictional Agreement was signed by Carroll in his capacity as International Vice President of the International's 2nd District. At all times relevant, and throughout the negotiations concerning the agreement memorialized in the Jurisdictional Agreement, Carroll represented, and it clearly appeared to NetVersant to be the case, that he had the authority to bind Local 103, Local 2222 and the International to jurisdictional terms and to bind them to the Jurisdictional Agreement.

16. At this same time, on or about October 1, 1998, based upon representations made

by Carroll on behalf of the International and by Ward on behalf of Local 103 that the agreement memorialized in the Jurisdictional Agreement would be honored, NetVersant entered into a Letter of Assent (the "Letter of Assent") with Local 103 by which the Company agreed to the terms of the Telecommunications Agreement.  In entering into the Letter of Assent, NetVersant reasonably relied upon the representations made by Carroll and Ward on behalf of, respectively, the International and Local 103, to the effect that the agreement memorialized in the Jurisdictional Agreement would be honored.

17. Following NetVersant's agreement to the jurisdictional resolution memorialized in the Jurisdictional Agreement and the Letter of Assent, each of the Company, the International, Local 103 and Local 2222 operated in accordance with the terms of the Jurisdictional Agreement for approximately three and one-half years – from October 1998 until January 2002.  During this period, neither the International nor Local 103 (or Local 2222) ever raised any objection or challenge to the Company's allocation of work between and among members of Local 103 and Local 2222 in accordance with the agreement memorialized in the Jurisdictional Agreement.

18. Under the terms of the Letter of Assent, NetVersant agreed to be bound by all successive multi-employer collective bargaining agreements unless the Company provided notice to the Electrical Contractors Association of its intent to withdraw from multi-employer collective bargaining.  Such notice was required to be given at least 150 days before the expiration of the collective bargaining agreement then in effect.

19. On January 21, 2002, Local 103 for the first time raised an objection to NetVersant allocating work to members of Local 103 and Local 2222 in accordance with the agreement memorialized in the  Jurisdictional Agreement.  Local 103 complained, *inter alia*, that NetVersant had violated the Telecommunications Agreement by allocating work in accordance

with the Jurisdictional Agreement rather than assigning all work exclusively to members of Local 103.  This was the first time that any party objected to NetVersant's adherence to the agreement memorialized in the Jurisdictional Agreement in allocating work among and between members of Local 103 and Local 2222.

20. In accordance with the Telecommunications Agreement, Local 103's grievance complaint was heard by a so-called Joint Conference Committee, consisting of three members of Local 103 and three employer representatives from the Electrical Contractors Association.  The Joint Conference Committee heard Local 103's grievance on February 4, 2002.

21. At the Joint Conference Committee hearing on Local 103's grievance, NetVersant submitted the Jurisdictional Agreement and the Letter of Assent.  NetVersant explained that the Company had been assigning work to members of Local 103 and Local 2222 pursuant to its agreements with each local and the agreement memorialized in the Jurisdictional Agreement since signing the Jurisdictional Agreement and agreeing upon its terms.  NetVersant further offered evidence of the approximately three and one-half years of past practice assigning work among and between members of Local 103 and Local 2222 in accordance with the Jurisdictional Agreement.

22. Local 103 argued to the Joint Conference Committee that NetVersant violated the Telecommunications Agreement by allocating bargaining unit work to members of Local 2222.  Local 103 argued that the agreement memorialized in the Jurisdictional Agreement was not enforceable because the Jurisdictional Agreement was not signed by the International President, but was signed instead by Carroll.  This was the first time ever that Local 103 claimed the agreement memorialized in the Jurisdictional Agreement was unenforceable.  In so arguing, Local 103 contradicted its three years of past practice and the earlier representations made by its

Business Manager, Ward, that Local 103 would recognize and honor the agreement memorialized in the Jurisdictional Agreement.

