# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| ) | |
| RUSSELL F. SHEEHAN, as Administrator of the ) | CIVIL ACTION |
| Local 103, I.B.E.W. Health Benefit Plan, the ) | NO. 04-10559-NMG |
| Electrical Workers Pension Fund, Local 103, ) | |
| I.B.E.W., the Electrical Workers Deferred Income ) | |
| Fund, Local 103, I.B.E.W., the Joint ) | |
| Apprenticeship and Training Trust Fund, Local ) | |
| 103, I.B.E.W., and the Electrical Industry Labor- ) | |
| Management Cooperation Trust, ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| NETVERSANT-NEW ENGLAND, INC., ) | |
| NETVERSANT SOLUTIONS, INC., ) | |
| ROBERT FELDMAN, WILLIAM FIEDLER, ) | |
| RONALD HALE, JR. AND SCOTT FORDHAM ) | |
| Defendants, ) | |
| and ) | |
| ) | |
| Maiuri Electrical Company, Daisy Electric, Inc., ) | |
| and Partners HealthCare System, Inc. ) | |
| Reach and Apply Defendants. ) | |

_____

## SECOND AMENDED COMPLAINT

### JURISDICTION AND VENUE

1.      Plaintiff brings this action under, and the jurisdiction of this Court is based upon, §502(a)(3) and §515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (29 U.S.C. §1132(a)(3) and §1145), and §301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") (29 U.S.C. §185(a)), and 28 U.S.C. §1331.  The Court has jurisdiction of the claims asserted under the Racketeer-Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. §1964(c) and 28 U.S.C. §1331.

2.      Venue is proper in this Court over Defendants NetVersant-New England, Inc. and NetVersant Solutions, Inc. pursuant to ERISA §502(e)(2) (29 U.S.C. §1132(e)(2)).  Venue is

proper in this Court over Defendants NetVersant Solutions, Inc., NetVersant-New England, Inc., Robert Feldman, Scott Fordham, Ronald Hale, Jr. and William Fiedler for the RICO Counts pursuant to 18 U.S.C. §1965(a) and (b) and 28 U.S.C. §1391.

3.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over Massachusetts state law reach and apply claims against Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc.

<u>PARTIES</u>

4.      Plaintiff Russell F. Sheehan ("Administrator") is a fiduciary as that term is defined in ERISA §3(21) (29 U.S.C. §1002(21)(A)), and is the Administrator of each of, and sues on behalf of each of, the following trust funds: the Electrical Workers Pension Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2) (29 U.S.C. §1002(2)) (hereinafter referred to as the "Pension Fund"); the Local 103, I.B.E.W. Health Benefit Plan (an "employee welfare benefit plan" within the meaning of ERISA §3(1) (29 U.S.C. §1002(1)) (hereinafter referred to as the "Health Plan"), the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W. (an "employee pension benefit plan" within the meaning of ERISA §3(2), 29 U.S.C. §1002(2)) (hereinafter referred to as the "Deferred Income Fund"); the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W. (an "employee welfare benefit plan" within the meaning of ERISA §3(1) (29 U.S.C. §1002(1)) (hereinafter referred to as the "JATF") (all of the foregoing trust funds hereinafter collectively referred to as the "Funds"), and the Electrical Industry Labor-Management Cooperation Trust (hereinafter referred to as the "LMCT").  The Administrator's regular place of business is at 256 Freeport Street, Boston, Massachusetts.

5.      Defendant NetVersant-New England, Inc. ("NetVersant NE") is a Massachusetts

corporation with its principal place of business located at 100 Franklin Street, 5th Floor, Boston, Massachusetts. NetVersant NE was formerly known as JCI Communcations, Inc. before its name was changed to NetVersant-New England, Inc. JCI Communications, Inc. was formerly known as Jemd Com, Inc. before its name was changed to JCI Communciations, Inc. NetVersant NE was and is an "employer" as defined by ERISA §3(5) (29 U.S.C. §1002(5)). NetVersant NE engages in interstate commerce and its activities affect interstate commerce.

6.      Defendant NetVersant Solutions, Inc. ("NetVersant Solutions") is the parent corporation of NetVersant NE and is incorporated under the laws of the State of Delaware. NetVersant Solutions maintains a business address at 777 Post Oak, Suite 400, Houston, Texas 77056. NetVersant Solutions engages in interstate commerce and its activities affect interstate commerce. NetVersant Solutions through its agents has transacted and is transacting business within the Commonwealth of Massachusetts, has contracted and is contracting to supply services or things within the Commonwealth of Massachusetts, and has caused and is causing tortious injury within the Commonwealth of Massachusetts by acts or omissions of its agents located both within and without the Commonwealth of Massachusetts while regularly soliciting business and engaging in a pervasive course of conduct and by deriving substantial revenue by goods used and services rendered within the Commonwealth of Massachusetts, all of the foregoing within the meaning of M.G.L. c. 223A, §3(a), (b), (c) and (d).

7.      Defendant Robert Feldman ("Feldman") is the President of NetVersant NE. Feldman was a shareholder and officer of JCI Communications, Inc. prior to its purchase by NetVersant Solutions. Feldman is the Regional Vice President (East) of NetVersant Solutions and has acted in such capacity after February 4, 2002. Feldman resides in Massachusetts.

8.      Defendant Scott Fordham is the Chairman & Chief Executive Officer of

NetVersant Solutions and has acted in such capacity at all times on and after February 4, 2002.

Fordham is also a Director of NetVersant Solutions. Fordham is an agent of NetVersant

Solutions. Fordham has transacted and is transacting business within the Commonwealth of

Massachusetts, has contracted and is contracting to supply services or things within the

Commonwealth of Massachusetts, and has caused and is causing tortious injury within the

Commonwealth of Massachusetts by his acts or omissions and those of his agents located both

within and without the Commonwealth of Massachusetts while regularly soliciting business and

engaging in a pervasive course of conduct and by deriving substantial revenue by goods used and

services rendered within the Commonwealth of Massachusetts, all of the foregoing within the

meaning of M.G.L. c. 223A, §3(a), (b), (c) and (d).

      9.    Defendant William Fiedler ("Fiedler") is the sole Director of NetVersant NE and

is its Secretary. Fiedler is also the Senior Vice President, General Counsel and Secretary of

NetVersant Solutions. Fiedler has acted in the foregoing capacities on and after February 4,

2002. Fiedler is an agent of NetVersant Solutions and NetVersant NE. Fiedler has transacted

and is transacting business within the Commonwealth of Massachusetts, has contracted and is

contracting to supply services or things within the Commonwealth of Massachusetts, and has

caused and is causing tortious injury within the Commonwealth of Massachusetts by his acts or

omissions and those of his agents located both within and without the Commonwealth of

Massachusetts while regularly soliciting business and engaging in a pervasive course of conduct

and by deriving substantial revenue by goods used and services rendered within the

Commonwealth of Massachusetts, all of the foregoing within the meaning of M.G.L. c. 223A,

§3(a), (b), (c) and (d).

      10.    Defendant Ronald Hale, Jr. ("Hale") is a Vice President and Treasurer of

NetVersant NE.  Hale is also the Senior Vice President, Finance and Treasurer of NetVersant Solutions.  Hale has acted in the foregoing capacities on and after February 4, 2002.  Hale is an agent of NetVersant Solutions and NetVersant NE.  Hale has transacted and is transacting business within the Commonwealth of Massachusetts, has contracted and is contracting to supply services or things within the Commonwealth of Massachusetts, and has caused and is causing tortious injury within the Commonwealth of Massachusetts by his acts or omissions and those of his agents located both within and without the Commonwealth of Massachusetts while regularly soliciting business and engaging in a pervasive course of conduct and by deriving substantial revenue by goods used and services rendered within the Commonwealth of Massachusetts, all of the foregoing within the meaning of M.G.L. c. 223A, §3(a), (b), (c) and (d).

11.     Reach and Apply Defendant Maiuri Electrical Company is a Massachusetts corporation with its principal place of business located at 100 Ferncroft Road, Unit 211, Danvers, Massachusetts.

12.     Reach and Apply Defendant Daisy Electric, Inc. is a New Hampshire corporation with its principal place of business located at 6 Dixon Way, Seabrook, New Hampshire.  Daisy Electric, Inc. has transacted business and contracted to supply services or things within the Commonwealth of Massachusetts within the meaning of M.G.L. c. 223A, §3(a) and (b).

