EXHIBIT 1

# Joint Conference Committee

Local Union 103, IBEW and Boston Chapter, NECA
Local 103 Offices, Dorchester, Massachusetts
February 4, 2002
Minutes

The hearing was convened at 9:00 a.m.

In attendance for the Union were: Richard Gambino, John Dumas and Gary Walker.

In attendance for the Association were: John Penney, William Seaver and Glenn Kingsbury.

Local Union 103, IBEW v. NetVersant–New England, Inc. (d/b/a JCI Communications):
The Committee convened as an arbitrating authority, in accordance with Section 1.05 of the
Telecommunications Agreement between Local Union 103, IBEW and the Boston Chapter,
NECA  (see attached).

The meeting adjourned at 11:00 a.m.


Richard P. Gambino, Chairman

William G. Seaver, Secretary

Joint Conference Committee
Local Union 103, IBEW and Boston Chapter, NECA

For the Association: John A. Penney, William G. Seaver, Jr. and Glenn W. Kingsbury
For the Union: Richard P. Gambino, John Dumas, and Gary Walker

Local 103 Offices, Dorchester, Massachusetts
February 4, 2002

**Grievance Hearing**

Local Union 103, IBEW v. Netversant-New England, Inc. (d/b/a/ JCI Communications)

Representing Local Union 103, IBEW: Michael Monahan
Representing Netversant-New England, Inc.(d/b/a/ JCI Communications): Robert Cunningham

CHARGES: Violation of Sections 2.01(b), 2.02, 2.04, 3.01(k), 4.01, 4.02, 4.03, 4.04, 4.05, 4.06, 4.07, 4.08, Article V (Sections 5.01-5.13), 6.07, 6.13, 6.30, 6.41, 6.42, 7.04, and Appendix A of the Telecommunications Agreement by and between Local Union 103, IBEW and the Boston Chapter, NECA.

Both parties indicated they were prepared to go forward with the charges.

Local 103 submitted the following documents relative to the charges:
A)  Summary of Charges
B)  Correspondence of January 21, 2002 from Local 103 to NetVersant.
C)  Correspondence of January 24, 2002 from Joint Conference Committee to NetVersant.
D)  JCI Communications' Letter of Assent dated October 1, 1998 to the Telecommunications Agreement.
E)  Complaint brought by Local 103 against NetVersant/JCI to the National Labor Relations Board.
F)  Certified payrolls for Maverick Constructions for the Dedham Public School project.
G)  List of NetVersant/JCI Technicians for the period 1/1/00 – 10/11/01.
H)  Payroll records for JCI employee John Casciano for the period April-May, 2001.
I)  Correspondence from former JCI employee Thomas Kelly dated March 12, 2001.
J)  Correspondence from former JCI employee Brian Scales.
K)  Correspondence from Vitale, Caturano & Company dated October 10, 2001.
L)  Correspondence from Ira Sills of Segal, Roitman & Coleman, on behalf of Local 103, to NetVersant/JCI dated January 31, 2001.

NetVersant/JCI submitted the following documents relative to the charges:
1)  JCI Communications' Letter of Assent dated October 1, 1998 to the Telecommunications Agreement.
2)  An Agreement dated October 2, 1998 signed by Stephen Gillis, President of JCI Communications and Frank Carroll, International Vice-President of IBEW 2nd District.

On behalf of Local 103, Business Agent Monahan testified and presented documentation alleging that NetVersant/JCI violated Section 2.01(b) of the Telecommunications Agreement by subcontracting work to Maverick Construction, a non-signatory contractor (reference Attachment F). Local 103 was also prepared to call witnesses to testify of further violations of Section 201(b) at the Fort Banks Elementary School in Winthrop, MA and could document additional violations of this clause. On behalf of NetVersant/JCI, Mr. Cunningham stipulated that NetVersant/JCI had violated the Agreement in this regard.

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Section 2.02 by employing technicians who were not members of Local 103 (reference Attachment G, H, I, and J).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Section 2.04 by employing technicians who were not members of Local 103 (reference Attachment G, H, I, and J).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Section 3.01(k) by employing apprentices who were not members of Local 103 (reference Attachment G).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Sections 4.01 through 4.08 by not paying fringe benefits and withholding working assessments as required on employees covered under the terms of the Telecommunications Agreement (reference Attachment I and J).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Article V, Sections 5.01 through 5.13, by employing workers covered under the terms of the Telecommunications Agreement that were not referred to NetVersant/JCI for employment in accordance with referral procedures set forth in Article V (reference Attachment L).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Section 6.13 by not paying Sub-Foremen, Foremen, and General Foremen in accordance with the Telecommunications Agreement (reference Attachment L).

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Section 6.30 by unilaterally assigning employees.

Business Agent Monahan testified that, by the violations of the Telecommunications Agreement as set forth, Local 103 had sufficient cause to declare NetVersant/JCI not fair to the Union.

Business Agent Monahan testified that JCI had violated Section 6.42 by not notifying the Union of its trasnfer of ownership to Netversant in accordance with the Telecommunications Agreement.

