UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUSSELL F. SHEEHAN, Administrator,

Plaintiff,

v.

NETVERSANT-NEW ENGLAND, INC.
and Walsh Brothers, Incorporated, Maiuri
Electrical Company, Daisy Electric, Inc.,
and Partners HealthCare System, Inc.,

Defendants.

Civil Action No. 04-10559NMG

### NETVERSANT'S OPPOSITION TO PLAINTIFF'S MOTION
### FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendant NetVersant-New England, Inc. ("NetVersant" or the "Company") respectfully submits this Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint. The proposed Second Amended Complaint asserts two RICO counts against five new parties, including the parent corporation of the current NetVersant defendant and four individuals who are associated with the parent corporation. The Second Amended Complaint seeks through these RICO counts to hold the new parties liable for a debt alleged to be owed by the original NetVersant defendant arising out of a labor arbitration award that was addressed to the original NetVersant defendant and not to any of the new parties. These RICO counts against the proposed new parties are baseless as a matter of law: They are premised on the demonstrably false notion that the plaintiff did not know that certain hours reports omitted to include hours worked by members of Local 2222 of the International Brotherhood of Electrical Workers ("IBEW or the "International") when, in fact, the plaintiff demonstrably knew that those hours

had not been included in the reports and, therefore, he could not have been, and was not as a matter of law, misled or defrauded by their omission. Accordingly, the proposed amendments are futile, in that they are without merit as a matter of law.

As further grounds for its opposition, NetVersant states that (i) plaintiff's claims do not allege the "pattern of racketeering" required to be pleaded under RICO, and (ii) plaintiff's allegations in support of his effort to "pierce the corporate veil" are insufficient as a matter of law. NetVersant's reasons are set forth further below.

### **Undisputed Facts Demonstrating the Futility of the Proposed Amendments**

NetVersant-New England, Inc., a telecommunications services company, got caught in the middle of a jurisdictional dispute between two locals of the IBEW, Local 103 and Local 2222. In conjunction with the Business Managers of these two locals, who personally participated in ensuing negotiations, and a Vice President of the International, who likewise participated personally in the negotiations, the Company entered into a Jurisdictional Agreement in October 1998 (the "Jurisdictional Agreement") that assigned some job categories to Local 103 (generally, the more traditional electricians' jobs) and other to Local 2222 (generally, those that relate more to telecommunications activities). *See* Affidavit of Robert N. Feldman in support of NetVersant's Opposition to Motion for Preliminary Injunction ("Feldman Aff.") ¶¶ 3-6 (Docket No. 8). The parties operated under this Jurisdictional Agreement for three years, until January 2002, when Local 103 filed a grievance complaining that not all of the Company's electrical work was being assigned to members of Local 103. *Id.* ¶ 7-10. The Company asserted the Jurisdictional Agreement in connection with the arbitration of this grievance, *id.* ¶ 11, and the subsequent proceedings are recited in the plaintiff's moving papers: the arbitrators found the

2

Jurisdictional Agreement unenforceable and ordered the Company to assign all future electrical work to Local 103 and to make "appropriate" adjustments retrospectively back to 1998; this Court enforced the arbitral decision in deference to the process; and the First Circuit affirmed for the same reason.

The arbitral award in February 2002 eliminated the Jurisdictional Agreement as a solution to the jurisdictional dispute that had precipitated it; it did not eliminate the dispute. Feldman Aff. ¶ 12. Following the arbitral award and throughout the ensuing proceedings, the parties tried but could not arrive at a better solution to the jurisdictional dispute than the solution they had arrived at in 1998 – the Jurisdictional Agreement – and while they continued discussions among themselves in an effort to solve the problem in some other way, they continued acting in accordance with their earlier agreement. *Id.* ¶¶ 13. The Business Manager for Local 103 was directly and substantially involved in these discussions, and he shared the understanding that the Jurisdictional Agreement remained the only blueprint for action acceptable to any degree by all of the participants. *Id.* ¶¶ 14-15.

