UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator,<br>    Plaintiff,<br><br> v.<br><br>NETVERSANT-NEW ENGLAND, INC., et al.,<br>    Defendant,<br><br> and<br><br>NETVERSANT-NEW ENGLAND, INC.,<br>    Third-Party Plaintiff,<br><br> v.<br><br>INTERNATIONAL BROTHERHOOD OF<br>ELECTRICAL WORKERS, AFL-CIO-CLC, et al.,<br>    hird-Party Defendants. | )<br>)<br>) Civil Action No. 04-10559NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY THIRD-PARTY DEFENDANTS LOCAL 103 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS AND PAUL WARD**

**I.**    **INTRODUCTION**

The convoluted litigation now before the Court originated with the decision by Defendant and Third-Party Plaintiff NetVersant-New England, Inc. ("NetVersant NE"), to break into the Telecommunications industry through an anti-competitive practice. In 1998, seeking to enter this area of business, NetVersant NE signed onto a master Telecommunications Agreement between Third-Party Defendant Local 103 of the International Brotherhood of Electrical Workers ("Local 103") and the Electrical Contractors' Association of Greater Boston, Inc., Boston Chapter, National Electrical Contractors Association ("Electrical Contractors' Association"). Since that time, it has

held itself out and competed in the market as a signatory to the Telecommunications Agreement. At the same time, however, NetVersant NE has failed to pay the wages and benefits required by the agreement – and when challenged, has claimed that it never would have signed onto the Telecommunicatons Agreement had it known it would be bound by its terms.

In January 2002, Local 103 formally protested NetVersant NE's breach of the Telecommunications Agreement. The dispute wended its way through an arbitration that resulted in a decision adverse to NetVersant NE, a decision of the United States District Court for the District of Massachusetts adverse to NetVersant NE, and a decision of the Court of Appeals for the First Circuit, again adverse to NetVersant NE.[1] Despite the adverse decisions, NetVersant NE has continued to compete in the market as a signatory to successive Telecommunications Agreements between Local 103 and the Electrical Contractors' Association.

When NetVersant NE still did not comply with the collective bargaining agreement and the arbitration and federal court decisions, Plaintiff Russell Sheehan, as Administrator of the Local 103 I.B.E.W. Health Benefit Plan, the Electrical Workers Pension Fund, Local 103, I.B.E.W., the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W., the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W., and the Electrical Industry Labor-Management Cooperation Trust (the "Trust Funds"), brought this action to collect delinquent contributions from NetVersant NE.

---

[1] Local 103 and Paul Ward request that the Court take judicial notice of the pleadings, orders and other documents on file in <u>JCI Communications v. International Brotherhood of Electrical Workers, Local 103</u>, United States District Court for the District of Massachusetts, 02-CV-10537 RWZ and <u>JCI Communications, Inc. d/b/a NetVersant-New England</u>, United States Court of Appeals for the First Circuit, Case No. 02-2220. <u>See</u> Fed.R.Evid. 201.

Rather than submit to what was in essence a simple collections case regarding a previously litigated matter, NetVersant NE filed a Third-Party Complaint.[2]  NetVersant NE's suggestion that it should not have to pay benefits due to the Trust Funds because it is the victim of fraud rings hollow on its face because even under its version of the events, it agreed that "[a]ll telecommunications employers will compete on an equal basis according to agreed upon industry standards for wage and benefit treatment."  In any event, the Third Party Complaint fails as a matter of law, and the Court should reject this attempt to relitigate the original contract dispute.

NetVersant NE's state law claims against both Local 103 and Third-Party Defendant Paul Ward are preempted by section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and by the National Labor Relations Act, as amended ("NLRA"), 29 U.S.C. §§ 151 et seq.  In addition, the claims against Paul Ward are barred under section 301(b) of the LMRA, 29 U.S.C. § 185(b).

Even if federal law did not bar the claims, NetVersant NE's Third-Party Complaint would nonetheless fail to state a claim.  The claim for contribution and indemnification for the amounts due to the Plaintiff Trust Funds fails as a matter of law because the Trust Funds can assert no claim, let alone a tort-based claim, against the Third Party Defendants.  The claims of misrepresentation, in turn, are barred under the doctrine of res judicata and non-mutual claim preclusion by the prior federal court action.

For all of these reasons, the Court should grant the motion of Local 103 and Paul Ward to dismiss the Third-Party Complaint.

