UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-10559NMG |
| ) | |
| NETVERSANT-NEW ENGLAND, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| and ) | |
| ) | |
| NETVERSANT-NEW ENGLAND, INC., ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNATIONAL BROTHERHOOD OF ) | |
| ELECTRICAL WORKERS, AFL-CIO, et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
INTERNATIONAL THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

Third-Party Defendants International Brotherhood of Electrical Workers, AFL-CIO ("IBEW") and Frank J. Carroll (together hereinafter "International Third-Party Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the Third-Party Complaint ("Complaint") filed by NetVersant-New England, Inc. ("NetVersant"). The Complaint asserts state-law claims of misrepresentation, and a state-law claim for contribution and indemnification.

As explained below, the Complaint should be dismissed because: (1) NetVersant's claims are preempted both by section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the National Labor Relations Act, 29 U.S.C. §§ 151 to 169 ("NLRA"); (2)

NetVersant cannot maintain its claims against Carroll because individual union officers are immune from such claims under section 301(b) of the LMRA; (3) NetVersant's claim for contribution and indemnification, in addition to being preempted, fails to state a claim under state law; and (4) NetVersant's claims for misrepresentation are barred by the doctrine of res judicata. The arguments concerning NLRA preemption and the doctrine of res judicata are set forth more fully in the Memorandum of Law filed by Third-Party Defendants IBEW Local No. 103 and Paul Ward (together hereinafter "Local Third-Party Defendants") in support of their motion to dismiss. To avoid repetition, the Local Third-Party Defendants' arguments are incorporated herein by reference.

When reviewing a motion to dismiss under Rule 12(b)(1), the Court does so keeping in mind that "the party invoking the jurisdiction of a federal court has the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)). When considering a motion under Rule 12(b)(6), the Court must "glean the facts from the complaint . . . stripped of any rhetorical gloss." *D.J. Manf. Corp. v. Tex-Shield, Inc.*, 347 F.3d 337, 338 (1st Cir. 2003). Reasonable inferences are drawn in the plaintiff's favor and the issue is whether the complaint sets forth facts sufficient "to justify recovery on any cognizable theory." *Nicolaci v. Anapol*, 387 F.3d 21, 24 (1st Cir. 2004). Thus, we turn to the Complaint and, without conceding any of the alleged facts, we set them forth in a light most favorable to NetVersant.

## STATEMENT OF THE ALLEGED FACTS

In 1998, NetVersant sought to obtain work on construction and data voice projects in the Greater Boston area. To further that effort, NetVersant approached Local 103 about becoming a signatory to Local 103's Telecommunications Agreement. (Complaint ¶ 9) The

Telecommunications Agreement is a collective bargaining agreement between Local 103 and the Electrical Contractors Association – a multi-employer association, of which NetVersant is a member. (*Id.* ¶¶ 7-9) At the time it approached Local 103, NetVersant was already signatory to a collective bargaining agreement with IBEW Local 2222. (*Id.* ¶ 10) NetVersant recognized that the scope of the work covered by the Telecommunications Agreement included work that NetVersant was then performing under its agreement with Local 2222. (*Id.* ¶ 11)

According to NetVersant, to resolve a potential conflict over which work would be performed by employees represented by Local 103, and which would be performed by employees represented by Local 2222, NetVersant entered into negotiations with the International and Locals 103 and 2222. Carroll represented the International. (*Id.* ¶ 12) These negotiations continued throughout 1998 and concluded in October 1998, when allegedly, an agreement was reached. The terms of that agreement are memorialized in the Jurisdictional Agreement attached to the Complaint as Exhibit 2. (*Id.* ¶ 14)[1] The Jurisdictional Agreement purports to be one between NetVersant, Local 103 and Local 2222.[2] The agreement, however, is not signed by either Local 103 or Local 2222; it is signed only by NetVersant and Carroll. (*Id.*, Ex. 2)

---

[1] The International Third-Party Defendants do not concede that a "Jurisdictional Agreement" was ever reached by the parties. The Complaint, however, alleges such an agreement. Because the Court must decide the instant motion by reviewing the alleged facts in a light most favorable to NetVersant, we accept the existence of such an agreement solely for the purpose of bringing the instant motion to dismiss.