23.     By letter dated February 22, 2002, the Joint Conference Committee issued a decision in favor of Local 103 (the "Arbitration Decision").  The Joint Conference Committee specifically found that the Jurisdictional Agreement was not enforceable.  As a result of this award, the jurisdictional solution negotiated by NetVersant, the International, Local 103 and Local 2222 – *viz.*, the Jurisdictional Agreement – was set aside.  However, the jurisdictional dispute between the two local unions remained.

24.     Since the February 22, 2002 decision of the Joint Conference Committee, through the present date, NetVersant has continued to allocate work among and between members of Local 103 and Local 2222 in accordance with the agreement memorialized in the Jurisdictional Agreement.  NetVersant at all times advised Local 103 and the International that it would continue to allocate work in this manner unless and until some other solution was achieved, either through legal or political processes.

25.     The above-recited actions evidence a pattern of knowing misrepresentations made by the International, Local 103, Carroll and Ward.  The International, Local 103, Carroll and Ward, collectively and individually, misrepresented their intent to enter into and be bound by the Jurisdictional Agreement.  Carroll misrepresented his authority to bind the International, Local 103 and Local 2222 to the Jurisdictional Agreement.  Ward misrepresented Local 103's intent to be bound to the agreement memorialized in the Jurisdictional Agreement and understanding that it was so bound, either at the time that the Jurisdictional Agreement was reached or at the Joint Conference Committee proceedings during which Ward argued that the Local 103 considered the Jurisdictional Agreement to be ineffective, or both.  Local 103, through its agents, similarly

misrepresented its intent to be bound by the agreement memorialized in the Jurisdictional Agreement and understanding that it was so bound. Moreover, these actions induced NetVersant into agreeing to abide the successive collective bargaining agreements (in effect from March 1, 2000 through February 28, 2003 and its successor agreement, in effect through 2006) because, based on the parties' apparent intent to be bound to the agreement memorialized in the Jurisdictional Agreement, NetVersant had no reason to withdraw from multi-employer collective bargaining pursuant to the withdrawal procedures established by the Letter of Assent; but such a withdrawal, if NetVersant had been provided reason to effect it, would have greatly reduced NetVersant's potential liabilities to the Plaintiff. The facts thus reveal a scheme by which the International, its Local 103 chapter, and their officials deceived NetVersant by pledging adherence to the agreement memorialized in the Jurisdictional Agreement, abiding by the agreement memorialized in the Jurisdictional Agreement for over three years, and then denying the validity of that Agreement in violation of their past representations and past practices, causing NetVersant substantial damages.

## COUNT I

**(Misrepresentation by the International)**

26.  NetVersant repeats and incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Third Party Complaint as if set forth fully at length herein.

27.  The International, through its representative, Carroll, intentionally and knowingly misrepresented to NetVersant its intent to enter into and be bound by the Jurisdictional Agreement.

28.  The International, through its representative, Carroll, intentionally and knowingly misrepresented to NetVersant its intent to bind Local 103 and Local 2222 to the agreement

memorialized in the Jurisdictional Agreement.

29. The International, by acting in conformity with the agreement memorialized in the Jurisdictional Agreement from October 1, 1998 through at least January 21, 2002, and by not challenging the Jurisdictional Agreement in any manner or respect during that period, intentionally and knowingly misrepresented to NetVersant its understanding of the validity and enforceability of, and its intent to be bound by, the Jurisdictional Agreement.

30. The International, through its representative, Carroll, made the above-described misrepresentations with the intent of influencing or inducing NetVersant to enter into the Letter of Assent and to abide by the agreement memorialized in the Jurisdictional Agreement.

31. The International's above-described representations to NetVersant were knowingly false.

32. NetVersant relied justifiably and to its detriment on the International's representations by, among other things, entering into and abiding by the terms of the Letter of Assent and the Jurisdictional Agreement. NetVersant's reliance was, or reasonably should have been, foreseen by the International as the consequence of the International's misrepresentations.