13.     Reach and Apply Defendant Partners HealthCare System, Inc. is a Massachusetts corporation with its principal pace of business located at 800 Boylston Street, Suite 1150, Boston, Massachusetts.

## GENERAL ALLEGATIONS

14.     The Funds are employee benefit plans maintained by employers and an employee organization within the meaning of ERISA §4(a) (29 U.S.C. §1003(a)).

15.    The Administrator is a "fiduciary" within the meaning of ERISA §3(21) ( 29 U.S.C. §1002(21)) who is empowered to collect contributions owed to the Funds.  The Administrator is also empowered to collect contributions owed to the LMCT.

16.    By signing a Letter of Assent in October 1998, NetVersant NE agreed to the terms of a Telecommunications Agreement between the Electrical Contractors Association of Greater Boston, Inc. Boston Chapter, National Electrical Contractors Association (" NECA") and the Electrical Workers Union Local 103, I.B.E.W. (the "Union") covering the period September 1, 1997 through February 29, 2000 (the "Telecommunications Agreement (1997-2000)").  The Telecommunications Agreement (1997-2000) was succeeded by a successor Telecommunications Agreement covering the period March 1, 2000 to February 28, 2003 (the "Telecommunications Agreement (2000-2003)").  The Telecommunications Agreement (2000-2003) was succeeded by a successor Telecommunications Agreement  covering the period March 1, 2003 through February 29, 2008 (the "Telecommunications Agreement (2003-2008)").  NetVersant NE is bound to the terms of the "Telecommunications Agreement (1997-2000), the Telecommunications Agreement (2000-2003), and the Telecommunications Agreement (2003-2008)  (referred to hereinafter collectively, with respect to the applicable period, as the "Telecommunication Agreements").

17.    The Telecommunication Agreements included a dispute resolution mechanism that culminated in an arbitration proceeding before an arbitration panel designated as the Joint Conference Committee and comprised of members representing both employers and the Union. On or about January, 2002, the Union initiated arbitration and complained that NetVersant NE had breached the applicable Telecommunication Agreements by, among other things, assigning work covered by these agreements to employees who were not members of the Union and failing

to pay the required contributions to the Funds for all employees performing work within the "Scope of Work" provision of these agreements in violation thereof.  After a hearing, on February 4, 2002 the Joint Conference Committee issued its decision (the "Arbitration Decision") in favor of the Union on each and every one of the alleged violations of the applicable Telecommunication Agreements.  A true copy of the Arbitration Decision *sans* exhibits is attached hereto and incorporated herein by reference as Exhibit 1.  The Arbitration Decision was confirmed on August 30, 2002 by a judgment entered in *JCI Communications, Inc. d/b/a NetVersant-New England-New England v. International Brotherhood of Electrical Workers Union, Local 103*, 2002 U.S. Dist. LEXIS 16283 (D. Mass. 2002) and affirmed by a judgment entered on appeal by the United States Court of Appeals for the First Circuit and reported at 324 F.3d 42 (1st Cir. 2003).  These judgments are final.

18.     Under the Telecommunication Agreements, as interpreted and determined by the Arbitration Decision, NetVersant NE owes contributions to the Funds, at the rates set forth in the Telecommunications Agreements, for employees of NetVersant NE that performed work within the Scope of Work provision of the Telecommunications Agreements for the period October 1, 1998 and until NetVersant NE complies with the Telecommunication Agreements, regardless of whether such employees of NetVersant NE may be members of the Union or IBEW Local 2222.

19.     The Telecommunication Agreements require NetVersant NE to (a) make monthly contributions to the Funds at specified rates set forth therein on or before the 15th day of the calendar month following the calendar month in which the hours were worked, and (b) to certify this information on a standard reporting form which provides for, inter alia, reporting (i) the name and address of the company, (ii) the zone or area in which the employee worked, (iii) the employer's federal tax identification number, (iv) the total number of employees employed, (v)

the wage rate, (vi) a listing of all  employees, and for each employee (vii) their social security

numbers, (viii) total clock hours, (ix), gross earnings, (x) overtime hours, (xi) hourly wage rate,

and (x) the contributions owed to the various Funds, as well as providing the other information

required by the reporting form.  Such monthly payroll reports are hereinafter referred to as the

"Payroll Report(s)"

     20.    Based upon records obtained from NetVersant NE through discovery in this

proceeding, NetVersant NE owes the following contributions for unreported hours to the

following Funds and LMCT:

| Month/ Year | Hours | Health Plan | Pension Fund | DIF | JATC | LMCT |
|---|---|---|---|---|---|---|
| 1998 | 29,917.5 | $149,587.50 | $97,231.87 | $59,835.00 | $6,881.02 | |
| 1999 | 135,697.75 | $678,438.75 | $440,985.18 | $271,375.50 | $31,210.48 | |
| 2000 | 126,373.2 | $631,866.00 | $442,306.20 | $252,746.40 | $31,593.30 | |
| 2001 | 126,408 | $695,244.00 | $474,030.00 | $316,020.00 | $32,866.08 | |
| 01/ 2002 | 30,105.8 | $165,581.90 | $112,896.75 | $75,264.50 | $7,827.50 | |
| 02/2002 | 9,213.2 | $50,672.60 | $34,549.50 | $23,022.00 | $2,395.43 | |
| 03/2002 | 9,951.5 | $54,733.25 | $39,806.00 | $24,878.75 | $2,587.39 | |
| 04/2002 | 9,185.5 | $50,520.25 | $36,742.00 | $22,963.75 | $2,388.23 | |
| 05/2002 | 8,918 | $49,049.00 | $35,672.00 | $22,295.00 | $2,318.68 | |
| 06/2002 | 9,758 | $53,669.00 | $39,032.00 | $24,395.00 | $2,537.08 | |
| 07/2002 | 9,302 | $51,161.00 | $37,208.00 | $23,255.00 | $2,418.52 | |
| 08/2002 | 9,177.5 | $50,476.25 | $36,710.00 | $22,943.75 | $2,386.15 | |
| 09/2002 | 1,962 | $11,281.50 | $8,829.00 | $4,905.00 | $529.74 | |
| 10/2002 | 3,041 | $17,485.75 | $13,684.50 | $7,602.50 | $821.07 | |
| 11/2002 | 5,935 | $34,126.25 | $26,707.50 | $14,837.50 | $1,602.45 | |
| 12/2002 | 5,938.5 | $34,146.38 | $26,723.25 | $14,846.25 | $1,603.40 | |

| 01/2003 | 7,189.5 | $41,339.63 | $32,352.75 | $17,973.75 | $1,941.17 | |
| 02/2003 | 6,562 | $37,731.50 | $29,529.00 | $16,405.00 | $1,771.74 | |
| 03/2003 | 7,993 | $45,962.62 | $35,970.75 | $19,983.75 | $2,158.24 | |
| 04/2003 | 7,809.5 | $44,904.62 | $35,142.75 | $19,523.75 | $2,108.56 | |
| 05/2003 | 7,076 | $40,687.00 | $31,842.00 | $17,690.00 | $1,910.52 | |
| 06/2003 | 6,769 | $40,614.00 | $30,460.50 | $16,922.50 | $1,895.32 | |
| 07/2003 | 6,316 | $37,896.00 | $28,422.00 | $15,790.00 | $1,768.48 | |
| 08/2003 | 5,877 | $35,262.00 | $26,446.50 | $14,692.50 | $1,645.56 | |
| 09/2003 | 6,189 | $37,134.00 | $27,850.50 | $15,472.50 | $1,732.92 | |
| 10/2003 | 7,543 | $45,258.00 | $33,943.50 | $18,857.50 | $2,112.04 | |
| 11/2003 | 4,911 | $29,466.00 | $22,099.50 | $12,277.50 | $1,375.08 | |
| 12/2003 | 6,142 | $36,852.00 | $27,639.00 | $15,355.00 | $1,719.76 | |
| 01/2004 | 5,654 | $33,924.00 | $25,443.00 | $14,135.00 | $1,583.12 | |
| 02/2004 | 5,440.5 | $32,643.00 | $24,482.25 | $13,601.25 | $1,523.34 | |
| 03/2004 | 6,085.5 | $36,513.00 | $27,384.75 | $15,213.75 | $1,703.94 | |
| 04/2004 | 5,009 | $30,054.00 | $22,540.50 | $12,522.50 | $1,402.52 | |
| 05/2004 | 4,537.5 | $27,225.00 | $20,418.75 | $11,343.75 | $1,270.50 | |
| 6/1 - 6/11 2004 | 2,208 | $13,248.00 | $9,936.00 | $5,520.00 | $618.24 | $552 |
| TOTALS | 640,195.95 | $3,424,753.30 | $2,395,017.30 | $1,454,465.40 | $168,207.57 | $552 |

21.     Based upon the above discovery and hours, NetVersant NE underreported for the

period October 1, 1998 through June 11, 2004 a total of 640,195.95 hours and, based upon such

hours, owes under the Telecommunications Agreements at the applicable rates set forth in the

Telecommunications Agreements contributions, in the principal amount, to the Funds as follows

for the above reporting period:

Health Plan:        $3,424,753.30
Pension Fund:       $2,395,017.30
DIF:                $1,454,465.40
JATF:               $168,207.57
LMCT:               $552

for total principal contributions owed for the period October 1, 1998 through June 11, 2004 in

the amount of $7,442,995.50.