Business Agent Monahan attested that NetVersant/JCI was required to pay delinquent charges in accordance with Section 7.04 for failure to make fringe benefit contributions in a timely manner.

Joint Conference Committee – 2/4/02 _____ page 3

Business Agent Monahan testified and presented evidence alleging NetVersant/JCI violated Appendix A by not paying the required rates of pay or making the required fringe benefit contributions on workers covered under the terms of the Telecommunications Agreement.

In summation, Business Agent Monahan reiterated that NetVersant/JCI had not paid their employees in accordance with either the Telecommunications Agreement or prevailing rate regulations, and had not complied with the request for information as required. Local 103 requested that all NetVersant/JCI technicians that were not paid in accordance with the Telecommunications Agreement, and/or prevailing rate regulations, be made whole.

On behalf of NetVersant/JCI, Robert Cunningham responded to the charges brought forth by the Union as follows:

In response to the violation of Section 2.01(b), Mr. Cunningham stipulated that NetVersant/JCI had improperly subcontracted work to Maverick Construction at the Winthrop site, but that the Dedham Public Schools project had been performed prior to their signing the Telecommunications Agreement on October 1, 1998.

In response to the violation of Section 6.42, Mr. Cunningham argued that NetVersant had purchased just the stock of JCI, and that Local 103 was notified verbally.

Mr. Cunningham denied the other charges brought by Local 103 and asserted that they were complying with Local 103's request for information and that all NetVersant/JCI's technicians were members of either Local 103 or Local 2222 as permitted under their Agreement with the IBEW 2nd District (reference Attachment 2).

Local 103 contested NetVersant/JCI's assertions and challenged the relevance of said Agreement, as it was not agreed to by Local 103, and as it was not approved by the International President, as required of all IBEW Agreements by the IBEW Constitution.

Both parties responded to questions from the Committee.

DECISION: The Joint Conference Committee finds that there was substantial evidence to support all of the allegations alleged by the Union. The evidence supports that a substantial number of employees have been employed by NetVersant/JCI to perform work covered by the Collective Bargaining Agreement but were not granted coverage under the Collective Bargaining Agreement. With regard to NetVersant/JCI's reliance on the an alleged Agreement between the parties allowing work to be assigned to another Union (Local 2222), the Committee is constrained to find that said Agreement dated October 2, 1998 was neither signed by Local 103, IBEW or Local 2222, IBEW, nor was it approved by the International President of the IBEW. Although we find the Agreement to be invalid because it was not signed by the affected Locals, we also take notice of the fact that the IBEW Constitution at Article 15, §6 requires that "...all agreements, jurisdiction, etc., of any kind or nature, shall be submitted...to the I.P. [International President] for approval.... No L.U. [Local Union] shall put into effect any...agreement of any kind without securing such approval. All these shall be null and void without I.P. approval. Thus, the Joint conference Committee finds that said Agreement has no legal effect. Moreover, the Committee notes that NetVersant/JCI presented no evidence that it has a current executed Collective Bargaining Agreement with Local 2222 that would justify assignment to work members of that Union pursuant to the October 2, 1998 Agreement, even if said Agreement had

Joint Conference Committee – 2/4/02         page 4

legal effect. Further, with regard to subcontracting allegations the employer NetVersant/JCI stipulated that it had improperly subcontracted work to Maverick Construction at its Winthrop site. Therefore, based on all the facts and argument submitted to the Committee and having given Local 103, IBEW and NetVersant/JCI ample opportunity to present evidence and argument, the Joint Conference Committee finds that the employer NetVersant/JCI ("the employer") violated the Collective Bargaining Agreement by assigning bargaining unit work to non-bargaining unit members and by contracting out bargaining unit work. NetVersant/JCI is hereby ordered to pay damages to Local 103 in an amount equal to make whole the Union and its members for all work assigned to non-bargaining unit members and for all work subcontracted out. The employer shall have a continuing obligation to make whole the Union for so long as it continues to violate the Agreement by assigning bargaining unit work to non-bargaining unit members and by contracting out work until the employer ceases said action. As part of its prior obligation and continuing obligation, NetVersant/JCI shall also be required to make any and all appropriate contributions to any applicable Local 103 Electrical Construction Trust Funds who were deprived of contributions as a result of the foregoing violations. Furthermore, NetVersant/JCI shall provide Local 103 with a monthly accounting which shall include a list of all its employees, their hours, work assignments, public payrolls and wages for the months in question, along with all fringe benefit contributions made as well as an explanation for any employees for whom the employer submits are not covered by the Local 103 Telecommunications Agreement. Moreover, the employer shall provide access to Local 103 Electrical Construction Trust Fund auditors and Local 103 representatives to all its records regarding all employees and contracting out if the Local Union or funds so request. The employer's liability shall run from October 1, 1998, until it complies with all of its contractual obligations. Moreover, the employer's obligation to provide the above records shall run from October 1, 1998, and shall continue until all violations are cured. The employer shall be required to pay interest of 12% as specified in Mass. General Laws, Chapter 231 §6(c) on all monies due with interest beginning to run from the date of this Award.

Signed: _____
Richard P. Gambino, Chairman

Signed: _____
William G. Seaver, Secretary

February 4, 2002