Local 2222 employees of NetVersant have throughout participated in Company-sponsored health and pensions plans, as they do now. Feldman Aff. ¶ 24. The Company has been making contributions to these plans and paying benefits form them according to their terms throughout these events, and it continues to do so. *Id.* The Local 103 plans have known the identities of some if not all of the Company's Local 2222 employees since at least as early as the January 2002 arbitration. *Id.* ¶ 26. Therefore, they have known that hours worked by these 2222 workers were not included among the hours reports they received. The Local 103 plans likewise have known throughout of the ongoing negotiations among Local 103 officials, Local 2222 officials, representatives of the International and representatives of the Company to resolve the

jurisdictional dispute between the two locals; and they have known that the parties were operating throughout this 2-year period under the Jurisdictional Agreement. *Id.* ¶ 18. Until December 2003, the Local 103 plans made no objection to the ongoing negotiations or the use of the Jurisdictional Agreement as a *modus operandi* in the meantime. *Id.* ¶ 19. In December 2003, the Local 103 plans made objection but offered no better alternative, and negotiations stalled. *Id.* ¶ 23. This lawsuit ensued. *Id.* ¶¶ 21-23.

NetVersant provided to plaintiff since the arbitral award periodic reports detailing the hours worked by employees of Local 103, which made perfectly clear that employees known by the plaintiff to have been Local 2222 employees were not included in the reports; these reports demonstrated that NetVersant was omitting hours worked by members of Local 2222 and was not reporting hours worked by Local 2222 employees as if they were employees of Local 103. *See* Second Amended Complaint ¶¶ 19-22.

Furthermore, in 2001, the Funds on whose behalf plaintiff is suing conducted an audit of NetVersant for the period June 1, 2000 through June 30, 2001. *See* Affidavit of Russell F. Sheehan in support of Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction ("Sheehan Aff.") ¶ 12, Exhibit 5 (Docket No. 4). The audit showed what the plaintiff already knew, and now claims to not have known, namely that NetVersant had not been reporting in its periodic submissions the hours worked by Local 2222 employees. *See* Sheehan Aff. ¶ 12.

## Plaintiff's Proposed RICO Counts Are Futile

A proposed amendment to a complaint should be denied when, as here, the added subject matter is deficient as a matter of law. *See Glassman v. Computervision Corp.*, 90 F. 3d 617, 623 (1st Cir. 1996) (affirming denial of request for leave to amend complaint because the proposed amendment would have been futile); *See also Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12, 19, 26 (1st Cir. 2001) (holding that "the district court supportably characterized the appellant's proposed amended complaint as futile and appropriately denied the motion for leave to amend," the First Circuit stated that "[w]here an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters" (quoting *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990)).

The statutory provision of RICO on which the plaintiff bases his new counts, 18 U.S.C. § 1964(c), requires as a prerequisite to its application the allegation and proof of at least two predicate acts. 18 U.S.C. § 1961. Here, the plaintiff alleges as the requisite predicate acts violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, both of which require a scheme to defraud. *See United States v. Profit*, 49 F. 3d 404, 406, n.1 (8th Cir. 1995) (reciting the elements of wire fraud); *United States v. Frey*, 42 F. 3d 795, 797 (3rd Cir. 1994) (describing the elements of mail and wire fraud); *United States v. McCann*, 366 F. 3d 46, 51 (1st Cir. 2004) (reciting the elements of mail fraud). An essential element of both infractions is an intent to defraud, which involves knowing and intentional deceit. *See, e.g., United States v. Callipari*, 368 F. 3d 22, 33 (1st Cir. 2004). Furthermore, "A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission

reasonably calculated to deceive persons of ordinary prudence and comprehension." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F. 3d 494, 528 (3d Cir. 1998). [1]

In the circumstances here, it is demonstrable that there was no intent to deceive and there was no deception. Plaintiff's assertion that he was defrauded – that he did not know the hours reports he received from NetVersant omitted the hours worked by members of a labor union with which the plaintiff had no affiliation – is itself knowingly false. Plaintiff has known, from even before the dispute was brought to arbitration and decided, and since the arbitration award, that NetVersant was operating in accordance with the Jurisdictional Agreement and was not reporting and paying benefits for hours worked by the 2222 employees as if they were 103 employees. *See* Feldman Aff., Sheehan Aff., *supra*. There was no scheme to defraud in that NetVersant, in submitting the remittance reports, was not acting in a manner reasonably calculated to deceive plaintiff, a person of ordinary prudence and comprehension, since he was aware that NetVersant was not making contributions on behalf of Local 2222 members. *See Brokerage Concepts*, 140 F. 3d at 528.