---

[2] NetVersant NE did not alert the Court that the instant dispute was related to the original federal case under Local Rule 40.1(G).  On December 2, 2004, Local 103 and Paul Ward filed a motion under Local Rule 40.1(G)(5) to correct the treatment of this entire case as not related to the prior case and "for an order transferring th[is] second case to the Honorable Rya Zobel to further the efficient performance of the business of the court."  All parties assented to the motion, but it has not yet been ruled on by the Court.

II.   **STATEMENT OF ALLEGED FACTS**

The Electrical Contractors' Association entered into a multiemployer collective bargaining agreement (the "Telecommunications Agreement") with Local 103 on September 1, 1997, and entered into successive collective bargaining agreements in effect from March 1, 2000 through February 28, 2003, and from March 1, 2003 through 2006. NE's Third-Party Complaint, ¶¶ 8, 25; see also Petition to Vacate Arbitration Award (hereafter, "NetVersant NE's Petition to Vacate") in JCI Communications v. International Brotherhood of Electrical Workers, Local 103, 02-CV-10537 RWZ, ¶ 7.

In 1998, as NetVersant NE sought to do work on construction and data voice projects in Greater Boston, it approached Local 103 about becoming a signatory to the Telecommunications Agreement. NetVersant NE's Third-Party Complaint, ¶¶ 9-10.[3] According to NetVersant NE, after extensive negotiations, NetVersant NE, Local 103 and Local 2222 of the International Brotherhood of Electrical Workers ("Local 2222") reached a resolution of a jurisdictional dispute regarding this work. NetVersant NE's Third-Party Complaint, ¶ 14; see also NetVersant NE's Petition to Vacate, ¶ 17. NetVersant NE alleges that based upon representations made by International Brotherhood of Electrical Workers ("International Union") Vice President Frank Carroll on behalf of the International Union and by Business Manager Paul Ward on behalf of Local 103 that the resolution would be honored, on October 1, 1998, NetVersant NE entered into a Letter of Assent with Local 103 by which NetVersant NE agreed to be bound by the Telecommunications Agreement. NetVersant NE's Third-Party Complaint, ¶ 16; see also NetVersant NE's Petition to Vacate, ¶ 17. Under the terms of the Letter of Assent, NetVersant NE agreed to be bound by the successive multi-employer collective

---

[3] NetVersant NE did business as JCI Communications, Inc., and before that, as JEMD-COM, Inc., before doing business as NetVersant NE. NetVersant NE's Third-Party Complaint, ¶ 1.

bargaining agreements unless the Company provided timely notice to the Electrical Contractors Association of its intent to withdraw from multi-employer collective bargaining.  NetVersant NE's Third-Party Complaint, ¶ 18.

The resolution of the jurisdictional dispute allegedly was memorialized in a document.  NetVersant NE's Third-Party Complaint, ¶ 14 and Exhibit 2; see also NetVersant NE's Petition to Vacate, ¶ 17 and Exhibit 7.   The document, which NetVersant refers to as the "Jurisdictional Agreement" provides both for the assignment of work between the members of the two local unions, and also addresses wages and benefits by incorporating "agreed upon" industry standards.  NetVersant NE's Third-Party Complaint, Exhibit 2, ¶ 8 ("[a]ll telecommunications employers will compete on an equal basis according to agreed upon industry standards for wage and benefit treatment").

The document states further that "Agreement is made this 2nd day of October, 1998," and that "the Parties hereto have caused this Agreement to be signed by a duty authorized representative and represent that their respective parties shall be legally bound by the terms and conditions of this Agreement."  NetVersant NE's Third-Party Complaint, Exhibit 2 at 1.  The document has four signature lines.  The third and fourth, labeled JCI Communications, Inc. and Frank J. Carroll, Int'l Vice President, I.B.E.W. 2nd District, respectively, are signed.  Id., Exhibit 2, at 2.  The first, and second, labeled "Local Union 103, I.B.E.W. and "Local Union 2222, I.B.E.W.," respectively, are unsigned and blank.  Id., Exhibit 2, at 2.

In January 2002, Local 103 complained that NetVersant NE had violated the Telecommunications Agreement by failing to assign work exclusively to Local 103.  NetVersant NE's Third-Party Complaint, ¶ 19; see also NetVersant NE's Petition to Vacate, ¶ 18.  In accordance with the Telecommunications Agreement, Local 103's

- 5 -

grievance complaint was heard by a Joint Conference Committee consisting of three members of Local 103 and three employer representatives from the Electrical Contractors Association on February 4, 2002.  NetVersant NE's Third-Party Complaint, ¶ 20; see also NetVersant NE's Petition to Vacate, ¶ 20.