[2] In 1998, NetVersant was doing business as "JCI Communications Inc." JCI Communications, Inc. did business as JEMD-COMM, Inc. before doing business as JCI Communications, Inc. (Complaint ¶1) All references to NetVersant herein include JCI Communications, Inc. and JEMD-COMM, Inc.

Among other things, the Jurisdictional Agreement purportedly sets forth how NetVersant's work would be divided between Local 103 and Local 2222. (*Id.* ¶ 14) In addition, the Jurisdictional Agreement addresses wages and benefits by providing that "[a]ll telecommunications employers will compete on an equal basis according to agreed upon industry standards for wages and benefits." (Complaint, Ex. 2, ¶8)

Based upon representations made by the Local and International Third-Party Defendants that the terms of the Jurisdictional Agreement would be honored, and that the Carroll had the authority to bind Local 103 and Local 2222, NetVersant entered into a Letter of Assent with Local 103, binding itself to the Telecommunications Agreement. (*Id.* ¶¶ 15 and 16) The parties then operated in accordance with the Jurisdictional Agreement for approximately three and one-half years. (*Id.* ¶ 17) Thereafter, in January 2002, Local 103 filed a grievance alleging that NetVersant had violated the Telecommunications Agreement by assigning work covered by the Telecommunications Agreement to employees other than those represented by Local 103. (*Id.* ¶¶ 19 and 22) Nonetheless, NetVersant entered into a successive Telecommunications Agreement after Local 103 filed its grievance. (Complaint ¶ 25) (NetVersant entered into a successor agreement covering NetVersant through 2006)

Local 103's grievance was heard by the Joint Conference Committee, a dispute resolution body consisting of three representatives of Local 103 and three employer representatives from the Electrical Contractors Association. (*Id.* ¶20) At the Joint Conference Committee hearing, NetVersant explained that it had been assigning work in accordance with the Jurisdictional Agreement. (*Id.* ¶21) The Joint Conference Committee issued a decision in favor of Local 103, in which it found that the Jurisdictional Agreement was not enforceable. (*Id.* ¶23) NetVersant filed suit in this Court, seeking to vacate the award of the Joint Conference Committee. Judge

Rya W. Zobel dismissed NetVersant's complaint. *JCI Communications, Inc. v. International Brotherhood of Electrical Workers Local 103*, 2002 U.S. Dist. LEXIS 16283 (D. Mass. 2002). NetVersant appealed to the First Circuit, which issued a decision affirming Judge Zobel's order dismissing the complaint. *JCI Communications, Inc. v. IBEW Local 103*, 324 F.3d 42 (1st Cir. 2003).[3]

NetVersant asserts that these facts reveal a scheme by the Local and International Third-Party Defendants to deceive NetVersant. (*Id.* ¶ 25) In particular, NetVersant claims that the International Third-Party Defendants intentionally and knowingly misrepresented their intent to enter into and be bound by the Jurisdictional Agreement, and to bind Locals 103 and 2222 to that agreement. (*Id.* ¶¶ 28, 29, 35, 36) NetVersant also contends that, by allegedly acting in conformity with the Jurisdictional Agreement for three and one-half years, the International Third-Party Defendants misrepresented their understanding of the validity and enforceability of, and their intent to bind the International and Locals 103 and 2222 to, the Jurisdictional Agreement. (*Id.* ¶¶ 29 and 37)

## ARGUMENT

I.    **NETVERSANT'S CLAIMS ARE PREEMPTED BY FEDERAL LABOR LAW**

    A.    **Section 301 Preemption**

Section 301 of the LMRA gives federal district courts jurisdiction over suits based on alleged violations of contracts "between an employer and a labor organization . . . ." 29 U.S.C. §185(a). In addition to providing jurisdiction, §301 requires federal courts to fashion a body of

---

[3] The facts associated with the Joint Conference Committee's decision and NetVersant's subsequent lawsuit are set forth more fully in the Local Third-Party Defendants' Memorandum of Law. To avoid repetition, the International Third-Party Defendants incorporate those facts herein by reference.

federal common law in interpreting labor contracts. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957). Because §301 requires the application of federal common law, and because Congress intended to create a body of law under which labor contracts would be interpreted uniformly, state law suits are preempted when they require the court to interpret a labor contract. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962).