33. NetVersant has sustained damages as a result of its justifiable reliance upon the International's misrepresentations. These damages include all liability that was adjudged against the Company by the Joint Conference Committee and any and all damages that the Plaintiff has claimed and for which the Company may be found liable by Plaintiff's Complaint.

## **COUNT II**

### **(Misrepresentation by Carroll)**

34. NetVersant repeats and incorporates by reference the allegations set forth in paragraphs 1 through 33 of this Third Party Complaint as if set forth fully at length herein.

35. Carroll, in his capacity as International Vice President of the International's 2nd District, intentionally and knowingly misrepresented to NetVersant his intent to enter into and be bound by the agreement memorialized in the Jurisdictional Agreement on the International's behalf.

36. Carroll, in his capacity as International Vice President of the International's 2nd District, intentionally and knowingly misrepresented to NetVersant his intent to bind Local 103 and Local 2222 to the agreement memorialized in the Jurisdictional Agreement.

37. Carroll, by acting on the International's behalf in conformity with the agreement memorialized in the Jurisdictional Agreement from October 1, 1998 through at least January 21, 2002, and/or by not challenging the Jurisdictional Agreement in any manner or respect during that period on the International's behalf, intentionally and knowingly misrepresented to NetVersant his understanding of the validity and enforceability of, and his intent to bind the International, Local 103 and Local 2222 to the Jurisdictional Agreement.

38. Carroll, in his capacity as International Vice President of the International's 2nd District, made the above-described misrepresentations with the intent of influencing or inducing NetVersant to enter into the Letter of Assent and to abide by the agreement memorialized in the Jurisdictional Agreement.

39. Carroll's above-described representations to NetVersant were knowingly false.

40. NetVersant relied justifiably and to its detriment on Carroll's representations by, among other things, entering into and abiding by the terms of the Letter of Assent and the Jurisdictional Agreement. NetVersant's reliance was, or reasonably should have been, foreseen by Carroll as the consequence of his misrepresentations.

41. NetVersant has sustained damages as a result of its justifiable reliance upon

Carroll's misrepresentations. These damages include all liability that was adjudged against the Company by the Joint Conference Committee and any and all damages that the Plaintiff has claimed and for which the Company may be found liable by Plaintiff's Complaint.

## **COUNT III**

### **(Misrepresentation by Local 103)**

42. NetVersant repeats and incorporates by reference the allegations set forth in paragraphs 1 through 41 of this Third Party Complaint as if set forth fully at length herein.

43. Local 103, through its representative, Ward, intentionally and knowingly misrepresented to NetVersant its intent to enter into and be bound by the agreement memorialized in the Jurisdictional Agreement.

44. Local 103, by acting in conformity with the agreement memorialized in the Jurisdictional Agreement from October 1, 1998 through January 21, 2002, and by not challenging the Jurisdictional Agreement in any manner or respect during that period, intentionally and knowingly misrepresented to NetVersant its understanding of the validity and enforceability of, and its intent to be bound by, the Jurisdictional Agreement.

45. Local 103, through its representative, Ward, made the above-described misrepresentations with the intent of influencing or inducing NetVersant to enter into the Letter of Assent and to abide by the agreement memorialized in the Jurisdictional Agreement.

46. Local 103's above-described representations to NetVersant were knowingly false.

47. NetVersant relied justifiably and to its detriment on Local 103's representations by, among other things, entering into and abiding by the terms of the Letter of Assent and the Jurisdictional Agreement. NetVersant's reliance was, or reasonably should have been, foreseen by Local 103 as the consequence of Local 103's misrepresentations.

48. NetVersant has sustained damages as a result of its justifiable reliance upon Local

103's misrepresentations. These damages include all liability that was adjudged against the Company by the Joint Conference Committee and any and all damages that the Plaintiff has claimed and for which the Company may be found liable by Plaintiff's Complaint.