22.    Based upon information and belief, NetVersant NE continues to underreport hours

and file false monthly Payroll Reports with the Funds and LMCT and fail to make payment of all

contributions owed to the Funds and LMCT under the Telecommunication Agreement (2003-

2008) for the period after June 11, 2004 in violation of its obligations under such agreement.

23.    NetVersant NE has failed and refused to file corrected and truthful monthly

Payroll Reports required by the Telecommunications Agreements for the period October, 1, 1998

to the present, despite repeated demand to do so by the Plaintiff.

24.    Pursuant to ERISA §502(h) (29 U.S.C., §1132(h)), copies of the Complaint filed

in this action have been sent to the Secretary of Labor and the Secretary of the Treasury by

certified mail.

<u>COUNT I</u>

<u>(CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES,
FEES & EXPENSES)</u>

25.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 24

as if full restated.

26.    NetVersant NE has breached the Telecommunications Agreements, as interpreted

by the Arbitration Decision, by failing to: (a) submit monthly Payroll Reports which included all

employees of NetVersant NE who performed work within the Scope of Work clause in a timely

fashion; and (b) make the contributions required by the Telecommunications Agreements for all employees who performed work within the Scope of Work clause of the Telecommunication Agreements at the applicable rates set forth in such Telecommunication Agreements for the period October 1, 1998 to the present and on an ongoing basis.

27.    The Telecommunication Agreements require an employer who becomes delinquent in the payment of contributions owed to the Funds and LMCT to furnish project specific records, including employment records and a current list of projects to include the names and addresses of the project owner, construction manager, general contractor, and the person for whom the employer has performed work, including each subcontractor or other person with whom NetVersant NE has contracted or is under contract. NetVersant NE is required by the Telecommunication Agreements to provide such information from October 1, 1998 to the present, and as a continuing obligation. NetVersant NE has breached the Telecommunication Agreements by failing to provide such information to the Funds and the LMCT.

28.    Pursuant to the Telecommunication Agreements, and the Collection Policy of the Trustees adopted pursuant to the authority granted under the Telecommunication Agreements and trust agreements establishing the Funds and LMCT, NetVersant NE is liable to the Funds and LMCT for interest at a rate of 1.5% per month from the date due until paid.

29.    In addition, under the Pension Fund's plan, NetVersant NE is liable for liquidated damages in an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages equal to 20 percent of the amount of the unpaid contributions.

30.    In addition, effective November 21, 2003 and thereafter, under the Collection Policy of the Trustees of the Deferred Income Fund, NetVersant NE is liable for liquidated damages in an amount equal to the delinquent contributions owed as of December 1st multiplied

by the net investment income allocation percentage to participant accounts as of November 30th of such year.

31.    Pursuant to the Telecommunications Agreements, and the Collection Policy of the Trustees adopted pursuant to the authority granted under the Telecommunications Agreements, NetVersant NE is liable to the Plaintiff in behalf of the Funds and LMCT for all costs of collection of amounts due, including but not limited to court costs, attorneys' fees, and accountants' or auditors' fees.

32.    NetVersant-NE's obligation to make contributions to the Funds in accordance with the Telecommunications Agreements, as interpreted and determined by the Arbitration Decision, is enforceable pursuant to 29 U.S.C. §§301 and 1145.  NetVersant-NE's obligation to make contributions to the LMCT in accordance with the Telecommunications Agreement (2003-2008) is enforceable pursuant to 29 U.S.C. §301.

33.    NetVersant NE has breached its obligations under the Telecommunications Agreements in violation of 29 U.S.C. §§ 301 and 1145.

34.    Pursuant to 29 U.S.C. §§ 301 and 1132(g)(2)(A), NetVersant NE owes the Funds the unpaid contributions.

35.    Pursuant to 29 U.S.C. §1132(g)(2)(B), NetVersant NE owes the Funds interest on the unpaid contributions.

36.    Pursuant to 29 U.S.C. §1132(g)(2)(C), NetVersant NE also owes the Funds an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20-percent of the contributions owed.

37.    Pursuant to 29 U.S.C., §1132(g)(2)(D), NetVersant NE owes the Funds its reasonable attorneys' fees and costs of this action.

38.     NetVersant NE's failure to produce the Payroll Reports and other records required pursuant to the Telecommunication Agreements and the Collection Policy of the Trustees of the Funds and LMCT, has prevented the Funds from crediting employees with hours of service and from seeking to collect from other sources, such as by attachment of interests in contracts or making claims under payment bonds and from providing information to bonding and surety companies about the Plaintiff's claims.

39.     NetVersant NE's failure to make required contributions has resulted in a loss of investment income for the Funds and threatens their actuarial soundness, since in many cases the Funds continue to provide benefits or be obligated to provide benefits to employees and their beneficiaries.  The ability of the Funds to meet their obligations pursuant to the employee benefit plans is and has been harmed by NetVersant NE's failure to make the contributions required under the Telecommunication Agreements.

40.     The Funds will suffer irreparable harm if NetVersant-NE is not enjoined from further violating the Telecommunication Agreements and ordered to specifically perform and comply with its obligations under the Telecommunication Agreements, as interpreted by the Arbitration Decision, and the rules and regulations incorporated therein by paying on time, submitting the required reports, and providing project specific information because:

      a.     the failure to timely pay contributions adversely affects the Funds' actuarial soundness, especially where they must continue to provide benefits to employees and their beneficiaries, and it increases the Funds' costs, while reducing their investment income;

      b.     failure to submit required reports prevents the Funds from determining the amounts due and deprives them of critical information about the identity of persons working for NetVersant NE and the hours worked, further preventing them from notifying those who might suffer loss of benefits as a result of NetVersant NE's failure to pay contributions when due; and

-13-

c.    failure to submit required reports and respond to requests for project-specific information about projects, contractors, and bonding and surety companies deprives the Funds of the ability to make and recover through other sources or to obtain attachments to secure their claims.

COUNT II

(RICO Claim Against Defendants NetVersant Solutions, Feldman, Fordham Hale and Fiedler)

41.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 as if full restated.

42.    NetVersant Solutions was incorporated on July 31, 1998 and is a privately held company.  Soon after its formation, and with $25 million in investor capital, it began purchasing the stock of small telecommunication companies in different states and regions throughout the United States.

43.    Effective November 17, 2000, NetVersant Solutions purchased 100% of the stock of JCI Communications, Inc.  Through its Senior Vice President, Fiedler, NetVersant Solutions entered into a stock purchase agreement with JCI Communications, Inc. and others, including Feldman, who was a beneficial owner of the JCI Communications Business Trust that owned the stock of JCI Communications, Inc.  At the time of the stock purchase, Feldman was the Executive Vice President of JCI Communications, Inc.

44.    Soon after the purchase of JCI Communications, Inc. by NetVersant Solutions, NetVersant Solutions began to assert complete control and domination over every aspect of JCI Communications, Inc. through a series of actions.  NetVersant Solutions appointed officers of NetVersant Solutions as the officers of JCI Communications, Inc.

45.    Fiedler, the Senior Vice President, General Counsel and Secretary of NetVersant Solutions became the sole Director and Clerk of JCI Communications, Inc. shortly after the

purchase.