Plaintiff's knowledge that the hours worked by Local 2222 employees were omitted is documented in his own affidavit. Plaintiff swore in his affidavit that that "Defendant has refused to file the required reports or make any payment as required by the Arbitration Award despite the entry of a final judgment concerning the Arbitration Award." Sheehan Aff. ¶ 8. Plaintiff also

---

[1] Plaintiff also alleges as predicate RICO acts 18 U.S.C. § 1027 and 18 U.S.C. § 664. Second Amended Complaint ¶¶ 107, 109. 18 U.S.C. § 1027 is not a predicate act for the purposes of the relevant RICO provision, 18 U.S.C. § 1961. As for 18 U.S.C. § 664, there can only be a violation under this statute if the alleged delinquent payments are considered to be plan assets. Neither the collective bargaining agreement nor the Trust Funds' Collection Policy (attached as Exhibits 2 and 3, respectively, to Sheehan Aff.) defines unpaid contributions as plan assets. Therefore, the contributions NetVersant allegedly owes are not plan assets, and as a matter of law, there can be no violation of 18 U.S.C. § 664. *See Cadegan v. McCarron*, 2002 DNH 152, at *7-8 (D. N.H. 2002). Furthermore, a central element of 18 U.S.C. § 664 is that defendant have fraudulent intent to deprive the victim of money. *See United States v. Felice*, 481 F. Supp. 79, 89 (N.D. Oh. 1978). Plaintiff's allegation under 8 U.S.C. § 664 must also fail because, for the reasons indicated in the text, there was no fraudulent intent on the part of NetVersant.

swore that NetVersant failed to "(a) submit monthly payroll reports for all covered employees of NetVersant in a timely fashion; and (b) make the contributions required by the Arbitration Award for the period October 1, 1998 to the present and on an ongoing basis for all employees of NetVersant that performed work within the scope of work provisions of the Collective Bargaining Agreement." *Id.* ¶ 13. Furthermore, it has been documented in the Feldman Affidavit that in Robert Feldman's ongoing discussions with Michael Monahan, the Business Manager for Local 103, from the Spring of 2003 to December 2003, NetVersant provided to Mr. Monahan documents regarding personnel and payroll data for the Company's Local 2222 employees and the estimated additional cost to the Company of providing benefits to members of Local 2222 if they had been members of Local 103. Feldman Aff. ¶¶ 15, 20, 23.

There is also correspondence that demonstrates that plaintiff and the Trusts had knowledge that NetVersant was not reporting to or paying the Funds for hours worked by employees of Local 2222 as if they were members of Local 103. In two letters to Robert Feldman, the President of NetVersant, that were copied to plaintiff, dated August 27, 2003 and December 3, 2003, respectively, plaintiff's counsel demanded that NetVersant file payroll reports with Local 2222 hours and make required contributions to the Funds.[2]

From the Spring of 2003 until the end of December 2003, NetVersant and Local 103 had discussions to resolve the jurisdictional dispute. *See* Feldman Aff. ¶ 14. NetVersant continued to allocate work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement. *See Id.* ¶ 17. At no time during NetVersant's discussions with Local 103 did the Trusts ever raise any objection to either NetVersant's on-going negotiations with Local 103 or

---

[2] Copies of the August 27, 2003 and December 3, 2003 letters from David W. Healey to Robert Feldman are attached at Tabs 1 and 2, respectively, to the Supplemental Affidavit of Robert N. Feldman (hereinafter, "Supplemental Feldman Aff."), which is filed herewith.

NetVersant's continued allocation of work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement. *See Id.* ¶ 19. NetVersant provided to Local 103, during its on-going discussions with Local 103, documents regarding personnel and payroll data for NetVersant's Local 2222 employees. *See Id.* ¶ 20. Indeed, in December, 2003 plaintiff met with NetVersant, representatives of Local 103, and Bob Feldman of NetVersant to discuss the on-going negotiations between NetVersant and Local 103, and the Trusts did not raise any objections to these discussions or to NetVersant's continued allocation of work to members of Local 2222 and Local 103 in accordance with the Jurisdictional Agreement. *See Id.* ¶¶ 21, 22.