At the hearing, NetVersant NE defended its actions by claiming that it had assigned work in accordance with the so-called Jurisdictional Agreement.  NetVersant NE's Third-Party Complaint, ¶ 21; see also NetVersant NE's Petition to Vacate, ¶ 21.  Local 103 responded that the Jurisdictional Agreement was not enforceable.  NetVersant NE's Third-Party Complaint, ¶ 22; see also NetVersant NE's Petition to Vacate, ¶ 22.  On February 22, 2002, the Joint Conference Committee issued its decision, finding that the Jurisdictional Agreement was not enforceable.  NetVersant NE's Third-Party Complaint, ¶ 23; NetVersant NE's Petition to Vacate, ¶ 23.

### III.    THE FEDERAL COURT ACTIONS

#### A.    THE PRIOR ACTION

On March 22, 2002, NetVersant NE, as JCI Communications d/b/a NetVersant-New England, filed a Petition to Vacate in JCI Communications v. International Brotherhood of Electrical Workers, Local 103, 02-CV-10537 RWZ.  NetVersant NE's Petition to Vacate sought to vacate the arbitration decision on various grounds including that "[t]he signing of the Collective Bargaining Agreement with Local 103 was the product of misrepresentations by representatives of Local 103."  Petition to Vacate Arbitration Award, ¶ 31; see also Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed in JCI Communications v. International Brotherhood of Electrical Workers, Local 103, 02-CV-10537 RWZ, on August 16, 2002, at 2-3, 14-15.  Although NetVersant NE alleged in its 2002 filing that

"any attempt by Local 103 to nullify the [jurisdictional] agreement gives rise to a claim of misrepresentation" (Petition to Vacate Arbitration Award, ¶ 17), <u>NetVersant NE took no steps to include a state law claim for misrepresentation together with its request that the Court vacate the Joint Conference Committee decision</u>.   See generally, Petition to Vacate Arbitration Award.

Local 103 responded by filing a cross-petition to confirm the arbitrator's decision, and on August 29, 2002, the District Court granted Local 103's motion for summary judgment, and confirmed the Arbitration Award.  Memorandum of Decision, entered in <u>JCI Communications v. International Brotherhood of Electrical Workers, Local 103</u>, 02-CV-10537 RWZ, on August 29, 2002, reprinted at 2002 WL 2005 852 (D. Mass.)  On August 30, 2002, the Court entered judgment confirming the arbitration award.  Judgment, entered in <u>JCI Communications v. International Brotherhood of Electrical Workers, Local 103</u>, 02-CV-10537 RWZ, on August 30, 2002.

On September 17, 2002, NetVersant NE filed its Notice of Appeal in <u>JCI Communications v. International Brotherhood of Electrical Workers, Local 103</u>, 02-CV-10537 RWZ.  The Court of Appeals for the First Circuit rejected NetVersant NE's appeal, and affirmed the District Court decision.  Decision, entered on March 31, 2003, in <u>JCI Communications, Inc. d/b/a NetVersant NE-New England</u>, Court of Appeals for the First Circuit, Case No. 02-2220, reprinted at 324 F.3d 42 (1st Cir, 2003).

### B. THE INSTANT ACTION

#### 1. THE TRUST FUNDS' COMPLAINT

Plaintiff Trust Funds filed the instant action on March 22, 2004, and an Amended Complaint on April 12, 2004.  The Amended Complaint sought "to enforce the terms of various collective bargaining agreements, as interpreted and found binding upon

- 7 -

Defendant [NetVersant NE] by a judgment in the form of an arbitration decision which has been enforced by a final judgment entered in [the prior action] and which found, inter alia, that NetVersant NE violated the terms of these collective bargaining agreements by failing to make contributions to these trust funds and file the required reports with these trust funds for all employees employed by NetVersant NE who performed work within the scope of work clauses of these collective bargaining agreements." Amended Complaint, filed April 12, 2004, at 1-2.[4]

2. NETVERSANT NE'S THIRD PARTY COMPLAINT

NetVersant NE's Third Party Complaint, like the Petition to Vacate, alleges that the Letter of Assent was procured through misrepresentations. Third-Party Complaint, filed November 24, 2004, at 1-2. NetVersant NE asserts a state law misrepresentation claim against the International Union, Frank Carroll, Local 103, and Paul Ward. NetVersant NE also alleges, against each Third-Party Defendant, a right to indemnity and contribution for the Trust Funds' claims against NetVersant NE.