The preemptive effect of §301 is not limited to state-law claims for breach of a labor contract. Rather, §301 also preempts any state tort action that requires a court to interpret a collective bargaining agreement. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 210-11 (1985). In determining whether a tort claim is preempted by §301, courts examine "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a §301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220 (citations omitted); *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988) (if resolution of a state law claim depends upon the meaning of a collective bargaining agreement, it is preempted).

Mere consultation of a collective bargaining agreement in the course of deciding a state-law claim does not preempt the state claim. *Lingle*, 486 U.S. at 413; *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). But, if in resolving the state law claim, the court must not only consult the collective bargaining agreement, but interpret the agreement to ascertain its meaning, the claim is preempted. *Martin v. Shaw's Supermarkets*, 105 F.3d 40, 42 (1st Cir. 1997). Section 301 preemption, therefore, "casts a relatively wide net" because it preempts state law causes of action

6

that depend on the meaning of a collective bargaining agreement. *Flibotte v. Penn. Truck Lines*, 131 F.3d 21, 26 (1st Cir. 1997).

There are two circumstances in which a state law cause of action can depend upon the meaning of a labor contract. First, a claim may allege conduct that constitutes a breach of a duty arising pursuant to a collective bargaining agreement. Second, a claim's resolution may arguably hinge upon an interpretation of a labor agreement. *Flibotte*, 131 F.3d at 26. "If a state-law claim depends upon the meaning of the collective bargaining agreement in either of these ways . . . it is preempted." *Id.* Assuming that, as NetVersant has alleged, it reached an agreement memorialized in the Jurisdictional Agreement, NetVersant's claims are preempted because they depend upon the interpretation of that agreement.

NetVersant has asserted claims for fraudulent, *i.e.*, intentional, misrepresentation. (Complaint at ¶¶ 26-56) To prevail, NetVersant must prove that: (1) the Third-Party Defendants made knowingly false, material statements of fact, (2) to induce NetVersant to act, and that (3) NetVersant reasonably relied upon such statements, (4) to its detriment. *Rodowicz v. Massachusetts Mutual Life Ins. Co.*, 192 F.3d 162, 172 (1st Cir. 1999); *Turner v. Johnson & Johnson*, 809 F.2d 90, 95 (1st Cir. 1986).[4] Whether NetVersant can meet its burden of proving these elements depends upon the meaning of the Jurisdictional Agreement.

---

[4] Although statements of present intention as to future conduct may be the basis for a fraudulent misrepresentation action, *Barrett Assocs., Inc. v. Araonson*, 190 N.E.2d 867 (Mass. 1963), silence is not an actionable misrepresentation because silence is not a "statement of fact." *E.g.*, *Goebel v. Scmid Brothers, Inc.*, 871 F. Supp. 68, 74 (D. Mass. 1994). Thus, in addition to being preempted, NetVersant's allegation that, by acting in conformity with the Jurisdictional Agreement and not challenging the agreement for three and one-half years, the Third-Party Defendants "misrepresented" the validity of the Jurisdictional Agreement, fails to state a claim because mere silence cannot form the basis of a misrepresentation action. (*See* Complaint ¶¶ 29 and 37)