## COUNT IV

### (Misrepresentation by Ward)

49. NetVersant repeats and incorporates by reference the allegations set forth in paragraphs 1 through 48 of this Third Party Complaint as if set forth fully at length herein.

50. Ward, acting in his capacity as Business Agent for Local 103, intentionally and knowingly misrepresented to NetVersant Local 103's intent to enter into and be bound by the agreement memorialized in the Jurisdictional Agreement.

51. Ward, acting in his capacity as Business Agent for Local 103, intentionally and knowingly misrepresented to NetVersant his intent to bind Local 103 to the agreement memorialized in the Jurisdictional Agreement.

52. Ward, by acting on Local 103's behalf in conformity with the agreement memorialized in the Jurisdictional Agreement from October 1, 1998 through January 21, 2002, and by not challenging the Jurisdictional Agreement in any manner or respect during that period, intentionally and knowingly misrepresented to NetVersant Local 103's understanding of the validity and enforceability of, and its intent to be bound by, the Jurisdictional Agreement.

53. Ward made the above-described misrepresentations with the intent of influencing or inducing NetVersant to enter into the Letter of Assent and to abide by the agreement memorialized in the Jurisdictional Agreement.

54. Ward's above-described representations to NetVersant were knowingly false.

55. NetVersant relied justifiably and to its detriment on Ward's representations by,

among other things, entering into and abiding by the terms of the Letter of Assent and the Jurisdictional Agreement. NetVersant's reliance was, or reasonably should have been, foreseen by Ward as the consequence of his misrepresentations.

56. NetVersant has sustained damages as a result of its justifiable reliance upon Ward's misrepresentations. These damages include all liability that was adjudged against the Company by the Joint Conference Committee and any and all damages that the Plaintiff has claimed and for which the Company may be found liable by Plaintiff's Complaint.

## COUNT V

### (Indemnification and Contribution:  As To All Third-Party Defendants)

57. NetVersant repeats and incorporates by reference the allegations set forth in paragraphs 1 through 56 of this Complaint as if set forth fully at length herein.

58. By the above-captioned action, the Trusts, consisting of the Local 103, I.B.E.W. Health Benefit Plan, the Electrical Workers Pension Fund, Local 103, I.B.E.W., the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W., the Joint Apprenticeship and Training Trust Fund, I.B.E.W., and the Electrical Industry Labor-Management Cooperation Trust (collectively, the "Trusts") through their Administrator, Russell F. Sheehan, have claimed damages arising from NetVersant's actions conformity with the agreement memorialized in the Jurisdictional Agreement.

59. At all times, NetVersant has acted in conformity with the agreement memorialized in the Jurisdictional Agreement in reliance upon the representations made by each of the International, Local 103, Carroll and Ward (the "Third-Party Defendants").

60. Any damages that are awarded to the Trusts in the above-captioned action result entirely from NetVersant's actions in conformity with the agreement memorialized in the

Jurisdictional Agreement in reliance upon the Third-Party Defendants' misrepresentations.

61. If any liability is found owing to the Trusts in the above-captioned action by reason of NetVersant's actions in conformance with the agreement memorialized in the Jurisdictional Agreement, then NetVersant is entitled to indemnification and contribution from the Third-Party Defendants, individually and collectively, jointly and severally, for all such liability.

WHEREFORE, NetVersant respectfully requests that the Court award it the following relief:

A. Damages in an amount determined to have been suffered by the Company at the hands of the Third-Party Defendants;

B. Contribution from the Third-Party Defendants for the full amount of any damages, if any, that this Court awards the Trusts on account of any actions taken by NetVersant;

C. The costs of this third-party action;

D. Prejudgment interest; and

E. All such other and further relief as the Court may deem just and proper.

NETVERSANT DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

NETVERSANT-NEW ENGLAND, INC.

By its attorneys,

_____
Steven A. Kaufman (BBO # 262230)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: August 30, 2004