46.    Feldman became the Regional Vice President (East) of NetVersant Solutions.

47.    Ronald Hale, Jr., the Vice President, Finance & Treasurer of NetVersant Solutions became the Treasurer of NetVersant NE while maintaining his status as Vice President, Finance & Treasurer of NetVersant Solutions.

48.    Effective January 1, 2002, James C. Hazelwood ("Hazelwood") was sent from NetVersant Solutions to become President of NetVersant NE.  By May, 2002, Hazelwood controlled all check writing authority of NetVersant NE and, as an appointed agent of NetVersant Solutions, routinely reported to officers of NetVersant Solutions by telephone wire, internet and e-mail.  On and after April, 2002, no check could be written to the Funds without the approval of NetVersant Solutions or an agent of NetVersant Solutions under the control and supervision of its officers.  Effective January 1, 2003, Feldman replaced Hazelwood as President of NetVersant NE while maintaining his status as Regional Vice President (East) of NetVersant Solutions.

49.    NetVersant Solutions caused JCI Communications, Inc.'s name to be changed to NetVersant-New England, Inc.

50.    NetVersant Solutions required and requires accounts receivables of NetVersant NE to be sent to a bank account controlled by NetVersant Solutions, Fordham and Hale. NetVersant Solutions has also stripped the accounts receivables from control of NetVersant NE through creation of NetVersant National, Inc., a subsidiary of NetVersant Solutions, to centralize billing, administrative functions, deployment of technicians, purchasing functions, and to bring other functions of NetVersant NE under the control of NetVersant Solutions, including control of accounts and business contacts once under NetVersant NE's control.

51.    NetVersant Solutions controls the processing of all payroll of NetVersant NE

through its office in Texas and its agents located at NetVersant NE in Boston.  Human Resources

for the subsidiaries, including NetVersant NE, is controlled by NetVersant Solutions which

advertises for employment positions for its subsidiaries and lists NetVersant Solutions as the

employing company, including for jobs at the Boston location of NetVersant NE.  NetVersant

Solutions has ignored the separate legal corporate form of NetVersant NE in order to effect

complete control and operation of NetVersant NE.

52.     Contracts generally entered into by NetVersant NE, including the

Telecommunications Agreement (2003 -2008), first have to be approved by NetVersant

Solutions through its General Counsel, Fiedler.

53.     Through the implementation of an Oracle software system, NetVersant Solutions

has stripped away any remaining autonomous management capabilities of NetVersant NE to

allow NetVersant NE to be directly operated in real time by NetVersant Solutions and its officers

using interstate wire and radio communication.

54.     NetVersant Solutions maintains a national Customer Call Center to dispatch

maintenance and service work, including the Massachusetts area.

55.     NetVersant NE is required to prepare a list of accounts payable which must be

approved or denied by an officer of NetVersant Solutions.  Payment would come from Bank One,

an account controlled by NetVersant Solutions.

56.     NetVersant Solutions files consolidated financial statements for all of its

subsidiary corporations.

57.     NetVersant Solutions further dominated NetVersant NE through weekly

conference calls via telephone between NetVersant Solutions' office in Houston, Texas, in which

Fordham, Hale, Fiedler and NetVersant Solutions' Senior Vice President and Chief Operating

Officer, Frank Montfort, would be on the call, and Feldman and others at NetVersant NE's

offices in Boston.  Through these calls, NetVersant Solutions ensured that it maintained complete

control over NetVersant NE in the latter's daily operations.  These telephone conferences were

held weekly on each Tuesday at 1:00 p.m. and additional conference calls were regularly held.

During these telephone conferences, all aspects of NetVersant NE's operations were discussed,

including sales, receivables, profitability, utilization, new work, and labor issues.  Fordham and

Feldman also discussed labor issues concerning the hiring of local 2222 members to perform

work within the Scope of Work clause of the Telecommunications Agreements, the dispute that

led to the Arbitration Decision and subsequent litigation, and the reporting of hours and decision

not to make payment of contributions to the Funds for such underreported hours.

58.    Feldman made use of a RIM BlackBerry wireless device for e-mail

communication and thereby engaged in such interstate radio communications with Fordham and

other officers at NetVersant Solutions to execute and further their scheme to defraud the Pension

Fund and Deferred Income Fund of millions of dollars of their assets.

59.    During the weekly telephone conferences referenced in paragraph 57, Fordham

and Feldman conspired to cause NetVersant NE to file false Payroll Reports and devised their

scheme to defraud the Funds, including the Pension Fund and Deferred Income Fund, by

continuing to have employees perform hours of service within the Scope of Work clause of the

Telecommunications Agreements and knowingly, wilfully, and recklessly agreed to violate the

Telecommunications Agreements by causing NetVersant NE to file false Payroll Reports and to

fail to pay the contributions to the Funds required by the Telecommunications Agreements.

Fordham and Feldman used such interstate wire telephone communications to execute and

further their scheme to defraud the Pension Fund and Deferred Income Fund of millions of

dollars of their assets, which scheme is ongoing.

60.    After the Arbitration Decision determined that all employees of NetVersant NE,
including employees that are members of IBEW Local 2222, who perform work within the Scope
of Work clause of the Telecommunications Agreement, are covered employees that are subject to
the Telecommunications Agreements for whom monthly reports and contributions must be made
the Funds and LMCT in accordance with such agreement, NetVersant NE failed to file corrected
Payroll Reports that NetVersant NE had mailed via the United States Postal Service to the Funds
and LMCT to correct the following:

a.    For the months of October through December, 1998, NetVersant NE reported a
no hours worked during this period by employees of NetVersant NE that performed work within
the Scope of Work clause of the Telecommunications Agreement (1997-2000) for which hours
contributions were required to be paid to the Pension Fund and Deferred Income Fund at a
specific rate per hour specified in the Telecommunications Agreement (1997-2000).  Feldman
and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of
the Administrator in this action, now have certified that 29,917.5 unreported hours were worked
under the Scope of Work clause of the Telecommunications Agreement (1997-2000) by
employees of NetVersant NE during this period.  Feldman and NetVersant NE thereby concealed
a debt in contributions to the Pension Fund in the amount of $97,231.87 for this period, plus
interest thereon owed under the Telecommunications Agreement (1997-2000).  Feldman and
NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the
amount of $59,835 for this period, plus interest thereon owed under the Telecommunications
Agreement (1997-2000).

b.    For the months of January through December, 1999, NetVersant NE reported

38,298.5 hours worked during this period by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (1997-2000) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (1997-2000) . Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 135,697.75 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (1997-2000) by employees of NetVersant NE during this period. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $440,985.18 for this period, plus interest thereon owed under the Telecommunications Agreement (1997-2000). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $271,375.50 for this period, plus interest thereon owed under the Telecommunications Agreement (1997-2000).

      c.      For the months of January through December, 2000, NetVersant NE reported 66,950.58 hours worked during this period by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreements for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreements. Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 126,373.2 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreements by employees of NetVersant NE during this period. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $442,306.20 for this period, plus

interest thereon owed under the Telecommunications Agreements. Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $252,746.40 for this period, plus interest thereon owed under the Telecommunications Agreements.

      d.      For the months of January through December, 2001, NetVersant NE reported 74,571.5 hours worked during this period by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 126,408 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during this period. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $474,030 for this period, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $316,020 for this period, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

      61.      On or about February 13, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in January 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the

Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on February 15, 2002. This report falsely listed a total of 5,967.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 30,105 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during January, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $112,893.75 for the month of January, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $75,262.50 for the month of January, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

62.    On or about March 13, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in February 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on March 20, 2002. This report falsely listed a total of 5,364.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action,

now have certified that an additional 9,213.2 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during February, 2002.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $34,549.50 for the month of February, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).  Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $23,022 for the month of February, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

63.    On or about April 14, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in March 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003).  The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on or about April 15, 2002.  This report falsely listed a total of 5,023.5 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003).  Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 9,951.5 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during March, 2002.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $39,806 for the month of March, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).  Feldman and NetVersant

-22-

NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of

$24,878.75 for the month of March, 2002, plus interest thereon owed under the

Telecommunications Agreement (2000-2003).