There plainly was no deception on the part of NetVersant that it was operating pursuant to the Jurisdictional Agreement, from before the arbitration award to the present, and therefore was not reporting or paying the hours of Local 2222 employees as if they were Local 103 employees. Given plaintiff's knowledge of this, it is beyond comprehension that plaintiff would now turn around and allege fraud. The proposed RICO allegations of a so-called "fraud" -- of which plaintiff had full knowledge -- fail as a matter of undisputed fact.

## The Allegations Do Not Meet the "Pattern" Requirement Under RICO

Allegations of conduct amounting to a pattern of racketeering activity are required to plead a claim under RICO. *Sedima, S.P.R.L. v. Imrex Co., Inc.* 473 U.S. 479, 496 (1985). At least two predicate acts are required to constitute such a pattern. The definitional section of the RICO statute, 18 U.S.C. § 1961, "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989). In Congress' view, such a pattern "requires at least two acts of racketeering activity, one of which occurred after [October 15,

1979] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *See also H.J.*, 492 U.S. at 237; *Fleet Credit Corporation v. Sion*, 893 F.2d, 441, 444 (1st Cir. 1990).

The First Circuit has held that there cannot be a RICO violation if all of the alleged predicate acts arise out of and relate to a single contract. *See Systems Management, Inc. v. Loiselle*, 303 F. 3d 100, 105-6 (1st Cir. 2002) In *Systems Management*, defendant owner of a janitorial company who entered into a contract with a college committed numerous acts of mail fraud by mailing false representations to the college indicating that the defendant was complying with the prevailing wage statute as required by the contract. Nonetheless, the First Circuit stated that "RICO is not aimed at a single narrow criminal episode, 'even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings).'" *Systems Management*, 303 F. 3d at 105, quoting *Apparel Art Int'l., Inc. v. Jacobson*, 967 F. 2d 720, 723 (1st Cir. 1992). The court held that as the multiple acts of mail fraud were all addressed to one contract, they did not comprise the kind of continued criminal activity necessary to meet the "pattern" requirement under RICO. *Systems Management*, 303 F. 3d at 105-6.

Here, the RICO allegations are fatally deficient because all of the predicate acts of mail and wire fraud plaintiff alleges arise out of and relate to not only a single contract, but a single dispute under that single contract. Plaintiff alleges that the proposed RICO defendants engaged in a pattern of fraud through e-mail communications and weekly telephone conferences to further the scheme to defraud the Funds by continuing to make contributions and payroll reports pursuant to the Jurisdictional Agreement, and mailing approximately 34 payroll reports to the Pension Fund and Deferred Income Fund that did not treat the hours worked by employees of Local 2222 as hours worked by employees of Local 103. Second Amended Complaint ¶¶ 20,

57-96. However, all of these mail, e-mail and telephone communications related to a single dispute over NetVersant's continued adherence to the Jurisdictional Agreement. The numerous alleged criminal acts were all addressed to one contract. Under First Circuit precedent, these allegations are insufficient to establish a pattern of racketeering under RICO. *See Systems Management*, 303 F. 3d 100 (1st Cir. 2002).

### Plaintiff's Alter Ego Theory of Liability Is Deficient As A Matter of Law

Plaintiff alleges in his RICO counts that the "enterprise" that was influenced by a pattern of racketeering activity was the original NetVersant defendant -- the Boston-based company that entered into the labor agreements at issue in the action and submitted to the plaintiff the hours reports that he knew omitted hours worked by members of Local 2222 but now feigns to have thought included those hours. Second Amended Complaint ¶ 110. Under RICO, the enterprise itself cannot be held liable for having been influenced corruptly by others. *See, e.g., Schofield v. First Commodity Corp. of Boston*, 793 F. 2d 28, 30-31 (1st Cir. 1986). Instead, the plaintiff seeks to hold the parent corporation liable on an *alter ego* theory that he contends would permit piercing the corporate veil between the Boston-based subsidiary and the parent corporation. Second Amended Complaint ¶¶ 50-57, 119-124. His allegations, however, are deficient as a matter of law.

It is extremely rare that a court would pierce the corporate veil, and never for the routine acts and practices of stewardship of the sort alleged here that virtually all parent corporations exercise over their subsidiaries. *See e.g., Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *Birbara v. Locke*, 99 F. 3d 1233, 1239-41 (1st Cir. 1996) (reversing and vacating jury verdict, finding the evidence insufficient to meet the strict standards under Massachusetts law for

piercing the corporate veil); *Spaneas v. Travelers Indem. Co.*, 668 N.E. 2d 325, 326 (Mass. 1996) (corporate veil will only be pierced to prevent gross inequity).