## IV. STANDARD OF REVIEW

In determining whether the Court has subject matter jurisdiction over state claims, the Court treats well-pleaded facts in the Complaint as true and takes all reasonable inferences in favor of the plaintiff. Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). NetVersant NE, as the party invoking the jurisdiction of the federal court carries the burden of establishing subject matter jurisdiction. Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993); Mulvihill v. Spaulding Sprots Worldwide, Inc., 184 F.Supp. 2d 99, 103 (D. Mass. 2002) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)).

---

[4] On January 28, 2005, the Plaintiff Trust Funds filed a Second Amended Complaint adding new claims against additional parties.

Similarly, in determining whether a complaint fails to state a claim for which relief can be granted, the Court takes all well-pleaded facts in as true. Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 40 (1st Cir. 1998). The Court "is not bound, however, to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint." In re Colonial Mortgage Bankers Corp. v. Lopez-Stubbe, 324 F.3d 12, 15 (1st Cir. 2003) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). Moreover, the Court must consider "not only the complaint but also matters fairly incorporated within it," consistent "with the axiom that a writing is the best evidence of its contents." Id. (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)). Finally, the Court also "'may look to matters of public record in deciding a Rule 12(b)(6) motion.'" Id. (quoting Boateng v. InterAmerican Univ., 210 F.3d 56, 60 (1st Cir. 2000)).

## V.     NETVERSANT NE'S STATE LAW CLAIMS ARE PREEMPTED

### A.     NLRA PREEMPTION

In enacting the NLRA, Congress passed a comprehensive code to regulate labor relations in activities affecting interstate commerce, and created the National Labor Relations Board ("NLRB") to administer the NLRA. Tamburello v. Comm.-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995); Chaulk Services v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1364 (1st Cir. 1995). To prevent interference with this federal labor relations system, in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Supreme Court held that the NLRA preempts state law actions that regulate conduct that is either arguably protected or arguably prohibited by §7 or §8 of the NLRA. Id. at 245. *Garmon* preemption "protects the primary jurisdiction of the NLRB to determine in the first instance what kind of conduct is either prohibited or

protected by the NLRA." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748 (1985). Therefore, "as a general rule, neither state nor federal courts have jurisdiction over suits directly involving activity [which] is arguably subject to §7 or §8 of the Act." Tamburello, 67 F.3d at 976. (brackets in original) (quoting Vaca v. Sipes, 386 U.S. 171 (1967)).

Section 8(b)(3) of the NLRA, 29 U.S.C. §158(b)(3), makes it an unfair labor practice for the employees' bargaining representative to refuse to bargain in good faith, and §8(a)(5), 29 U.S.C. §158(a)(5), imposes the same duty to bargain in good faith upon employers. National Maritime Union of America, 78 NLRB 971, 980-81 (1948). This mutual obligation to bargain in good faith "requires that claims made by either bargainer should be honest claims." NLRB v. Truitt Mfg. Co., 351 U.S. 149, 152 (1956). Accordingly, when in the course of collective bargaining, one party misrepresents its intentions, that party violates its duty to bargain in good faith. Waymouth Farms, Inc., 324 NLRB 960 (1997), enforced, 172 F.3d 598 (8th Cir. 1999); Sheridan Div., Sheller-Globe Corp., 296 NLRB 116, 122 (1989). Section 8(d) of the NLRA, 29 U.S.C. §158(d), requires further that the duty to bargain includes "the execution of a written contract incorporating any agreement reached if requested by either party . . . ." Accordingly, the refusal to sign a written memorandum of an agreement made has been uniformly regarded as a per se refusal to bargain. See e.g. NLRB v. Auciello Iron Works, 980 F.2d 804, 808 (1st Cir. 1992), supplemental decision on remand, 317 NLRB 364 (1995), enforced, 60 F.3d 24 (1st Cir. 1995), aff'd 517 U.S. 781 (1996).