NetVersant alleges that the agreement it allegedly reached with the unions is memorialized in the Jurisdictional Agreement. (Complaint ¶14) As such, the Jurisdictional Agreement is a contract between an employer and a labor organization covered by §301. *Retail Clerks Int'l Ass'n v. Lion Dry Goods*, 369 U.S. 17, 28 (1962). NetVersant's entire case is premised on its contention that: (1) its interpretation of the Jurisdictional Agreement – as one which limits the scope and application of the Letter of Assent – is the only correct one, (2) the Jurisdictional Agreement altered its obligations under the Letter of Assent; (3) it has complied with the Jurisdictional Agreement, (4) the Third-Party Defendants have not complied with the Jurisdictional Agreement, and therefore, (5) the Third-Party Defendants' statements regarding their intention to abide by the Jurisdictional Agreement, were actionable misrepresentations. To resolve NetVersant's claim, it is obvious that the meaning of the Jurisdictional Agreement must be discerned through an interpretation of the agreement. The Court must interpret the Jurisdictional Agreement to ascertain whether the alleged misrepresentations were false; whether they concerned a material fact; whether NetVersant's reliance was reasonable; and whether NetVersant relied to its detriment.

To prevail against the International Third-Party Defendants, NetVersant must prove that Carroll's representation regarding his intention, on behalf of the IBEW, to enter into and be bound by the Jurisdictional Agreement, was a false and material statement. To determine the alleged statement's falsity, the Court must ascertain whether the IBEW has in fact failed to abide by the Jurisdictional Agreement – a determination which requires the Court to interpret the Jurisdictional Agreement's terms. To ascertain the materiality of the alleged false statement, the Court must determine whether, and to what extent, NetVersant's obligations under the Letter of Assent were altered by the Jurisdictional Agreement. If the Jurisdictional Agreement did not, for

example, alter NetVersant's obligations under the Letter of Assent to make contributions to Local 103's fringe benefit funds for *all* work performed under the Telecommunications Agreement, then any statements by Carroll regarding an intention to abide by the Jurisdictional Agreement could not have reasonably influenced NetVersant's decision to enter into the Letter of Assent.  *See Rodowicz*, 192 F.3d at 174-75 (a material statement under Massachusetts law is defined to mean one to which a reasonable person would attach importance).

Similarly, the reasonableness of NetVersant's reliance on the alleged promises to abide by the Jurisdictional Agreement necessarily depends upon the meaning of the Jurisdictional Agreement.  The extent to which, if at all, the terms of the Jurisdictional Agreement alter NetVersant's obligations under the Letter of Assent directly affect whether it was reasonable for NetVersant to enter into the Letter of Assent in reliance upon the alleged misrepresentations.  If the Jurisdictional Agreement does not relieve NetVersant of its obligation to comply fully with the Letter of Assent, then NetVersant's reliance on an alleged promise to abide by the Jurisdictional Agreement could not have been reasonable.

Finally, if the Jurisdictional Agreement does not alter NetVersant's obligations under the Letter of Assent, then any alleged damages sustained by NetVersant cannot be attributed to the alleged misrepresentations.  Thus, if the Jurisdictional Agreement did not alter NetVersant's obligations under the Letter of Assent, NetVersant could not have relied to its detriment.

The extent to which, if at all, the Jurisdictional Agreement affected NetVersant's obligations under the Letter of Assent will be disputed.  For example, the Jurisdictional Agreement on its fact does not delineate NetVersant's work between the Local 103 and Local 2222 agreements.  Rather, it sets forth which *employees* will perform certain types of work, not which *agreement* those employees will work under when performing the work.  Moreover, the

Jurisdictional Agreement demonstrates that, rather than being caught in a jurisdictional dispute between two unions, NetVersant has instead breached its promise not to undermine industry standards wages and benefits. Paragraph eight of the Jurisdictional Agreement provides that "[a]ll telecommunications employers will compete on an equal basis according to agreed upon industry standards for wages and benefits." (Complaint, Ex. 2) Assuming that the Jurisdictional Agreement is an enforceable agreement, one reasonable interpretation is that it required NetVersant to pay all of its employees the wages and benefits set forth in the industry standard Telecommunications Agreement irrespective of which employees performed certain work; which union represented those employees; and which agreement covered those employees. Under this interpretation, the alleged misrepresentations had no actionable effect on NetVersant because the Jurisdictional Agreement did not alter NetVersant's obligation under the Letter of Assent to pay all of its employees the wages and benefits set forth in the Telecommunications Agreement. Instead, the Jurisdictional Agreement reinforced that obligation.