64.     On or about May 14, 2002, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in April 2002 by employees of NetVersant

NE that performed work within the Scope of Work clause of the Telecommunications Agreement

(2000-2003) for which hours contributions were required to be paid to the Pension Fund and

Deferred Income Fund at a specific rate per hour specified in the Telecommunications

Agreement (2000-2003).  The Pension Fund and Deferred Income Fund received this report by

delivery through the United States Postal Service on May 15, 2002.  This report falsely listed a

total of 4,521 hours worked under the Scope of Work clause of the Telecommunications

Agreement (2000-2003).  Feldman and NetVersant NE, in response to Interrogatories and

Requests for Production of Documents of the Administrator in this action, now have certified

that an additional 9,185.5 unreported hours were worked under the Scope of Work clause of the

Telecommunications Agreement (2000-2003) by employees of NetVersant NE during April,

2002.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension

Fund in the amount of $36,742 for the month of April, 2002, plus interest thereon owed under

the Telecommunications Agreement (2000-2003).  Feldman and NetVersant NE thereby

concealed a debt in contributions to the Deferred Income Fund in the amount of $22,963,75 for

the month of April, 2002, plus interest thereon owed under the Telecommunications Agreement

(2000-2003).

65.     On or about June 11, 2002, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in May 2002 by employees of NetVersant

NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on June 13, 2002. This report falsely listed a total of 5,868.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 8,198 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during May, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $35,672 for the month of May, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $22,295 for the month of May, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

66. On or about July 12, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in June 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on July 15, 2002. This report falsely listed a total of 4,351.50 hours worked under the Scope of Work clause of the Telecommunications

Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 9,758 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during June, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $39,032 for the month of June, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $24,395 for the month of June, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

67.     On or about August 14, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in July 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on August 15, 2002. This report falsely listed a total of 4,911.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 9,302 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during July, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $37,208 for the month of July, 2002, plus interest thereon owed under the

Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $23,255 for the month of July, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

68.     On or about September 16, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in August 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on September 20, 2002. This report falsely listed a total of 3,755.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 9,177.5 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during August, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $36,710 for the month of August, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $22,943.75 for the month of August, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

69.     On or about October 12, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in September 2002 by employees of

NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on October 15, 2002. This report falsely listed a total of 3,299.50 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 1,962 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during September, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $8,829 for the month of September, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $4,905 for the month of September, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

70.    On or about November 14, 2002, NetVersant NE mailed via the United States Postal Service a two-page Monthly Payroll Report for hours worked in October 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on November 15, 2002.

This report falsely listed a total of 3,937 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 3,041 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during October, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $13,684.50 for the month of October, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $7,602.50 for the month of October, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

71.    On or about December 13, 2002, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in November 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on December 17, 2002. This report falsely listed a total of 3,101 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 5,935 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant

NE during November, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $26,707.50 for the month of November, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $14,837.50 for the month of November, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

72.    On or about January 13, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in December 2002 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on January 15, 2003. This report falsely listed a total of 4,738.5 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 5,938.5 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during December, 2002. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $26,723.25 for the month of December, 2002, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $14,846.25 for the month of December, 2002, plus interest thereon owed under the

Telecommunications Agreement (2000-2003).

73.    On or about February 3, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in January 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003).  The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on February 14, 2003. This report falsely listed a total of 3,702.5 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003).  Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 7,189.5 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during January, 2003.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $32,352.75 for the month of January, 2003, plus interest thereon owed under the Telecommunications Agreement (2000-2003).  Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $17,973.75 for the month of January, 2003, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

74.    On or about March 3, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in February 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2000-2003) for which hours contributions were required to be

paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2000-2003). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on March 17, 2002. This report falsely listed a total of 3,427 hours worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 6,562 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2000-2003) by employees of NetVersant NE during February, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $29,529 for the month of February, 2003, plus interest thereon owed under the Telecommunications Agreement (2000-2003). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $16,405 for the month of February, 2003, plus interest thereon owed under the Telecommunications Agreement (2000-2003).

75.    On or about April 5, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in March 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement. The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on April 7, 2003. This report falsely listed a total of 3,850.5 hours worked under the Scope of Work clause of the Telecommunications Agreement. Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in

this action, now have certified that an additional 7,993 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement by employees of NetVersant NE during March, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $35,970.75 for the month of March, 2003, plus interest thereon owed under the Telecommunications Agreement. Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $19,983.75 for the month of March, 2003, plus interest thereon owed under the Telecommunications Agreement.

76.     On or about May 12, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in April 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement. The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on May 14, 2003. This report falsely listed a total of 2,989.5 hours worked under the Scope of Work clause of the Telecommunications Agreement. Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 7,809.5 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement by employees of NetVersant NE during April, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $35,142.75 for the month of April, 2003, plus interest thereon owed under the Telecommunications Agreement. Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $19,523.75 for

the month of April, 2003, plus interest thereon owed under the Telecommunications Agreement.

77.    On or about June 9, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in May 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement. The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on June 11, 2003. This report falsely listed a total of 2,714 hours worked under the Scope of Work clause of the Telecommunications Agreement. Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 7,076 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement by employees of NetVersant NE during May, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $31,842 for the month of May, 2003, plus interest thereon owed under the Telecommunications Agreement. Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $17,690 for the month of May, 2003, plus interest thereon owed under the Telecommunications Agreement.

78.    On or about July 13, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in June 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund received this report by

-33-

delivery through the United States Postal Service on July 15, 2003.  This report falsely listed a

total of 2,297 hours worked under the Scope of Work clause of the Telecommunications

Agreement (2003-2008).  Feldman and NetVersant NE, in response to Interrogatories and

Requests for Production of Documents of the Administrator in this action, now have certified

that an additional 6,769 unreported hours were worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008) by employees of NetVersant NE during June,

2003.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension

Fund in the amount of $30,460.50 for the month of June, 2003, plus interest thereon owed under

the Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE thereby

concealed a debt in contributions to the Deferred Income Fund in the amount of $16,922.50 for

the month of June, 2003, plus interest thereon owed under the Telecommunications Agreement

(2003-2008).

79.    On or about August 11, 2003, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in July 2003 by employees of NetVersant

NE that performed work within the Scope of Work clause of the Telecommunications Agreement

(2003-2008)  for which hours contributions were required to be paid to the Pension Fund and

Deferred Income Fund at a specific rate per hour specified in the Telecommunications

Agreement (2003-2008).  The Pension Fund and Deferred Income Fund received this report by

delivery through the United States Postal Service on August 13, 2003.  This report falsely listed a

total of 2,793 hours worked under the Scope of Work clause of the Telecommunications

Agreement.  Feldman and NetVersant NE, in response to Interrogatories and Requests for

Production of Documents of the Administrator in this action, now have certified that an

additional 6,316 unreported hours were worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008) by employees of NetVersant NE during July, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $28,422 for the month of July, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $15,790 for the month of July, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

80.    On or about September 10, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in August 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on September 15, 2003. This report falsely listed a total of 1,994 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 5,877 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during August, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $26,446.50 for the month of August, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $14,692.50 for the month of August, 2003, plus interest thereon owed under the

-35-

Telecommunications Agreement (2003-2008).

81.    On or about October 14, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in September 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008).  The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on October 15, 2003. This report falsely listed a total of 1,682 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 6,189 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during September, 2003.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $27,850.50 for the month of September, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $15,472.50 for the month of September, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

82.    On or about November 15, 2003, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in October 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be

paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the

Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund

received this report by delivery through the United States Postal Service on November 17, 2003.

This report falsely listed a total of 1,831 hours worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to

Interrogatories and Requests for Production of Documents of the Administrator in this action,

now have certified that an additional 7,543 unreported hours were worked under the Scope of

Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant

NE during October, 2003. Feldman and NetVersant NE thereby concealed a debt in

contributions to the Pension Fund in the amount of $33,943.50 for the month of October, 2003,

plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and

NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the

amount of $18,857.50 for the month of October, 2003, plus interest thereon owed under the

Telecommunications Agreement (2003-2008).

83.    On or about December 13, 2003, NetVersant NE mailed via the United States

Postal Service a two-page Payroll Report for hours worked in November 2003 by employees of

NetVersant NE that performed work within the Scope of Work clause of the

Telecommunications Agreement (2003-2008) for which hours contributions were required to be

paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the

Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund

received this report by delivery through the United States Postal Service on December 15, 2003.