Plaintiff alleges that NetVersant Solutions controlled NetVersant's operations, and was NetVersant's alter ego, through weekly conference calls and e-mail communications in which executives of NetVersant Solutions would discuss NetVersant's operations; maintaining Oracle software that connected the two corporations so as to allowed NetVersant "to be directly operated in real time by NetVersant Solutions and its officers using interstate wire and radio communications"; requiring NetVersant to send accounts receivables to NetVersant Solutions; NetVersant Solutions processing payroll of NetVersant employees; NetVersant Solutions generally approving NetVersant contracts; NetVersant filing consolidated federal tax returns with its subsidiaries; and through NetVersant Solutions' maintaining a national customer call center for its subsidiaries. Second Amended Complaint ¶¶ 50-57.

These routine acts of corporate governance manifestly do not constitute a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting, which alone could justify piercing the corporate veil. *See My Bread Baking Co. v. Cumberland Farms,* 233 N.E. 2d 748, 752 (Mass. 1968). There is no allegation here of the factors which would justify disregard of separate corporate identities, such as insufficient capitalization, nonobservance of corporate formalities, failure to pay dividends, insolvency at the time of the litigated transaction, siphoning off of corporate funds, absence of functioning officers besides the dominant shareholders, absence of corporate records, use of the corporation to

11

advance the interests of the dominant shareholders, and use of the corporation in promoting fraud. *See Birbara*, 99 F. 3d at 1241.

NetVersant and its parent corporation are not so extremely intertwined to merit the exceptional remedy of piercing the corporate veil. The extent of interconnectedness between NetVersant Solutions and NetVersant is similar to that of many large national and multi-national corporations and their subsidiaries. The two companies have their own infrastructures, operate as separate units, and corporate formalities are carefully observed. Supplemental Feldman Aff. ¶ 3. There are separate corporate books and procedures (e.g., separate bylaws, minutes, and election of officers). *Id.* ¶ 3. NetVersant negotiates and signs its own contracts with customers (and labor unions, for that matter), and has its own sales representatives, accounting and human resources staffs. *Id.* ¶ 3.

Furthermore, as there is no allegation here of a failure to "make clear which corporation [was] taking action" or "to observe with care" the corporate form, piercing must not be allowed. *My Bread,* 233 N.E. 2d at 752. "There is present in the cases which have looked through the corporate form an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing." *Birbara*, 99 F. 3d at 1240, quoting *Evans v. Multicon Construction Corp.*, 30 Mass. App. Ct. 728, 736 (Mass. App. Ct. 1991). Here, plaintiff has always dealt with NetVersant throughout the underlying conflict at issue. Supplemental Feldman Aff. ¶ 4. For example, it was NetVersant -- and not its parent -- that negotiated and entered into the Jurisdictional Agreement. *Id.* ¶ 4. At all times plaintiff knew he was dealing with NetVersant, not its parent corporation. *Id.* ¶ 4.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File Second Amended Complaint should be denied.

                          By its attorneys,

                          NetVersant-New England, Inc.

                          /s/ Steven A. Kaufman
                          Steven A. Kaufman (BBO# 262230)
                          Ropes & Gray LLP
                          One International Place
                          Boston MA 02110
                          (617) 951-7000

Dated: December 22, 2004

CERTIFICATE OF SERVICE

      I, Steven A. Kaufman, attorney for NetVersant-New England, Inc., hereby certify that on the 22nd day of December, 2004, I caused to be served a true copy of the above document by U.S. Mail to the following:

Robert J. Harrington, Esq.
Law Offices of
Robert W. Harrington
Attorneys for Defendant
  Walsh Brothers, Inc.
One Washington Mall
Boston, MA  02108

Paul Maiuri, President
Maiuri Electrical Company
100 Ferncroft Road
Unit 211
Danvers, MA  01923

Denise Herrera-Favaloro, President
Daisy Electric, Inc.
6 Dixon Way
Seabrook, NH  03874-2515

Partners HealthCare System, Inc.
Office of the General Counsel
Attn:  Joan Stoddard, Esq.
50 Staniford St., 10th Floor
Boston, MA  02144

                                         /s/ Steven A. Kaufman
                                         Steven A. Kaufman (BBO# 262230)