Here, NetVersant NE alleges that it and Local 103 reached an agreement on the Letter of Assent on October 1, 1998. NetVersant NE's Third Party Complaint, ¶ 16. As the bargaining representative of NetVersant NE's employees covered by the

Telecommunications Agreement and the Letter of Assent, Local 103 had an obligation to bargain with NetVersant NE in good faith.  Local 103's alleged misrepresentation about its intention to abide by the Jurisdictional Agreement, and the failure to execute the document purportedly memorializing the agreement, if true, would constitute a violation of §8(b)(3).  Therefore, the Complaint is preempted because it involves activity which is arguably prohibited by §8 of the NLRA.

There are exceptions to the *Garmon* preemption doctrine.  Where the conduct at issue is of only "peripheral concern" to federal labor policy, preemption is not required. Garmon, 359 U.S. at 243.  Similarly, preemption is not required where the state conduct regulated touches interests "deeply rooted in local feeling and responsibility."  Id.; Chaulk Services, 70 F.3d at 1364-65.  NetVersant cannot successfully rely on these exceptions to *Garmon* preemption.

The obligation of parties to bargain in good faith and refrain from making fraudulent misrepresentations is not a "peripheral concern" of the NLRA.  Rather, such a claim "strikes at the heart of one of the basic concerns of that law."  Serrano v. Jones & Laughlin Steel Co., 790 F.2d 1279, 1287 (6th Cir. 1986).  Indeed, "[i]nsuring that employers and employees bargain with each other in good faith is of central importance under the Act."  Kolentus v. Avco Corp., 798 F.2d 949, 961 (7th Cir. 1986).

NetVersant NE's claims also do not touch deeply rooted local interests.  The local interests exception turns on both the existence of a significant state interest in protecting its citizens from the conduct alleged in the complaint, and a showing that the state-law claim is different from that which could have been presented to the NLRB.  Chaulk Services, 70 F.3d at 1366; Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 196-97 (1978).  Thus, if "two potentially conflicting statutes

- 11 -

[are] brought to bear on precisely the same conduct," the state-law claim is preempted, notwithstanding the existence of a significant state interest. Sears, 436 U.S. at 193-94; Chaulk Services, 70 F.3d at 1366-67. Even if it is assumed for the sake of argument that Massachusetts has a significant state interest in protecting its citizens from fraudulent misrepresentations in labor negotiations, NetVersant NE's misrepresentation claim is indistinguishable from an unfair labor practice claim that could have been brought before the NLRB. In both cases, the critical inquiry would be whether Local 103 misrepresented its intention with regard to the Jurisdictional Agreement, and/or whether Local 103 had reached an agreement with NetVersant NE that it failed to execute. E.g., Kolentus, 798 F.2d at 961 (issues in unfair labor practice case and state-law claim for misrepresentation would be identical); Serrano, 790 F.2d at 1287-88.

It is not surprising, therefore, that in cases similar to this one, courts have routinely held state-law misrepresentation claims preempted under the *Garmon* doctrine. E.g., Parker v. Connors Steel Co., 855 F.2d 1510, 1515-18 (11th Cir. 1988); Kolentus, 798 F.2d at 961-62; Serrano, 790 F.2d at 1287-88; Hanley v. Lobster Box Restaurant, Inc., 35 F. Supp. 2d 366, 369 (S.D.N.Y. 1999) (Third-party plaintiff employer's misrepresentation claim against union in connection with the employer's obligations to make pension contributions, preempted under *Garmon*); Twin City Sprinkler Fitters Health Care Plan v. Total Fire Protection, Inc., 2002 WL 31898170 (D.Minn.) (same); see also Textron Lycoming Reciprocating Engine Div. Avco Corp. v. United Auto Workers, 523 U.S. 653, 662 (1998) (Stevens, J. concurring) (Although a party may not bring a claim under §301 for fraudulent misrepresentation in contract formation, such

conduct would be an unfair labor practice that could be brought before the National Labor Relations Board ("NLRB")).[5]

The decisions in Hanley and Twin City Sprinkler Fitters Health Care Plan are similar to the case at bar. In both cases, trust funds brought suits against employers for failing to make required contributions to the funds. The employers then filed third-party complaints against the unions for allegedly misrepresenting the employer's obligations to make payments to the funds. Hanley, 35 F. Supp.2d at 367; Twin City Sprinkler Fitters Health Care Plan, 171 LRRM at 3275. In both cases, the courts held that, because the misrepresentations allegedly made by the unions arguably violated the unions' obligation to bargain in good faith under the NLRA, the employers' claims were preempted. The same holds true here. NetVersant NE's claim that the Third-Party Defendants fraudulently misrepresented their intention to abide by the Jurisdictional Agreement is identical to one that could be presented to the NLRB, alleging a violation of §8(b)(3) of the Act. Accordingly, NetVersant's claims are preempted by the NLRA.