The Jurisdictional Agreement also does not provide on its face a clear demarcation between work to be performed by employees from Local 103, as opposed to those from Local 2222. (Compare paragraph four of the Jurisdictional Agreement, which states that if additional manpower is needed, Local 103's members will be utilized, with paragraph 6, which states that any new Technical Specialists will be referred by Local 2222 *or* Local 103).

The point is not that the IBEW's or NetVersant's interpretation of the Jurisdictional Agreement is correct, or that the Jurisdictional Agreement does or does not in fact affect NetVersant's obligations under the Letter of Assent. Rather, these issues present an interpretative dispute, the resolution of which requires the Court to interpret the Jurisdictional Agreement. As a result, NetVersant's claims are preempted by §301 of the LMRA.

The facts as set forth in the complaint are similar to those in *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999), in which a union and an employer entered into a closing agreement governing the effect of closing a distribution terminal. A group of employees adversely affected by the closure sued for, among other things, fraudulent misrepresentation, claiming that the defendants had misrepresented that they were not bound by the closing agreement. In holding the plaintiffs' claims preempted, the Third Circuit recognized that in order to discern whether the defendants had misrepresented the validity of the closing agreement, the agreement itself would have to be interpreted. Because the alleged misrepresentation was based directly on the closing agreement – a contract covered by §301 – inasmuch as the alleged misrepresentation concerned the defendants' obligations and the plaintiffs' rights under the closing agreement, the court recognized that interpretation of the agreement was inextricably intertwined with the analysis of the state law claim. *Id.* at 234.

In this case, NetVersant contends that it has fraudulently been denied its right under the Jurisdictional Agreement to assign certain work covered by its Letter of Assent with Local 103 to employees represented by Local 2222. Like *Beidleman*, this case is based on misrepresentations concerning the validity and meaning of a labor contract – the Jurisdictional Agreement – and not on promises wholly separate and apart from a labor agreement. *Beidleman*, 182 F.3d at 234. Accordingly, cases on which NetVersant may rely, and in which courts have rejected preemption because alleged misrepresentations were made apart from the terms of a labor contract, are easily distinguishable.[5] Here, the alleged misrepresentation is not separate

---

[5] *See e.g.*, *Northwestern Ohio Administrators v. Walcher & Fox*, 270 F.3d 1018, 1029 (6th Cir. 2001) (alleged misrepresentations did not concern any term of collective bargaining agreements, and did not require the interpretation of any labor contract); *Operating Engineers Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir. 1990) (because the alleged misrepresentation

and apart from any labor contact. Instead, as set forth above, it is inextricably intertwined with the meaning of the Jurisdictional Agreement. Therefore, NetVersant's misrepresentation claims are preempted by §301 of the LMRA, and must be dismissed.[6]

### B. NLRA Preemption

As set forth in the Local Third-Party Defendants' Memorandum of Law, NetVersant and Local 103 entered into a collective bargaining relationship on October 1, 1998. (Complaint ¶6) The following day, NetVersant entered into the Jurisdictional Agreement. (*Id.*, Ex. 2) NetVersant is also alleged to have had a collective bargaining relationship with IBEW Local 2222 at the time it entered into the Jurisdictional Agreement. (*Id.* ¶ 10)

---

that "everyone on the job site had to be union" and therefore the contractor had to sign a collective bargaining agreement, did not require the interpretation of any labor contract, the claim was not preempted); *Compare e.g.*, *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 118-20 (1st Cir. 1988) (employee's state-law invasion of privacy claim concerning drug testing was preempted because it depended upon the employee's expectation of privacy, which could be ascertained only by interpreting whether drug testing was reasonable under the collective bargaining agreement covering the employee); *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764 (7th Cir. 1991) (when individual employees contended that an employer fraudulently misrepresented its promise to the employees, the claim was preempted because the reasonableness of the employees' reliance on the alleged misrepresentation required interpretation of the collective bargaining agreement).