This report falsely listed a total of 1,682 hours worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to

Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 4,911 hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during November, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $22,099.50 for the month of September, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $12,277.50 for the month of November, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

84.     On or about January 19, 2004, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in December 2003 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on January 21, 2004. This report falsely listed a total of 2,196 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 6,142 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during December, 2003. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $27,639 for the month of December, 2003,

plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $15,355 for the month of December, 2003, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

85.     On or about February 15, 2004, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in January 2004 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on February 18, 2004. This report falsely listed a total of 1,535 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 5,654 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during January, 2004. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $25,443 for the month of January, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $14,135 for the month of January, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

86.     On or about March 13, 2004, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in February 2004 by employees of

NetVersant NE that performed work within the Scope of Work clause of the

Telecommunications Agreement (2003-2008) for which hours contributions were required to be

paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the

Telecommunications Agreement (2003-2008).  The Pension Fund and Deferred Income Fund

received this report by delivery through the United States Postal Service on March 15, 2004.

This report falsely listed a total of 1,178.5 hours worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE, in response to

Interrogatories and Requests for Production of Documents of the Administrator in this action,

now have certified that an additional 5,440.5 unreported hours were worked under the Scope of

Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant

NE during February, 2004.  Feldman and NetVersant NE thereby concealed a debt in

contributions to the Pension Fund in the amount of $24,482.25 for the month of February, 2004,

plus interest thereon owed under the Telecommunications Agreement (2003-2008).  Feldman and

NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the

amount of $13,601.25 for the month of February, 2004, plus interest thereon owed under the

Telecommunications Agreement (2003-2008).  On these same dates, NetVersant NE mailed

corrected reports for October and December 2003 hours which *subtracted* 36 hours for October

2003 and 40 hours for December 2003 and *offset* contributions otherwise reported for February,

2004 to recoup the alleged overpayment.  No corrected reports were filed by NetVersant NE for

any of the hundreds of thousands in underreported hours for the months of October 1998 through

February, 2004.

      87.    On or about April 16, 2004, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in March 2004 by employees of NetVersant

NE that performed work within the Scope of Work clause of the Telecommunications Agreement

(2003-2008) for which hours contributions were required to be paid to the Pension Fund and

Deferred Income Fund at a specific rate per hour specified in the Telecommunications

Agreement (2003-2008).  The Pension Fund and Deferred Income Fund received this report by

delivery through the United States Postal Service on or about April 18, 2004.  This report falsely

listed a total of 1,304.5 hours worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE, in response to

Interrogatories and Requests for Production of Documents of the Administrator in this action,

now have certified that an additional 6,085.5 unreported hours were worked under the Scope of

Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant

NE during March, 2004.  Feldman and NetVersant NE thereby concealed a debt in contributions

to the Pension Fund in the amount of $27,384.75 for the month of March, 2004, plus interest

thereon owed under the Telecommunications Agreement (2003-2008).  Feldman and NetVersant

NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of

$15,213.75 for the month of March, 2004, plus interest thereon owed under the

Telecommunications Agreement (2003-2008).

88.     On or about May 16, 2004, NetVersant NE mailed via the United States Postal

Service a two-page Payroll Report for hours worked in April 2004 by employees of NetVersant

NE that performed work within the Scope of Work clause of the Telecommunications Agreement

(2003-2008) for which hours contributions were required to be paid to the Pension Fund and

Deferred Income Fund at a specific rate per hour specified in the Telecommunications

Agreement (2003-2008).  The Pension Fund and Deferred Income Fund received this report by

delivery through the United States Postal Service on or about May 19, 2004.  This report falsely listed a total of 1,222 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 5,009 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during April, 2004.  Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $22,540.50 for the month of April, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008).  Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $12,522.50 for the month of April, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

89.    On or about June 19, 2004, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in May 2004 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008)  for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008).  The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on June 21, 2004.  This report falsely listed a total of 1,145 hours worked under the Scope of Work clause of the Telecommunications Agreement.  Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that an additional 4,537.5 unreported hours were worked under the Scope of Work clause of the

Telecommunications Agreement (2003-2008) by employees of NetVersant NE during May, 2004. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $20,418.75 for the month of May, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred Income Fund in the amount of $11,343.75 for the month of May, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

90.    On or about July 13, 2004, NetVersant NE mailed via the United States Postal Service a two-page Payroll Report for hours worked in June 2004 by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund at a specific rate per hour specified in the Telecommunications Agreement (2003-2008). The Pension Fund and Deferred Income Fund received this report by delivery through the United States Postal Service on or about July 15, 2004. This report falsely listed a total of 1,725 hours worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE, in response to Interrogatories and Requests for Production of Documents of the Administrator in this action, now have certified that at least an additional 2,208 unreported hours were worked under the Scope of Work clause of the Telecommunications Agreement (2003-2008) by employees of NetVersant NE during June, 2004 through June 11, 2004. Feldman and NetVersant NE thereby concealed a debt in contributions to the Pension Fund in the amount of $9,936 for the month of June, 2004 through June 11, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008). Feldman and NetVersant NE thereby concealed a debt in contributions to the Deferred

Income Fund in the amount of $5,520 for the month of June, 2004 through June 11, 2004, plus interest thereon owed under the Telecommunications Agreement (2003-2008).

91.    NetVersant NE continues to mail to the Funds using the United States Postal Service the two-page Payroll Report for hours worked in July, 2004 and for months thereafter by employees of NetVersant NE that performed work within the Scope of Work clause of the Telecommunications Agreement (2003-2008) for which hours contributions were required to be paid to the Pension Fund and Deferred Income Fund which Feldman and Fordham know to be false, fraudulent and to conceal the actual hours worked by employees of NetVersant NE within the Scope of Work clause of the Telecommunications Agreement (2003-2008).

92.    The Payroll Reports referenced in paragraphs 60-91 are required to be kept under ERISA pursuant to the requirements of ERISA §107.  These Payroll Reports contain payroll information such as employee names, hours worked by covered employees, social security numbers, gross wages, and contribution amounts.  These Payroll Reports contain information that is necessary to verify, explain, clarify or check for accuracy and completeness the annual reports filed by the Funds in accordance with ERISA §104.

93.    The Payroll Reports referenced in paragraphs 60-91 contain information required to be certified to the Administrator under the Telecommunications Agreements and the Collection Policy of the Trustees of the Funds.

94.    NetVersant Solutions, Feldman and Fordham knowingly caused NetVersant NE to mail the false Payroll Reports referenced in paragraphs 60-91.  This mailing occurred *after* NetVersant Solutions, Feldman and Fordham knew that the Arbitration Decision both had rejected the purported "jurisdictional agreement" as invalid and ruled that employees of NetVersant NE, including members of Local 2222, who performed work within the Scope of

-44-

Work clause of the Telecommunications Agreements were considered covered by the Telecommunications Agreements. Both the Arbitration Decision and the Telecommunications Agreements require that contributions be paid to the Funds at the rates stated in the Telecommunications Agreements for such employees of NetVersant NE. The decision not to report all hours and not to make payment of contributions to the Funds as required by the Telecommunications Agreements was made by NetVersant Solutions and Fordham and was implemented by co-conspirators Feldman, Hale, and Fiedler.

95.    Each of the mailings and acts referenced in paragraphs 60-94 constitute mail fraud indictable offenses against NetVersant Solutions, Feldman, Hale, Fiedler and Fordham pursuant to 18 U.S.C. §1341.

96.    NetVersant Solutions, Feldman, Fiedler, Hale and Fordham have conspired by causing to be mailed fraudulent Payroll Reports to conceal the nature of their theft, abstraction and conversion of assets of the Deferred Income Fund and Pension Fund to their use and that of the use of NetVersant NE and its employees.

97.    NetVersant NE has sought to delay the Administrator's bringing this action by misrepresentation and fraud.

98.    By letter dated January 9, 2004, Feldman knowingly misrepresented the previously underreported hours under the Telecommunications Agreements by reporting to the Funds that 146,302 hours were unreported for the period November 1, 1998 through December 6, 2003. Feldman provided such false information to mislead the Funds that less money is owed to them and to fraudulently induce the Funds to accept in settlement less money to satisfy NetVersant NE's obligation to the Funds.

99.    NetVersant Solutions has diverted, appropriated for its own use, and siphoned off

assets of NetVersant NE during the period NetVersant NE owed contributions to the Pension Fund and Deferred Income Fund.