### B.  SECTION 301 PREEMPTION

As set forth in more detail in the Memorandum of Law on behalf of the Motion to Dismiss by the International and Frank Carroll, state law suits are preempted by Section

---

[5] Operating Engineers Pension Trust v. Wilson, 915 F.2d 535 (9th Cir. 1990) and Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018 (6th Cir. 2001) are not to the contrary. In those cases, as here, after being sued by benefit funds for failing to make necessary contributions, employers filed third-party complaints against unions alleging misrepresentation. In both cases, the courts rejected *Garmon* preemption arguments because, the courts held, the misrepresentations were not made in the context of collective bargaining negotiations. Northwestern Ohio Administrators, 270 F.3d at 1029 ("The result would be different if the Union had made a misrepresentation connected with a collective bargaining agreement.") Here, the alleged misrepresentations purportedly were made in connection with the negotiation of an agreement between NetVersant NE and Local 103 over mandatory subjects of bargaining such as assignment of work and wages and benefits. Accordingly, the allegations of misrepresentation concern directly matters subject to duty to bargain in good faith.

301 of the LMRA, 29 U.S.C. § 185(a) when they require the court to interpret an agreement between an employer and a labor organization.[6]

NetVersant NE alleges here that there was a verbal agreement between NetVersant NE, the International, Local 103 and Local 2222 resolving the question of whose members would perform Telecommunications work that it relied to its detriment on this agreement by signing the Letter of Assent, and "by abiding by the terms of . . . the Jurisdictional Agreement."  Third-Party Complaint, ¶¶ 14, 45, 53.  NetVersant NE has alleged further that "[s]ince the February 22, 2002 decision of the Joint Conference Committee [setting aside the Jurisdictional Agreement], NetVersant has continued to allocate work among and between members of Local 103 and Local 2222 in accordance with the agreement memorialized in the Jurisdictional Agreement."  Third-Party Complaint, ¶ 24.  In other words, it remains NetVersant NE's position that even if the document setting forth the supposed agreement was set aside by the arbitration and federal court decisions, there remains an underlying agreement between the parties which gives rise to its misrepresentation and contribution and indemnity claims.

In order to determine whether NetVersant NE's reliance on the alleged underlying agreement was reasonable, the Court will need to interpret the agreement.  Since that underlying agreement is allegedly between a labor union and an employer, the state law claim is preempted by Section 103.

In addition, [o]ne of the terms of the purported underlying agreement memorialized in the so-called Jurisdictional Agreement is the requirement that "[a]ll telecommunications employers will compete on an equal basis according to agreed upon

---

[6] In the interest of avoiding repetition and complying with the page limits set forth in Local Rule 7.1, Local 103 and Paul Ward have not repeated these arguments in full herein, and instead, incorporate the arguments of the International Union and Frank Carroll regarding § 301 preemption in full by reference.

industry standards for wage and benefit treatment." Third-Party Complaint, Exhibit 2, ¶ 8. The "agreed upon industry standards" for the telecommunications employers is also an agreement between a union and employers. In order to determine whether NetVersant has been injured by Local 103's alleged failure to abide by the Jurisdictional Agreement, the Court will need to interpret some agreement between Local 103 and employers (presumably, the Telecommunications Agreement), to determine the "agreed upon industry standards" for wage and benefit treatment. Accordingly, NetVersant NE's state law claims are preempted for this reason as well.

VI. **NETVERSANT NE'S CLAIMS AGAINST PAUL WARD INDIVIDUALLY ARE BARRED UNDER FEDERAL LABOR LAW**

As set forth in more detail in the Memorandum of Law on behalf of the Motion to Dismiss by the International and Frank Carroll, claims against individuals for acts allegedly performed on the union's behalf are also barred by Section 301(b) of the LMRA, 29 U.S.C. § 185(b).[7] Here, NetVersant NE's claims against Paul Ward allege that he was acting in his capacity as a business agent and on behalf of Local 103. See NetVersant NE's Third Party Complaint, ¶ 5, 12-14, 16, 50-52. Under Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962) and its progeny, the claims against Paul Ward must be dismissed.