[6]   A finding of preemption under §301 requires either treating the claim as a §301 claim, or dismissing the claim as preempted by federal labor law. *Lueck*, 471 U.S. at 220. Here, NetVersant's claim cannot be treated as a §301 claim because in *Textron Lycoming Reciprocating Engine Div. Avco Corp. v. United Auto Workers*, 523 U.S. 653, 657-58 (1998), the Supreme Court held that §301 does not confer subject matter jurisdiction over claims that a labor contract is invalid because of fraud in the inducement of the agreement. Rather, a claim brought under §301 may only be brought for a violation of a labor contract. Of course, the fact that NetVersant cannot state a §301 claim does not affect the fact that its state-law claims are preempted. As the Supreme Court stated in *Lueck*, the preempted state-law claim must either be treated as a §301 claim, or dismissed if no §301 claim can be stated. And, in *Lueck*, the Court held that a state-law tort claim like that at issue here, was preempted by §301. Nor does the fact that dismissal may leave NetVersant without a remedy for its alleged (but unproven, and disputed) wrong, alter the preemption finding. *Shaw's Supermarkets*, 105 F.3d at 44.

12

NetVersant alleges that, in negotiating the Jurisdictional Agreement, Carroll, as an International Vice-President, was acting on behalf of Locals 103 and 222, and could bind those locals. (*Id.* ¶¶ 15, 28, 36) The alleged misrepresentations attributable to Carroll, therefore, would have violated §8(b)(3) of the NLRA because, as set forth in detail in the Local Third-Party Defendants' Memorandum of Law, the duty to bargain in good faith includes the duty to act honestly. Misrepresentations by a union or an employer violate the NLRA-imposed duty to bargain in good faith. *E.g.*, *Waymouth Farms, Inc.*, 324 NLRB 960 (1997), enforced, 172 F.3d 598 (8th Cir. 1998). The Complaint, therefore, is preempted because it involves activity which is arguably prohibited by §8 of the NLRA. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

## II. THE CLAIMS AGAINST CARROLL FAIL TO STATE A CLAIM BECAUSE CARROLL CANNOT BE HELD PERSONALLY LIABLE

The claims against Carroll, in addition to being preempted, should be dismissed because Carroll cannot be held personally liable in this case. It is well-established that "union agents are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Montplaisir v. Leighton*, 875 F.2d 1, 10 (1st Cir. 1989).[7] In *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), *overruled on other grounds in Boys Market, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970), the Court explained that, in enacting §301(b), Congress intended "that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it." *Id.* at 249 (quoting *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470 (1960)). Accordingly, in *Atkinson*, the Court held that

---

[7]  The source for such immunity is found in §301(b) of the LMRA, which states that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."  29 U.S.C. §185(b).

individual officers' immunity extends to actions "in contract or tort, or both . . . or in a separate action for damages."

Therefore, "[w]ith monotonous regularity, court after court has cited *Atkinson* to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process. This principle has become so embedded in our jurisprudence that it brooks no serious challenge." *Montplaisir*, 875 F.2d at 11-12 (citations omitted).

Thus, union officials are immune from any suit which seeks to impose liability for conduct "within the ambit" of collective bargaining. This immunity extends even if the employer's claim is not one under §301 of the LMRA, and even if the claim is not one that is preempted by §301. *E.g.*, *Carino v. Stefan*, 376 F.3d 156, 61-62 (3d Cir. 2004) (the question of preemptive power is distinct from the question whether immunity under §301(b) applies); *Wolfson v. American Airlines*, 170 F. Supp. 2d 87, 95-96 (D. Mass. 2001) (union officials could not be liable for a tortuous interference claim even though the claim was not preempted under either the *Garmon* doctrine or §301 of the LMRA). Accordingly, even if NetVersant could not maintain its claims as claims *under* §301 of the LMRA, the immunity set forth in §301(b) nevertheless applies to Carroll because the alleged misrepresentations by Carroll occurred "within the ambit of the collective bargaining process."