100.    The Telecommunications Agreements allow a signatory employer to withdraw its right to negotiate renewal of the Telecommunications Agreements from the employers' association, in this case the National Electrical Contractors Association of Greater Boston, Boston Chapter NECA ("NECA"), and thereby elect not to renew the Telecommunications Agreement by giving notice to NECA and the Union at least 150 days before the expiration of the Telecommunications Agreement.  After the Arbitration Decision was issued February 4, 2002, NetVersant Solutions, Feldman, Fiedler and Fordham caused NetVersant NE to elect not to terminate the Telecommunications Agreement (2000-2003) by withdrawing its right to have NECA negotiate renewal of the March 1, 2000 through February 28, 2003 Telecommunications Agreement and thereby remained obligated under the successor Telecommunications Agreement (2003 -2008).  Feldman, Fiedler and Fordham willfully and knowingly chose not to terminate the Telecommunications Agreement (2000-2003) and renewed the Telecommunications Agreement (2003 - 2008) with the intent not to pay the contributions required to the Funds at the rates set forth in the Telecommunications Agreement (2003-2008) and to conceal from the Payroll Reports over 640,195 hours worked within the Scope of Work clause of the Telecommunications Agreements.

101.    By remaining signatory to the Telecommunications Agreements and not complying with the requirements applicable to other employers signatory to the Telecommunications Agreement, NetVersant NE, and directly and indirectly NetVersant Solutions, has obtained, among others, the following economic and financial advantages:

a.    For the period October 1, 1998 through June 11, 1004, NetVersant NE has not

-46-

paid $7,442,995.50 in contributions owed to the Funds and LMCT, plus unknown underreported contributions from June 12, 2004 and thereafer.

b.    NetVersant NE has obtained a competitive advantage against other signatory employers to the Telecommunications Agreements who pay the required contributions to the Funds and LMCT at the rates specified in the Telecommunications Agreements.  Employers that comply with their obligations under the Telecommunications Agreements must factor such obligation into the bids that they make for contracts to perform telecommunication work on various projects.  NetVersant NE, through the conduct of those who control it, NetVersant Solutions, Feldman, Fordham Hale and Fiedler, has demonstrated an intent not to pay these contributions.  As a result, NetVersant NE is able to underbid its competitors on such contracts and obtain a financial benefit.

c.    NetVersant NE has been able to obtain subcontracts from employers signatory to both the Telecommunications Agreements and to another collective bargaining agreement, the Inside Construction Agreement, which it would not be able to obtain if it were not signatory to the Telecommunications Agreements.

d.    NetVersant NE is able to retain jobs traditionally done union, such as work under project labor agreements and state funded projects as a result of being signatory to the Telecommunications Agreements that it would not have otherwise obtained.

102.    The Pension Fund is required under its plan and under federal law to credit each hour worked in covered employment by employees of NetVersant NE covered by the Telecommunications Agreements for purposes of credited service and payment of benefits under its plan, even if NetVersant NE as an employer fails to make payment of contributions required to be paid to the Pension Fund by NetVersant NE.

103.    The Deferred Income Fund is required under its plan and federal law to credit each hour worked in covered employment by employees of NetVersant NE covered by the Telecommunications Agreements for purposes of allocation of monies to the individual accounts of such employees under its plan, even if NetVersant NE as an employer fails to make payment of contributions required to be paid to the Deferred Income Fund by NetVersant NE.

104.    The Inside Construction Agreement prohibits a signatory employer from subcontracting work covered by the Telecommunications Agreement to an employer that is not signatory to the Telecommunications Agreements.  NetVersant NE has obtained numerous subcontracts from signatory employers to the Inside Construction Agreement because it is itself signatory to the Telecommunications Agreements.  NetVersant NE obtained subcontracts from Reach and Apply Defendants Maiuri Electrical Company and Daisy Electric, Inc.

105.    NetVersant NE has obtained contracts and/or subcontracts on so-called "union jobs" and contracts required to be performed by a union contractor under project labor agreements because it is a signatory employer to the Telecommunications Agreement.

106.    By the foregoing alleged conduct, and specifically the conduct alleged in paragraphs 60-105, NetVersant Solutions, Feldman, Hale, Fiedler and Fordham have committed acts of mail fraud that are indictable under 18 U.S.C. §1341.

107.    By the foregoing alleged conduct,  and specifically the conduct alleged in paragraphs 60-105, NetVersant Solutions, Feldman, Hale, Fiedler and Fordham have committed acts of fraudulent reporting to an ERISA plan that are indictable under 18 U.S.C. §1027.

108.    By the foregoing alleged conduct, including the acts alleged in paragraphs 53-59, NetVersant Solutions, Feldman, Hale, Fiedler and Fordham have committed acts of wire fraud that are indictable under 18 U.S.C. §1341.

-48-

109.    By the foregoing alleged conduct, NetVersant Solutions, Feldman, Hale, Fiedler and Fordham have stolen, or unlawfully and wilfully abstracted and converted, monies, funds, credits, property or other assets of the Pension Fund and Deferred Income Fund, and continue to commit such offenses, which are indictable under 18 U.S.C. §664.

110.    NetVersant NE is an "enterprise" within the meaning of 18 U.S.C. §1961(4).

111.    By the conduct alleged in the foregoing paragraphs, NetVersant Solutions, Feldman, Hale, Fiedler and Fordham have directly and indirectly conducted NetVersant NE affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

112.    As a direct result of the violation of 18 U.S.C. §1962(c) by NetVersant Solutions, Feldman, Fiedler, Hale and Fordham, the Pension Fund has been injured through June 11, 1004 in the amount of $2,395,017.30, with damages ongoing in an amount to be determined by the Court, plus loss of investment income, costs and attorney's fees.

113.    As a direct result of the violation of 18 U.S.C. §1962(c) by NetVersant Solutions, Feldman, Fiedler, Hale and Fordham, the Deferred Income Fund has been injured through June 11, 1004 in the amount of $1,454,465.40, with damages ongoing in an amount to be determined by the Court, plus loss of investment income, costs and attorney's fees.

<u>COUNT III</u>

<u>(CONSPIRACY)</u>

114.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 113 as if full restated.

115.    NetVersant Solutions, Feldman, Hale, Fiedler and Fordham conspired to violate 18 U.S.C. §1962(c) in violation of 18 U.S.C. §1962(d) by agreeing to commit or have others commit the acts described in paragraphs 1 through 113.

116.    As a direct result of the violation of 18 U.S.C. §1962(d) by NetVersant Solutions, Feldman, Hale, Fiedler and Fordham, the Pension Fund has been injured through June 11, 1004 in the amount of $2,395,017.30, with damages ongoing in an amount to be determined by the Court, plus loss of investment income, costs and attorney's fees.

117.    As a direct result of the violation of 18 U.S.C. §1962(d) by NetVersant Solutions, Feldman, Fiedler, Hale and Fordham, the Deferred Income Fund has been injured through June 11, 1004 in the amount of $1,454,465.40, with damages ongoing in an amount to be determined by the Court, plus loss of investment income, costs and attorney's fees.

<u>COUNT IV</u>

118.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 117 as if full restated.

119.    NetVersant Solutions took control of the accounts receivable and other assets of NetVersant NE at a time when NetVersant NE was delinquent in the payment of millions of dollars in contributions owed to the Funds through appointment of its agents as officers and a director of NetVersant NE, and other acts of domination previously alleged.  NetVersant NE's accounts receivable and its goodwill and client lists constituted its greatest assets, which were appropriated by NetVersant Solutions, and NetVersant NE was thereby rendered insolvent.

120.    On and after the purchase of JCI Communications, Inc. by NetVersant Solutions, NetVersant Solutions and NetVersant NE intermingled assets and otherwise ignored the separate corporate identify of NetVersant NE, and NetVersant Solutions diverted assets of NetVersant NE to NetVersant Solutions' use and purposes as the dominant stockholder.

121.    After the Arbitration Decision, NetVersant Solutions has caused Payroll Reports to be falsified and has sought to avoid payment of liabilities of NetVersant NE under the

Telecommunications Agreements by diverting, appropriating for itself, and siphoning off assets of NetVersant NE.  NetVersant Solutions has also knowingly and intentionally remained signatory to the Telecommunications Agreement with no intent of paying the same rates thereunder applicable to other signatory employers.