VII. **NETVERSANT NE'S MISREPRESENTATION CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA**

"'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Massachusetts School of Law at Andover, Inc. v. American Bar Association,

---

[7] In the interest of avoiding repetition and complying with the page limits set forth in Local Rule 7.1, Local 103 and Paul Ward have not repeated these arguments in full herein, and instead, incorporate these arguments by reference.

142 F.3d 26, 38 (1st Cir. 1998) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980)). Where, as here, both the first and the second actions were litigated in federal courts, federal law governs the res judicata effect of the prior judgment. Massachusetts School of Law at Andover, 142 F.3d at 37. The elements of res judicata under federal law are: "'(1) a final judgment on the merits in an earlier action, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits.'" Id. (quoting Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994)).

The first requirement for res judicata, a final judgment on the merits, is met in this case by the earlier federal court proceeding. The District Court issued a memorandum of decision granting Local 103's motion for summary judgment, and entered judgment for Local 103. See Memorandum of Decision and Judgment, entered on August 29 and August 30, respectively, in JCI Communications v. International Brotherhood of Electrical Workers, Local 103, 02-CV-10537 RW2. The Court of Appeals heard and rejected NetVersant NE's appeal, affirming the District Court's grant of Summary Judgment in JCI Communications, Inc. d/b/a NetVersant-New England, Court of Appeals for the First Circuit, Case No. 02-2220. Summary Judgment constitutes a final judgment on the merits for purposes of applying res judicata. Dowd v. Society of St. Columbus, 861 F. 2d 761, 764 (1st Cir. 1989).

The second requirement, of sufficient identicality between the causes of action asserted in the earlier and later suits is also met under Massachusetts' "transactional" approach. "To bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action." Massachusetts School of Law at Andover, 42 F.3d at 38. Instead, the Court uses a "transactional approach to determine whether causes of action

- 16 -

are sufficiently related to support a res judicata defense." Id. (citing Kale v. Combined Ins. Co., 924 F.2d 1161, 1166 (1st Cir. 1991)).  The "transactional" definition of res judicata is adopted from the Restatement (Second) of Judgment § 24 which provides:

> (1)  When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar …, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions out of which the action arose.
>
> (2)  What factual grouping constitutes a "transaction" and what groupings constitute a "series" are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24 (1982) (quoted in Auryx Corp. v. Canon U.S.A., Inc., 978 F2d 2, 6-7 (1st Cir. 1992); see also Manego v. Orleans Board of Trade, 773 F2d 1, 5 (1st Cir. 1985), cert denied, 475 U.S. 1084 (1986) (adopting "transactional" definition).

Moreover, "the mere fact that different legal theories are presented in each case does not mean that the same transaction is not behind each."  Dowd v. Society of St. Columbans, 861 F.2d 761, 763, 764 (1st Cir. 1989).  For these reasons, the focus of inquiring "must not be the theoretical raiment in which the claims are robed, but 'whether the underlying facts of both transactions are the same or substantially similar.'" Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1166 (1st Cir 1991).

Here, the alleged facts are not merely related but identical in time, space, origin and motivation.  In both the first and second action, NetVersant NE has alleged that the Third-Party Defendants engaged in misrepresentations and that NetVersant NE relied on those misrepresentations in signing the Letter of Assent.  See Third-Party Complaint, ¶¶

- 17 -


12 – 16; cf. Petition to Vacate Arbitration Award, ¶¶ 17, 22.  The same alleged misrepresentations are thus at issue in both actions.  The legal theories are distinct – in the first NetVersant NE asserted facts regarding the alleged misrepresentation in an attempt to vacate the arbitration award, and in the second, it seeks to use these same facts to bring a common law claim of misrepresentation.   Where, as here, the two successive suits seek recovery for the same injury, namely, the purported misrepresentations, the judgment on the merits in the first operates as a ban on the second, despite the new legal theory.  As the First Circuit has explained, "[i]n this way, the law prevents a litigant from claim-splitting, requiring that he 'assert all his various legal theories and factually related allegations the first time he brings suit.'"  Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1166 (1st Cir 1991) (quoting Rose v. Town of Harwich, 778 F.2d 77, 79 (1st Cir 1985)).[8]

The final requirements for res judica—an identity of parties or privies in the two suits—is met as well.   Third-Party Plaintiff NetVersant NE in this action, and Plaintiff JCI Communications, Inc. in the first action are, according to NetVersant NE, one and the same.  See fn. 2, supra; see also NetVersant NE's Third-Party Complaint, ¶ 14; JCI's Petition to Vacate Arbitration, at 1.  Third-Part Defendant Local 103 in the second action