As explained above, NetVersant alleges that Carroll participated in "extensive negotiations" concerning the alleged jurisdictional dispute between Local 103 and 2222, and that these negotiations led to the Jurisdictional Agreement and Letter of Assent. (Complaint ¶¶ 14-16) NetVersant contends that, in those negotiations, "Carroll represented, and it clearly appeared to NetVersant to be the case, that he had the authority to bind Local 103, Local 2222 and the

14

International . . . ." (*Id.* at ¶15) The Complaint alleges that both Local 2222 and Local 103 had collective bargaining relationships with NetVersant. (*Id.* at ¶¶ 10 and 16) Accordingly, there can be no serious question that the allegations against Carroll concern his actions "within the ambit" of collective bargaining. Therefore, Count II of the Complaint should be dismissed not only because it is preempted, but also because Carroll cannot be held personally liable for the damages sought by NetVersant.

### III. NETVERSANT'S CLAIM FOR CONTRIBUTION AND INDEMNIFICATION FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Count V of the Complaint alleges that, if any liability is found owing by to the Plaintiff Trust Funds in the underlying action by reason of NetVersant's acts allegedly undertaken in conformity with the Jurisdictional Agreement, "then NetVersant is entitled to indemnification and contribution from the Third-Party Defendants." (Complaint ¶61) NetVersant has failed to state a claim on which relief can be granted.

Contribution under Massachusetts law is governed by statute. Mass. Gen. L. c. 231B, §1(a), states in relevant part that "where two or more persons become *jointly liable in tort* for the same injury to person or property, there shall be a right of contribution among them . . ." (Emphasis added). Contribution claims are thus derivative, and not new causes of action. *Berube v. Northhampton*, 413 Mass. 635, 638 (1992); *Liberty Mut. Ins. Co. v. Westerlind*, 374 Mass. 524 (1978); *Samos Imex Corp. v. Nextel Comm. v. Brook Hill Enterprises, Inc.*, 20 F. Supp. 2d 248 (D. Mass. 1998). Quite simply the underlying claim must in essence be a tort action, *Thomas v. EDI Specialist*, 437 Mass. 536 (2002), and there is no right of contribution unless the potential contributor is *directly liable* to the injured person. *Dighton v. Federal Pacific Electronics Co.*, 399 Mass. 687, 691, (1987); *Liberty Mut. Ins. Co. v. Westlind*, 374 Mass. 524, 526 (1971); *O'Mara v. H.P. Hood & Sons*, 359 Mass. 235, 237-38 (1971). Here,

NetVersant has alleged no theory on which the Third-Party Defendants could be directly liable to the Plaintiff Trust Funds. Moreover, since the Plaintiff Trust Funds' claim against NetVersant seeking "to enforce the terms of various collective bargaining agreements" (Amended Complaint, at 1, *see also* Second Amended Complaint, Count I, ¶¶ 25-40) sounds in contract rather than tort, there can be no claim for contribution by NetVersant against the Third-Party Defendants.

NetVersant's claim for indemnification fails as well. A right to indemnification arises in three circumstances. First, an express indemnification clause in a written agreement may create a right to indemnification. *Araujo v. Woods Hole Martha's Vineyard Nantucket Steamship Notoriety*, 693 E.2d 1, 2 (1st Cir. 1982); *Samos Imex Corp v. Nextel Communications Inc.*, 20 F. Supp 2d 248, 251 (D. Mass. 1998). Here, NetVersant has alleged no express agreement by any of the Third-Party Defendants to indemnify it.