122.    It would be manifestly unjust to permit NetVersant Solutions to make use of the corporate shield of NetVersant NE to shield it from liability as to the Funds and LMCT claims when NetVersant Solutions has effectively completely controlled and operated NetVersant NE and operated it as a facade for the benefit of NetVersant Solutions and to commit fraud by causing NetVersant NE to intentionally violate the Telecommunications Agreements for many years.

123.    NetVersant Solutions is liable for the debt of NetVersant NE to the Funds and LMCT.

COUNT V

(REACH AND APPLY/M.G.L.c. 214, §3(6))

124.    The Plaintiff incorporates by reference the allegations in paragraphs 1 through 123 as if full restated.

125.    NetVersant NE is under contract with, or is owed presently money or may be owed money in the future, from Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc. (collectively the "Reach and Apply Defendants").

126.    The Funds and the LMCT will suffer immediate and irreparable harm if the Reach and Apply Defendants, or anyone acting on their behalf or as surety, pay NetVersant NE (or on its behalf pay any of its principals, agents, parent companies, successors or assigns) on their

contracts as NetVersant NE is unable to and/or has failed to pay the Plaintiff, or to even report the hours worked by its employees as required by the Telecommunication Agreements, despite a final judgment that requires NetVersant NE to do so.

127.    Plaintiff is unaware of any liability insurance or bonding, or other assets, by which NetVersant NE could satisfy a judgment in excess of $7,000,000 owed to the Plaintiff.

128.    An employer's failure to make required contributions adversely affects the Funds' and LMCT's financial integrity.  Lost contributions mean lost investment income.

129.    Unpaid contributions also adversely affect the Funds' actuarial soundness because, in many instances, the Funds continue to provide benefits to their participants and beneficiaries.  Consequently, NetVersant NE's failure to pay the Funds the amounts due undermines the Funds' ability to meet their obligations to participants and their beneficiaries.

130.    The longer it takes to make the Funds whole, the more investment income is lost to the Funds and the more expenses are incurred, all to the detriment of the Funds' participants and beneficiaries.

131.    If the Funds and LMCT are deprived of the amounts due to NetVersant NE from the Reach and Apply Defendants, it is unlikely NetVersant NE will be able to pay the judgment which has already entered against it and the judgment in this case in an amount that will likely exceed the $7,000,000 as a result of interest, additional interest and liquidated damages, costs and attorneys' fees.

132.    The monies due or to become due from the Reach and Apply Defendants, whether payable by the Reach and Apply Defendants or through their insurers or sureties, should be reached and applied to satisfy the amounts due to the Funds and LMCT.

WHEREFORE, Plaintiffs pray for the following relief:

1.      On Count I, for judgment for the Plaintiff against NetVersant NE as follows:

a.      in the amount of $7,442,995.50 in contributions for the period October 1, 1998 through June 11, 2004, and in an additional amount from June 12, 2004 until judgment is entered in an amount to be determined by the Court, and until NetVersant NE complies with its obligations under the Telecommunications Agreements, or such other sum as may be due at judgment as determined by the Court, plus interest, costs and attorneys' fees;

b.      for additional interest on such additional contributions and liquidated damages due for additional months as are due on the date judgment is entered until all amounts due are paid in full; and

c.      for the statutory amounts owed to the Funds pursuant to ERISA §502(g)(2) (29 U.S.C. §1132(g)(2)); and

d.      by enjoining NetVersant NE from further violation of the Telecommunication Agreements by requiring that it pay to the Funds and LMCT all contributions owed pursuant thereto and/or deposit such sum with the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure within ten (10) days of the date of the Court's Order.

e.      for a temporary restraining order, preliminary and permanent injunction:

(i)      enjoining NetVersant NE from further violating the Telecommunication Agreements by ordering NetVersant NE to submit the Payroll Reports for the period October 1, 1998 to the present within ten (10) days of the date of such order and further ordering NetVersant NE to submit the required monthly Payroll Reports for each succeeding month on or before the fifteenth (15th) of the following month as required by the Telecommunication Agreement (2003 -2008), and the rules and regulations incorporated therein; and

(ii)      enjoining NetVersant NE from further violating the

Telecommunications Agreements and Arbitration Decision by ordering NetVersant NE to furnish

the Plaintiff with project specific employment records, lists of projects, names and addresses of

the project owner, general contractor, construction manager, or person to whom NetVersant NE

is under contract with or performing work for within ten (10) days of the date of such order and

to continue to furnish said information with the required monthly Payroll Reports; and

2.      On Counts II and III, for judgment for the Plaintiff against NetVersant Solutions,

Feldman, Fordham, Hale and Fiedler, jointly and severally, as follows:

a.      for the Pension Fund in the amount of $7,185,051.90 representing

mandatory treble damages of the $2,395,017.30 injury caused by Defendants, for the period

October 1, 1998 through June 11, 2004 and in an additional amount representing treble damages

from June 12, 2004 until judgment in an amount to be determined by the Court, or such other

sum as may be due at judgment as determined by the Court, plus interest, costs and attorneys'

fees;

b.      for the Deferred Income Fund in the amount of $4,363,396.20,

representing mandatory treble damages of the $1,454,465.40 injury caused by Defendants, for the

period October 1, 1998 through June 11, 2004 and in an additional amount representing treble

damages from June 12, 2004 until judgment in an amount to be determined by the Court, or such

other sum as may be due at judgment as determined by the Court, plus interest, costs and

attorneys' fees;

3.      On Count IV, for judgment for the Plaintiff against NetVersant Solutions as

follows:

a.      in the amount of $7,442,995.50 in contributions for the period October 1,

1998 through June 11, 2004 and in an additional amount from June 12, 2004 until judgment in an amount to be determined by the Court, and until NetVersant NE complies with its obligations under the Telecommunications Agreements, or such other sum as may be due at judgment as determined by the Court, plus interest, costs and attorneys' fees;

        b.      for additional interest on such additional contributions and liquidated damages due for additional months as are due on the date judgment is entered until all amounts due are paid in full; and

        c.      for the statutory amounts owed to the Funds pursuant to ERISA §502(g)(2) (29 U.S.C. §1132(g)(2)); and for all amounts entered against NetVersant NE under paragraph 1 of this Prayer for relief.

        4.      On Count V, for the following relief:

        a.      for the Court to issue a temporary restraining order enjoining NetVersant-NE from assigning or encumbering any sums due or to become due from or on account of Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc., unless such assignment or encumbrance is to the Plaintiff;

        b.      for the Court to issue a temporary restraining order against Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System, Inc. enjoining them from paying or having others pay on their behalf any monies due or that may become due in the future to NetVersant NE (or on its behalf pay any of its principals, agents, parent companies, successors or assigns) until further order of this Court;

        c.      for the Court to issue a preliminary and/or permanent injunction enjoining NetVersant NE from  assigning or encumbering any sums due or to become due from or on account of Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric, Inc., and

Partners HealthCare System, Inc., unless such assignment or encumbrance is to the Plaintiff;

        d.     issue a preliminary and/or permanent injunction against Reach and Apply

Defendants Maiuri Electrical Company, Daisy Electric, Inc., and Partners HealthCare System,

Inc. enjoining them from paying or having others pay on their behalf any monies due or that may

become due in the future to NetVersant NE (or on its behalf pay any of its principals, agents,

parent companies, successors or assigns) until further order of this Court; and

        e.     for the Court to order that any and all amounts due or to become due to

NetVersant NE from Reach and Apply Defendants Maiuri Electrical Company, Daisy Electric,

Inc., and Partners HealthCare System, Inc. be reached and applied toward payment of the

judgment to be entered in favor of the Plaintiff in this action.

        5.     For such other relief as the Court deems proper.

                            RUSSELL F. SHEEHAN, as Administrator
of the Local 103, I.B.E.W. Health Benefit
Plan, the Electrical Workers Pension Fund,
Local 103, I.B.E.W., the Electrical Workers
Deferred Income Fund, Local 103, I.B.E.W.,
the Joint Apprenticeship and Training Trust
Fund, Local 103, I.B.E.W., and the
Electrical Industry Labor-Management
Cooperation Trust,

By his attorney,


    /s/David W. Healey          
David W. Healey (BBO# 548262)
DAVID W. HEALEY & ASSOCIATES
77 Franklin Street, Suite 805
Boston, MA  02110
(617) 457-3131