---

[8] NetVersant NE may attempt to argue that its misrepresentation claim is not barred because it supposedly continued to rely on Local 103's alleged misrepresentations after the February 2002 arbitration.  For example, NetVersant NE alleges that Local 103's misrepresentations "induced NetVersant into agreeing to abide the . . . successor agreement, in effect [from February 28, 2003] through 2006) . . . ."   NetVersant NE's Third Party Complaint, ¶ 25.  The claim of misrepresentation cannot survive the res judicata effect of the earlier decision based on such allegations however, for a number of reasons.  First, NetVersant NE has not alleged with particularity any new misrepresentations that occurred after the 1998 negotiations that are at issue in the first Federal Court action.  As an allegation of fraud, the purported misrepresentations, must be alleged with particularity, (see Fed. R. Civ. Proc. 9(b) ("[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity")), and a claim cannot be based on silence alone because silence is not a "statement of fact."  E.g., Goebel v. Scmid Brothers, Inc., 871 F. Supp. 68, 74 (D. Mass. 1994).  Second, the claim of reliance is implausible on its face, since NetVersant has also alleged that it learned of the apparent misrepresentations in January 2002 (see Third Party Complaint, ¶ 19), a year before the then-current Telecommunication Agreement was set to expire (see Third Party Complaint, ¶ 25), and well within the time that NetVersant could have withdrawn from bargaining for the February 2003 to 2006 agreement.

and Defendant Local 103 in the first action are also the same party, and accordingly, this final requirement is met as to Local 103.

Third-Party Defendant Paul Ward was not named as a defendant in the first action. Under the doctrine of "non-mutual claim preclusion," however, the misrepresentation claim is barred as to Paul Ward as well. Non-mutual claim preclusion allows for dismissal where the other requirements of res judicata are met, and the party not involved in the earlier action should have been included. In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988) (citing numerous decisions from various circuits which conclude that "a version of claim preclusion is appropriate if the new defendants have a close and significant relationship with the original defendants, such as whether the new defendants were named as conspirators in the first proceeding but were not joined in the action" and finding this authority persuasive where the defendant "could have been, and should have been, included in [the first action] if he shared culpability for the wrongdoing alleged there"). Id at 11.

Here, the original petition and the Third-Party Complaint contain virtually identical allegations regarding Paul Ward's alleged wrongdoing. Compare Third-Party Complaint, ¶¶ 12-14, 16, with Petition to Vacate, ¶ 17. Despite having knowledge of these alleged facts, NetVersant NE did not join Paul Ward as a defendant in the first action. If Paul Ward shared culpability, however, he should have been joined in that action, and NetVersant NE's belated attempt to bring him in now is barred by res judicata.

### VIII. NETVERSANT NE'S CLAIM FOR CONTRIBUTION AND INDEMNIFICATION FAILS TO STATE A CLAIM

As set forth in more detail in the Memorandum of Law on behalf of the Motion to Dismiss by the International and Frank Carroll, the claim for contribution and

- 19 -

indemnification also fails because NetVersant NE can establish no basis for tort liability owed by the Third-Party Defendants to the Plaintiff in the underlying action.[9]  See Mass. Gen. L. c. 231B, §1(a); Dighton v. Federal Pacific Electronics Co., 399 Mass. 687, 691, (1987), cert denied  484 U.S. 953 (1987); Araujo v. Woods Hole Martha's Vineyard Nantucket Steamship Notoriety, 693 E.2d 1, 2 (1st Cir. 1982); Samos Imex Corp v. Nextel Communications Inc., 20 F.Supp 2d 248, 251 (D. Mass. 1998).

## IX.   CONCLUSION

For all of the above reasons, the Court should grant the motion of Local 103 and Paul Ward to dismiss the Third-Party Complaint.

Respectfully submitted,

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 103
and PAUL WARD

By their attorneys,

 /s/ Indira Talwani
Ira Sills, Esq., BBO #462220
Indira Talwani, Esq. BBO #645577

**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street, Suite 500
Boston, MA 02108
(617) 742-0208

Dated: February 7, 2005

---

[9] In the interest of avoiding repetition and complying with the page limits set forth in Local Rule 7.1, Local 103 and Paul Ward have not repeated these arguments in full herein, and instead, incorporate these arguments by reference.