Second, a contractual right to indemnification may be implied from the nature of the relationship between the parties. *Araujo*, 693 F.2d at 2; *Samos Imex Corp*, 20 F.Supp.2d at 251. It is not enough, however, for contractual indemnity that one party is subject to liability for an injury that it believes another played a role in causing, for such a theory "turns indemnity on its head." *Araujo*, 693 F.2d at 2 (quoting *Santisteven v. Dow Chemical Co.*, 506 F.2d 1216, 1219 (9th Cir. 1974)). Instead, a contractual right to indemnification may be implied only when there are "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility" towards the plaintiff, or when there is "a generally recognized special relationship between the parties." *Araujo*, 693 F.2d at 2-3 (citations omitted). Again,

NetVersant has alleged no such special factor or special relationship on which it could base a claim for implied contractual indemnity.[8]

Finally, a tort-based right to indemnification may be found in certain circumstances. *Id.* at 2. But this theory "has been held akin to contribution between tortfeasors in that the indemnitor as well as the party seeking indemnification must be liable to the plaintiff." *Id.* at 3. As noted above, the Third-Party Defendants are not liable to the Trust Funds, and accordingly, the tort-based theory of indemnification fails as well.

### IV. NETVERSANT'S CLAIMS AGAINST THE INTERNATIONAL THIRD-PARTY DEFENDANTS ARE BARRED BY THE DOCTRINE OF RES JUDICATA

As explained in the Local Third-Party Defendant's Memorandum of Law, NetVersant's misrepresentation claims against Local 103 and Ward are barred by the doctrine of res judicata because they could have been raised in NetVersant's prior lawsuit against Local 103. Although the International Third-Party Defendants were not parties to NetVersant's prior lawsuit, the doctrine of res judicata nevertheless applies to the misrepresentation claims against the International Third-Party Defendants.

"It has long been recognized that the federal doctrine of 'non-mutual claim preclusion' permits a non-party defendant in a prior action to raise a defense of res judicata in a subsequent suit." *Andrews-Clarke v. Lucent Technologies*, 157 F. Supp. 2d 93, 100 (D. Mass. 2001). The First Circuit held in *In re San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988), that claim preclusion "is appropriate in these circumstances if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action. Another

---

[8] Moreover, any contract-based indemnification claim would be preempted by §301 of the LMRA because it would depend upon the interpretation of a labor contract.

formulation of this idea is that preclusion is appropriate 'only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance.'" (Citations omitted)

The Complaint alleges such a significant relationship between the International Third-Party Defendants and Local 103 – the original defendant in NetVersant's prior lawsuit. The Complaint alleges "a scheme by which the International, its Local 103 chapter, and their officials deceived NetVersant. . . ." (Complaint ¶ 25)  It is also alleged that "Carroll represented, and it clearly appeared to NetVersant to be the case, that he had the authority to bind Local 103 . . . to the jurisdictional terms and to bind [it] to the Jurisdictional Agreement." (Complaint ¶15)  Thus, NetVersant has alleged that Local 103, together with Ward and the International Third-Party Defendants were engaged in a common scheme to defraud NetVersant, and that Carroll was somehow Local 103's agent with respect to the Jurisdictional Agreement.

NetVersant also cannot demonstrate any good reason why it did not join the International Third-Party Defendants in the prior lawsuit.  In its previous lawsuit, NetVersant raised the alleged misrepresentations it claims here, and asserted that the Letter of Assent had been procured by fraud.  324 F.3d at 48, 51 n.7.  NetVersant also claimed in its prior lawsuit that Carroll represented that he had the authority to bind Local 103 to the Jurisdictional Agreement. *Id.* at 50, n. 5.  Accordingly, the facts on which NetVersant bases its misrepresentation claims against the International Third-Party Defendants were known at the time NetVersant brought its prior lawsuit against Local 103.  Under these circumstances, the International Third-Party Defendants have a "sufficiently 'close and significant relationship with the original defendants' to warrant the application of the doctrine of res judicata." *Andrews-Clarke*, 157 F. Supp. at 101.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Memorandum of Law on behalf of the Local Third-Party Defendants, the Third-Party Complaint filed against the IBEW and Carroll should be dismissed.

Respectfully submitted,

s/Jonathan D. Newman

_____

Jonathan D. Newman
SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
1125 Fifteenth Street, N.W., Suite 801
Washington, D.C. 20005
(202) 785-9300

Christopher N. Souris (BBO # 556343)
KRAKOW & SOURIS
225 Friend Street, 8th Floor
Boston, MA 02114
(617) 723-8440

Attorneys for the IBEW and Carroll