UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator, <br><br> Plaintiff, <br><br> v. <br><br> NETVERSANT-NEW ENGLAND, INC., et al., <br><br> Defendants, <br><br> and <br><br> NETVERSANT-NEW ENGLAND, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO-CLC, et al., <br><br> Third-Party Defendants. | Civil Action No. 04-10559NMG |

## OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS

Russell Sheehan, as Administrator of certain ERISA funds that are associated with Local

103 of the International Brotherhood of Electrical Workers ("Local 103"), has brought a

collection action against NetVersant-New England, Inc. ("NetVersant" or the "Company") for

contributions that Sheehan claims are owed to the funds for hours worked by members of Local

2222 of the International Brotherhood of Electrical Workers ("Local 2222").  NetVersant, in

turn, has impleaded Local 103, the International Brotherhood of Electrical Workers

("International" or "IBEW"), International Vice President Frank J. Carroll ("Carroll") and

former Local 103 Business Manager Paul Ward ("Ward"), alleging that these parties fraudulently

misrepresented that the jurisdictional dispute between Local 103 and Local 2222 had been

resolved and, thereby, induced NetVersant, which was then subject to a collective bargaining

agreement with Local 2222, to execute, in October 1998, a Letter of Assent that bound the

Company to the terms of a multi-employer Telecommunications Agreement between the

Electrical Contractors Association of Greater Boston, Inc. Boston Chapter, NECA and Local

103.

With regard to Third-Party Defendants Local 103 and Ward, NetVersant claims that it

signed the Letter of Assent based on representations by Ward, acting on behalf of Local 103, that

Local 103 through him would enter into the correlative Jurisdictional Agreement.  An example

of those representations is contained in a letter from Ward to NetVersant, dated March 23, 1998,

wherein Ward states that, "I will continue to work with Local 2222 in order to formalize a

jurisdictional agreement in line with our previous discussions and would be willing to sign an

Assent form with a side letter on the jurisdictional guidelines."[1]  With respect to Third-Party

Defendants IBEW and Carroll, NetVersant is claiming that Carroll misrepresented that the

IBEW had, and would exercise, the authority to require Local 103 and Local 2222 to execute the

Jurisdictional Agreement.  It is the refusal of these Third-Party Defendants to enter into the

agreed-upon Jurisdictional Agreement that is the foundation of NetVersant's fraudulent

misrepresentation claim.[2]

In their respective motions to dismiss, the Third-Party Defendants argue (1) that the

Third-Party Complaint is preempted by the National Labor Relations Act; (2) that the Third-

Party Complaint also is preempted by Section 301 of the LMRA; (3) that the claims against

---

[1] The Ward letter is Exhibit 1 to the Third-Party Complaint.  For the Court's convenience, a copy of the letter is attached hereto as Exhibit A.

[2] Similar claims for indemnification have been upheld by courts. S*ee, e.g., Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc*., 270 F.3d 1018 (6th Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002); *Connors v. Fawn Mining Corp*., 30 F.3d 483 (3d Cir. 1994); *Operating Engineers Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir. 1990), *cert. denied*, 505 U.S. 1212 (1992); *Rozay's Transfer v. Local Freight Drivers, Local 208, IBT*, 850 F.2d 1321 (9th Cir., 1988), *cert. denied*, 490 U.S. 1030 (1989); *Capozza Tile Co. v. Joy*, 223 F. Supp. 2d 307 (D. Me. 2002); *Iron Workers District Council v. Butler Fence Co*., 919 F. Supp. 589 (N.D.N.Y. 1996).

Third-Party Defendants Ward and Carroll are barred by Federal labor law; (4) that the misrepresentation claims are barred by the doctrine of *res judicata*; and (5) that the separate state law claim for indemnification and contribution fails as a matter of law. As addressed below, none of these arguments support the dismissal of the Third-Party Complaint.

## ARGUMENT

As noted *supra* at footnote 2, claims for indemnification similar to those pleaded herein by NetVersant have been upheld by courts. Of particular relevance to the instant case is *Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc*., 270 F.3d 1018 (6th Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002). In that case, Northwestern Ohio Administrators ("NOA"), a non-profit corporation that administered ERISA plans, sued Walcher & Fox Inc. ("W&F"), a construction company, claiming that W&F owed fringe benefit and pension fund contributions for all of its employees pursuant to project agreements entered into by W&F and the International Association of Bridge, Structural, and Ornamental Ironworkers Local Union No. 55 (the "Union").

As in the instant case, W&F impleaded the Union and one of its representatives, Helldobler, alleging that they had fraudulently misrepresented the scope of the project agreements and that they were therefore liable for contribution and indemnification for any additional contributions owed by W&F to NOA. As in the case at bar, the Union and Helldobler moved to dismiss W&F's third-party complaint, arguing, among other things, that: (1) the third-party complaint was preempted by the rule of *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) (NLRA preemption); (2) the complaint was preempted by Section 301 of the LMRA; and (3) Helldobler was immune from suit as an individual, pursuant to Section 301(b) and the rule in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962).

The Sixth Circuit, however, rejected all of the arguments of the third-party defendants.

First, in reference to *Garmon* preemption, the Sixth Circuit held as follows:

> The party arguing *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the National Labor Relations Act …
>
> Before we address the *Garmon* factors, we must first address the threshold question of whether the Union's conduct at issue here is arguably prohibited by section 8 [of the NLRA]. The state law counterclaim brought by W&F is for fraud in the inducement. The claim is based on the allegedly fraudulent misrepresentations made by the union representative to induce W&F to sign agreements providing for the employment of a discrete number of union employees on particular jobs at particular job sites.…
>
> The agreement in question is not a collective bargaining agreement because the union was not the duly elected representative of a majority of the employees, and was not authorized to bargain on the employees' behalf on the terms and conditions of employment. The Union has offered nothing to support its assertion that the conduct at issue in W&F's counterclaim is arguably prohibited by the NLRA, and has therefore failed to meet its burden to show preemption.

270 F.3d at 1027-8. In this regard, in *Northwestern Ohio Administrators*, W&F had signed three project agreements entitled "Employer Participation Agreements" that provided, in relevant part, as follows:

> 1. The Company hereby recognizes the Union as the representative of a majority of its employees designated, acknowledges receipt of a copy of the current Bargaining Agreement and agrees to be bound by the terms and conditions contained therein . . . .
>
> 4. The Company agrees to make the contributions and deductions to the said Plans at the times and in the amounts specified in the Bargaining Agreement, for all its employees performing the work specified in the Bargaining Agreement.

270 F.3d at 1022. As in the case of the IBEW and Local 103 herein, the Union, in *Northwestern Ohio Administrators*, did not represent a majority of the employees of W&F at the time of alleged misrepresentations. As ruled by the Sixth Circuit and as discussed in more detail below (*see* Argument A, *infra*), the fact that neither the IBEW nor Local 103 represented any of

4

NetVersant's employees at the time of the actionable misrepresentations makes *Garmon*

preemption inapplicable.

Second, in regards to the Section 301 preemption argument, the Sixth Circuit stated as

follows:

> The Union and Helldobler next argue that the state law claim asserted in the third-party
> complaint is preempted by section 301 of the LMRA. Under their theory, the state claim
> should be preempted under federal law because the issues the court must determine are
> "inextricably intertwined with the terms of the labor contract." …
>
> The claim advanced by W&F--that the Union fraudulently induced it to sign the
> Employer Participation Agreements. . .does not require interpretation of a collective
> bargaining agreement or even of the Employer Participation Agreements themselves.
> Instead, the rights and duties at issue arise from the Union's actions prior to the formation
> of the Employer Participation Agreements. W&F alleges that the Union claimed it was
> seeking only to show W&F the benefits of having a union labor force, when in fact it was
> deceiving the employer into paying union benefits for all its employees. The relevant
> inquiry here concerns the representations made by the Union and/or Helldobler at the
> time the Project Agreements were executed, not any term of the Agreements themselves.
> Section 301 therefore does not preempt the third-party state law claim.

270 F.3d at 1030-1.  As in *Northwestern Ohio Administrators*, NetVersant is claiming that it was

fraudulently induced to sign the Letter of Assent based on the Third-Party Defendants'

representations that they would enter into and execute the Jurisdictional Agreement.

Accordingly, as in *Northwestern Ohio Administrators*, the instant third-party action is not

preempted by Section 301, since "[t]he relevant inquiry here concerns the representations made

by the. . .[Local 103 and IBEW defendants] at the time the. . .[Letter of Assent was] executed,

not any term of the. . .[unenforceable Jurisdictional Agreement itself]." 270 F.3d at 1031.

Lastly, in regards to the individual defendant's claim that he could not be sued under

Federal labor law, the Sixth Circuit ruled as follows:

> Lastly, Helldobler claims that *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962),
> provides him immunity from suit. Helldobler misreads *Atkinson*. *Atkinson* addressed the
> question of whether individual union members could be held liable for the union's
> violation of a no-strike clause in their contract. The Supreme Court held that they could

5

not. *Atkinson* does not stand for the more radical proposition advanced here by Helldobler, that union members are immune from suit for their individual acts simply by virtue of union membership.…

The issue of whether Helldobler was actually acting on behalf of the Union when he committed his alleged fraud is still open. More importantly, the immunity established by the Supreme Court in *Atkinson* and expanded in *Complete Auto Transit, Inc., v. Reis*, 451 U.S. 401, 417 (1981) (holding "that § 301(a) does not sanction damages actions against individual employees for violating the no-strike provision of the collective-bargaining agreement, whether or not their union participated in or authorized the strike"), is immunity from actions brought under section 301 for "violation of contracts between an employer and a labor organization."...We join the Third Circuit in concluding "that a state law claim brought against a union officer that does not implicate a collective bargaining agreement covered by section 301(a) does not give rise to section 301(b) immunity. When section 301(a) is inapplicable, the immunity provided by section 301(b) is also inapplicable." *Sever*, 985 F.2d at 1231.

270 F.3d at 1031-2.  As noted above and discussed further below (*see* Argument B, *infra*),

Section 301 is not implicated by the instant Third-Party Complaint and, as such, neither Carroll

nor Ward can claim Section 301(b) immunity.

### A.    The Complaint Is Not Preempted By The NLRA

*Claims against IBEW and Carroll*

In their memorandum in support of their Motion to Dismiss, the IBEW and Carroll make

the briefest of arguments in support of *Garmon* preemption.  In this regard, the IBEW notes that

NetVersant has alleged that the IBEW, acting through Carroll, misrepresented that the IBEW had

the authority to require and would exercise that authority to require Local 103 to execute a

document memorializing the parties' jurisdictional agreement.  The IBEW and Carroll then

merely state, in summary fashion, that Carroll's misrepresentations "would have violated

§8(b)(3) of the NLRA because. . .[m]isrepresentations by a union or an employer violate the

NLRA-imposed duty to bargain in good faith."

However, in *International Longshoremen's Association v. Davis*, 476 U.S. 380 (1986),

the United States Supreme Court described the IBEW and Carroll's burden in arguing for

*Garmon* preemption as follows:

> As the *Garmon* line of cases directs, the pre-emption inquiry is whether the conduct at issue was arguably protected or prohibited by the NLRA.…
>
> The precondition for pre-emption, that the conduct be "arguably" protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption and would therefore not be satisfied in this case by a claim, without more, that Davis was an employee rather than a supervisor. If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor. ***That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board***. (emphasis added)

476 U.S. at 394-5.  Section 8(b)(3) of the NLRA states in relevant part that: "It shall be an unfair

labor practice for a labor organization or its agents. . . to refuse to bargain collectively with an

employer, *provided it is the representative of his employees subject to the provisions of section*

*9(a). . .*" (emphasis added).  Section 9(a), in turn, states that: "Representatives designated or

selected for the purposes of collective bargaining by the majority of the employees in a unit

appropriate for such purposes, shall be the exclusive representatives of all the employees in such

unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of

employment, or other conditions of employment. . ."

In their memorandum to the Court, the IBEW and Carroll do not assert, nor can they

argue, that they have ever been "the representatives of [NetVersant's] . . .employees [are] subject

to the provisions of section 9(a)," and, therefore, the contention in that memorandum that

Carroll's misrepresentations to NetVersant would constitute a violation of §8(b)(3) is "contrary

to [the Act's] language."  476 U.S. at 395.

In addition, even assuming, *arguendo*, that Local 103 was the §9(a) representative of certain of NetVersant's employees as of October 1998 (*but see* Argument at pp. 10-12, *infra*), it has been long-settled that, for purposes of the NLRA, the IBEW and Local 103 are separate entities; that Local 103 is not an "administrative arm" of the IBEW; and that, as such, the IBEW is not liable for the unfair labor practices of Local 103. *See, e.g., IBEW (Franklin Electric Construction Co.)*, 121 N.L.R.B. 143, 146 (1958) ("The overwhelming weight of judicial authority, including the Supreme Court of the United States, is that a local union is a legal entity apart from its international and that it is not a mere branch or arm of the latter. That too has been the position of the Board. If the local in this case is merely an administrative arm of the IBEW International, the Board has been in error all these years in requiring the locals of the IBEW as well as of other international unions comply with the filing requirements of Section 9(f), (g), and (h) of the Act. And if locals are only 'administrative arms,' and not separate entities, they are probably incapable of withdrawing from their internationals, as for example, when the internationals are ousted from the AFL-CIO."). Accordingly, the contention in the IBEW's memorandum that Carroll's misrepresentations to NetVersant would constitution a violation of §8(b)(3) also has been "authoritatively rejected by … the Board."

Furthermore, none of the decisions cited by either the International Defendants or the Local 103 Defendants support the proposition that the NLRA imposed an obligation on the IBEW, which at no time has represented any of NetVersant's employees, to bargain in good faith with NetVersant and, therefore, none of those decisions support the International Defendants' argument that NetVersant's Third-Party claims against them are preempted by the NLRA.

In this regard, the only case cited by the International Defendants in their memorandum in support of their claim of *Garmon* preemption is *Waymouth Farms, Inc.*, 324 N.L.R.B. 960

(1997), *enforced*, 172 F.3d 598 (8th Cir. 1998).  In that case, however, the union had been

certified as the NLRA Section 9(a) bargaining representative of a unit of production and

maintenance employees in August 1986 and had negotiated two collective bargaining

agreements with the respondent employer; and the actionable misrepresentations had been made

by the respondent in the context of the negotiations of a plant closing agreement in 1993.

Similarly, all of the bad faith bargaining decisions cited by the Local 103 Defendants

involved alleged misrepresentations made by employers in the context of relationships between

the employers and the NLRA Section 9(a) representatives of the employers' employees. *See*

*Sheridan Div., Sheller-Globe Corp.*, 296 N.L.R.B. 116, 119 (1989) ("The main issue presented is

whether the Respondent deliberately tricked the Union, and the employees it had long

represented, into signing a severance agreement, whereby all the employees lost their jobs, with

the Company nevertheless continuing its regular operations with new, unrepresented employees

being paid at a much lower rate of pay"); *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279,

1281 (6th Cir. 1986) ("The principal question presented by this appeal is whether the National

Labor Relations Board. . .has exclusive jurisdiction over a dispute between individual employees

and their employer arising out of an agreement between the employer and the employees'

union"); *Kolentus v. Avco Corp.*, 798 F.2d 949, 952 (7th Cir. 1986) ("The plaintiff class consists

of former Avco workers who were members of four bargaining units at the Richmond plant. . .

Beginning in 1957, Avco and the four bargaining units entered into a series of collective

bargaining agreements, each agreement providing that pension benefits would be governed by

supplemental pension agreements."); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1513 (11th

Cir. 1988) ("The employees sued Connors, its parent corporation. . .and the Union alleging fraud,

a hybrid § 301/fair representation claim, breach of the duty of fair representation, and breach of a

collective bargaining agreement. . .and two concession agreements"); *NLRB v. Auciello Iron Works*, 980 F.2d 804, 805-6 (1st Cir. 1992) (Union certified as the bargaining representative of the respondent's production and maintenance employees in 1977; thereafter, "negotiated and entered into several collective bargaining agreements" with the respondent; and the unfair labor practice occurred in the context of the parties' 1988 negotiations over a successor collective bargaining agreement).

In sum, to establish *Garmon* preemption, the International Defendants must make an affirmative showing that the activity underlying NetVersant's Third-Party Complaint, *i.e.* the misrepresentations made by Carroll relative to the establishment of a binding jurisdictional agreement, were arguably subject to the Act. *Davis, supra* at 394-5. However, since the misrepresentations were made by Carroll on behalf of an entity that, at no time, has represented any of the employees of NetVersant, the International Defendants have not made and cannot make an affirmative showing that Carroll's actions arguably violated Section 8(b)(3) of the NLRA.

*Claims against Local 103 and Ward*

As alleged in the Third-Party Complaint (*see* pars. 10 & 14) and as noted above, Local 103 did not represent any of the NetVersant's employees at the time of their misrepresentations concerning entering into the Jurisdictional Agreement. Indeed, the Letter of Assent states that the "Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites." *See Exhibit B.*

10

Accordingly, since Local 103 was not the Section 9(a) representatives of NetVersant's

employees when Ward made his misrepresentations concerning entering into the jurisdictional

agreement, the Local 103 Defendants cannot make the requisite affirmative showing that the

actionable misrepresentations by Ward arguably violated Section 8(b)(3) of the NLRA and, as

such, cannot establish the predicate for *Garmon* preemption. *See, e.g.*, *Northwestern Ohio*

*Administrators*, 270 F.3d at 1029 (In finding no *Garmon* preemption in third-party complaint

brought by employer against union representative claiming fraudulent misrepresentations to

induce employer to sign agreements providing for the employment of union employees, the Sixth

Circuit stated that: "It is indisputable . . . that the Union was not the representative of. . .[the

employer's] employees and was thus not engaged in collective bargaining.  Hence, the Union has

failed to show that the activity. . . [the employer] complains of was "arguably" covered by

section 8 of the NLRA.").  *See also Operating Engineers Pension Trust v. Wilson,* 915 F.2d 535,

540 (9th Cir. 1990), *cert. denied*, 505 U.S. 1212 (1992) (In affirming the district court's ruling for

company that union fraudulently induced company to enter into a collective bargaining

agreement, the court held that the fraudulent inducement claim was not preempted by *Garmon*

because "[h]ere, Local 12 did not represent a majority of the Wilsons' employees. . .LMRA

§§8(f), 9(a).  In the absence of a recognized bargaining relationship, Kinsey's [the union

representative's] misrepresentation to Wilson. . .is not arguably a violation of section 8(b)(3).");

*Capozza Tile Co. v. Joy*, 223 F. Supp. 2d 307, 320 (D. Me. 2002) (Where there was alleged fraud

in the execution by the union to induce the company to enter into a collective bargaining

agreement, *Garmon* preemption was not appropriate because the union did not represent a

majority of the company's employees).[3]

---

[3] The only case cited by the Local 103 Defendants in support of *Garmon* preemption that did not involve a Section

11

**B.**     **The Complaint Is Not Preempted by Section 301 Of The LMRA**

"[T]he preemptive reach of section 301 . . . is by no means boundless." *Northwest Ohio*

*Administrators*, *supra* at 1030, *quoting Fox v . Parker Hannifin Corp.*,  914 F.2d 795, 799 (6th

Cir. 1990). "Section 301 preempts only state law claims that are 'substantially dependent on

analysis of a collective bargaining agreement,' . . . not claims that only 'tangentially' involve

CBA provisions." *Fox*, *supra* at 799-800 (internal citations omitted).

Here, NetVersant's claims of fraudulent misrepresentation do not require interpretation of

the Jurisdictional Agreement.  Indeed, it has already been established in the prior action, *JCI*

*Communications,* that there is no binding Jurisdictional Agreement to be interpreted.  Thus,

because the Court will not need to interpret "a contract between an employer and a labor

organization," 29 U.S.C. § 185(a), there is no Section 301 preemption.

Instead, the relevant inquiry concerns the representations made by the Third-Party

Defendants at the time the Jurisdictional Agreement and Letter of Assent were being discussed,

not any terms of the documents themselves.  *See Exhibit A* (demonstrating Ward's representation

to NetVersant that Local 103 would enter into the Jurisdictional Agreement)*; Foy v. Pratt &*

*Whitney Group*, 127 F. 3d 229, 234 (2d Cir. 1997) (claim of negligent misrepresentation against

employer did not require interpretation of collective bargaining agreement and therefore is not

preempted under Section 301; "the review of the CBA needed to decide preemption in this case

is not in itself "interpretation" warranting preemption; if it were, the preemption doctrine under

---

9(a) bargaining relationship is *Twin City Sprinkler Fitters Health Care Plan v. Total Fire Protection, Inc*., 171 L.R.R.M. 3275 (D. Minn. 2002).  In that case, the parties framed the issue as hinging "on whether Total and Local 417 were engaged in collective bargaining." 171 L.R.R.M. 3275, at 9.  The decisions cited by Local 417 in that case, *Parker v. Connors Steel Co., supra*, *Kolentus v. Avco Corp*., *supra*  and *Serrano v. Jones & Laughlin Steel Co., supra*, involved misrepresentations made by employers to unions that were Section 9(a) bargaining representatives.

In addition, the only decision cited by the court to support its holding, *Woelke & Romeros Framing, Inc. v. NLRB*, 456 U.S. 645 (1982), involved construction unions that had bargaining relationships that had converted to Section 9(a) relationships and did not even tangentially involve the issues before the court in *Twin City Sprinkler Fitters Health Care Plan*.

§301 would swallow the rule that employees can assert nonnegotiable state law rights that are independent of their collective bargaining agreements"); *Operating Engineers Pension Trust v. Wilson*, 915 F.2d 535, 538-9 (9th Cir. 1990) (claim of fraudulent inducement by employer against union was not preempted under Section 301 because it did not require interpretation of the collective bargaining agreement but instead involved only the facts surrounding the formation of the agreement without reference to the agreement itself); *Northwest Ohio Administrators, supra* at 1031 (finding no preemption by Section 301 because the claim advanced by the employer – that the Union fraudulently induced it to sign the Employer Participation Agreements – did not require interpretation of the collective bargaining agreements. Instead, "[t]he relevant inquiry here concerns the representations made by the Union and/or [the Union representative]. . .at the time the Project Agreements were executed, not any term of the Agreements themselves"). Since the Court's inquiry here will not include interpreting the Jurisdictional Agreement, which has been deemed to be invalid, but, rather, interpreting the representations made to NetVersant by the Third-Party Defendants, Section 301 does not preempt the third-party claims.

### C.     NetVersant's Claims Against Paul Ward and Frank Carroll Are Not Barred by Section 301(b) of the LMRA

As described above, there is no Section 301 preemption of NetVersant's fraudulent misrepresentation claims against the Third-Party Defendants, because those claims do not require interpretation of the Jurisdictional Agreement. Without Section 301 preemption, there can be no bar under Section 301(b) against claims against individuals for acts allegedly performed on the unions' behalf. As the *Northwest Ohio Administrators* court has stated, "'a state law claim brought against a union officer that does not implicate a collective bargaining agreement covered by section 301(a) does not give rise to section 301(b) immunity. When section 301(a) is

inapplicable, the immunity provided by section 301(b) is also inapplicable.'"  270 F.3d at 1032,

*quoting Felice v. Sever*, 985 F.2d 1221, 1231 (3d Cir. 1993).

Furthermore, under Massachusetts law, agents – for corporations, unions or other

principals – are personally liable for any tortious activity in which they personally participate.

Agents can be held personally liable for making fraudulent misrepresentations even if they made

them while acting in the scope of their agency.  *See, e.g., Spear v. Somers Sanitation Service,*

*Inc.*, 162 F.R.D. 1, 3 (D. Mass. 1995) ("The general rule, and the rule in this circuit, is that an

officer of a corporation 'is liable for torts in which he personally participated, whether or not he

was acting within the scope of his authority'… Cases which have found personal liability on the

part of corporate officers have typically involved instances of direct personal participation, as

where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central

figure' in the challenged corporate activity . . ."). Here, Ward and Carroll, in their capacities as

agents for Local 103 and the International, respectively, intentionally and knowingly

misrepresented to NetVersant the intent of Local 103 and Local 2222 to enter into and be bound

by the agreement memorialized in the Jurisdictional Agreement.  As Ward and Carroll had direct

personal participation and were the "guiding spirits" behind the wrongful conduct, under First

Circuit case law, Ward and Carroll can be held personally liable for making fraudulent

misrepresentations to NetVersant and for inducing NetVersant to rely on those

misrepresentations.

### D.    NetVersant's Claims Against The Third-Party Defendants Are Not Barred By The Doctrine of Res Judicata

The Third-Party Defendants each also argue that the Third-Party Complaint is barred by

the doctrine of *res judicata.*  The Third-Party Defendants' *res judicata* argument is based on the

April 2002 Federal Court action brought by JCI Communications, Inc. d/b/a NetVersant-New

England against Local 103, wherein NetVersant sought to vacate a labor arbitration award issued

pursuant to the grievance and arbitration procedures contained within the multi-employer

Telecommunications Agreement between the Boston Chapter, NECA and Local 103.  The action

was brought pursuant to 29 U.S.C. §185.  *See JCI Communications, Inc. d/b/a NetVersant-New*

*England v. International Brotherhood of Electrical Workers, Local 103*, 2002 U.S. Dist. LEXIS

16283 (D. Mass. Aug. 29, 2002), *aff'd* 324 F.3d 42 (1st Cir. 2003).

In the instant case, the "res judicata analysis is governed by federal law since the original

action was litigated in this court." *Andrews-Clarke v. Lucent Technologies, Inc.*, 157 F. Supp. 2d

93, 99 (D. Mass. 2001), *citing Iannochino v. Rodalakis*, 242 F.3d 36, 41 (1st Cir. 2001).  "The

doctrine of res judicata applies when there is '(1) a final judgment on the merits in an earlier suit,

(2) sufficient identicality between the causes of action asserted in the earlier and later suits, and

(3) sufficient identicality between the parties in the two suits.'" 157 F. Supp. 2d at 99, *supra,*

*quoting Iannochino*, 242 F.3d at 43.  As discussed below, none of the Third-Party Defendants

can make the requisite showing to support the application of the doctrine of *res judicata.*

*IBEW and Carroll*

As noted above, one of the requirements for the application of the doctrine of *res judicata*

is that there exists a "sufficient identicality between the parties in the two suits."  In the instant

case, neither the IBEW nor Carroll was named as a party in the prior action.  Therefore, the

International Third-Party Defendants do not satisfy one of the three prerequisites for asserting

*res judicata.*  These Third-Party Defendants, however, cite *Andrews-Clarke v. Lucent*

*Technologies, Inc.*, *supra* and *In re San Juan Hotel Corp.*, 841 F.2d 6 (1st Cir. 1998), and argue

that, under the federal doctrine of non-mutual claim preclusion described in those decisions, they

should be deemed to have satisfied the requirement that there be a "sufficient identicality

between the parties in the two suits." In *Lucent Technologies*, that doctrine was described, generally, as follows:

> It has long been recognized that the federal doctrine of "non-mutual claim preclusion" permits a non-party defendant in a prior action to raise a defense of res judicata in a subsequent suit. *See In re El San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988) ("In the jargon of res judicata and collateral estoppel law, the question is whether a form of 'nonmutual claim preclusion' is appropriate, *i.e.* whether a party not involved in the earlier action may deflect this lawsuit because he should have been, but was not, included in the earlier suit"). Thus, non-defendants in one action may assert res judicata in the second action "if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action." *Id*. at 10, and cases cited. "Another formulation of this idea is that preclusion is appropriate 'only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance.'" *Id*. (*quoting* 18 Wright & Miller § 4464 at 589).

157 F. Supp. 2d at 100-101. The doctrine of non-mutual claim preclusion applies when a plaintiff seeks to assert claims against a "new" defendant that are substantially identical to claims previously brought by that plaintiff against a different but related defendant. *See, e.g.,* 157 F. Supp. 2d at 101, *supra* ("In the present case, AT&T was named, albeit as a 'non-party' in the initial complaint, and the proposed second amended complaint raised basically the same claims against AT&T that the plaintiff is seeking to assert now").

As noted above, the Third-Party Defendants' *res judicata* argument is based on the 2002 federal court action, wherein NetVersant, pursuant to 29 U.S.C. §185, sought to vacate a labor arbitration award issued pursuant to the grievance and arbitration procedures contained within the multi-employer Telecommunications Agreement between the Boston Chapter, NECA and Local 103. The IBEW was not a party to the Telecommunications Agreement and, as such, could not have been joined as a party-defendant in the 2002 federal court action, as framed by NetVersant. In addition, Carroll could not have been named in NetVersant's Section 301 action because of the protections provided individual union officials by Section 301(b) as explained in

*Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962).[4]   Accordingly, the requirements for

asserting non-mutual claim preclusion do not exist in the instant case.

*Local 103, Ward, IBEW and Carroll*

The Third-Party Defendants also cannot satisfy the requirement that there be a "sufficient

identicality between the causes of action asserted in the earlier and later suits."  In this regard,

the First Circuit uses a "transactional approach to determine whether causes of action are

sufficiently related to support a res judicata defense."  *Massachusetts School of Law at Andover,*

*Inc. v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998).  In *Massachusetts School of*

*Law*, the First Circuit described its approach to *res judicata* as follows:

> We have adopted a transactional approach to determine whether causes of action are
> sufficiently related to support a res judicata defense. *See Kale v. Combined Ins. Co.*, 924
> F.2d 1161, 1166 (1st Cir. 1991). "Under this approach, a cause of action is defined as a set
> of facts which can be characterized as a single transaction or series of related
> transactions." *Apparel Art Int'l, Inc. v. Amertex Enters., Ltd.*, 48 F.3d 576, 583 (1st Cir.
> 1995). This boils down to whether the causes of action arise out of a common nucleus of
> operative facts. *See Gonzalez*, 27 F.3d at 755. In mounting this inquiry, we routinely ask
> "whether the facts are related in time, space, origin, or motivation, whether they form a
> convenient trial unit, and whether their treatment as a unit conforms to the parties'
> expectations." *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992) (*quoting*
> Restatement (Second) of Judgments §24 (1982)).

142 F.3d at 38.  At the outset, it is important to note that NetVersant, in its Third-Party

Complaint, is seeking indemnification and contribution based on claims first brought against the

Company by the Local 103 Funds in 2004.  As such, as a matter of law, the instant Third-Party

Complaint and the 2002 Federal Court action cannot be deemed to have arisen out of a common

nucleus of operative facts.  *See, e.g., Minarik Electric Co. v. Electro Sales Co.*, 223 F. Supp. 2d

334, 338 (D. Mass. 2002) ("A change in the circumstances under which the second claim is

brought is of great importance because 'material operative facts occurring after the decision of an

---

[4] This argument applies equally to Ward's efforts to assert *res judicata* based on NetVersant's Section 301 action.

17

action with respect to the same subject matter may in themselves, or taken in conjunction with

the antecedent facts, comprise a transaction which may be made the basis of a second action not

precluded by the first'" (*quoting* Restatement (Second) of Judgments §24, comment f)).

In addition, since the 2002 suit was an action seeking to vacate an arbitration award, the

scope of the Court's review was very limited and, as such, the operative "facts" in that case were

restricted to what had occurred during the underlying arbitration.  *See JCI Communications, Inc.*

*v. IBEW, Local 103*, 324 F.3d 42, 48 (1st Cir. 2003) ("both this court and the district court are

bound by the very narrow and very deferential standard of review of arbitral decisions. . .In

general, a court may vacate an arbitral award only in rare circumstances, such as when there was

misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when

the award was made in manifest disregard of the law").  On the other hand, the Third-Party

Complaint focuses principally on the conduct of the Third-Party Defendants in 1998.  As a

matter of law, that conduct was not relevant in the 2002 suit and, therefore, it cannot be

reasonably argued that the instant action and the 2002 suit arise out of a common nucleus of

operative facts.

Lastly, it is also significant to note that it is unlikely that the Federal Court in the 2002

Section 301 action would have had jurisdiction to hear the state-law misrepresentation claims.  In

this regard, those state-law claims would have been cognizable by the Federal Court, if at all,

under *28 U.S.C. §1367,* which codified the Supreme Court's analysis in *United Mine Workers v.*

*Gibbs*, 383 U.S. 715 (1966).  *See Vera-Lozano v. International Broadcasting*, 50 F.3d 67 (1st Cir

1995).  Under *Gibbs*, a " federal court may exercise supplemental jurisdiction over a state claim

whenever it is joined with a federal claim and the two claims 'derive from a common nucleus of

operative fact' and the plaintiff 'would ordinarily be expected to try them both in one judicial

proceeding.'" 50 F.3d at 70*., quoting Gibbs*.  In addition, "the statute expressly states that a

district court may refuse to exercise this jurisdiction if the state claim 'substantially predominates

over the claim or claims over which the district court has original jurisdiction' or 'the claim

raises a novel or complex issue of state law.' *28 U.S.C. §§ 3567*(c)(1), (c)(2)."  *Id.*

As noted above, the instant Third-Party Complaint and the previous 2002 suit to vacate

the arbitration award do not derive from a common nucleus of operative facts.  Additionally,

given the limited scope of review involved in the 2002 action and the fact driven nature of the

claims set out in the Third-Party Complaint, it cannot be reasonably argued that NetVersant

would "ordinarily be expected to try both" matters "in one judicial proceeding."  Indeed,

NetVersant can find no decision in which the Federal Court has exercised supplemental

jurisdiction under *28 U.S.C. §1367* over state-law claims in a Section 301 suit to vacate an

arbitration award.

Accordingly, based on all of the above, it is clear that the Third-Party Complaint is not

barred by the doctrine of *res judicata.*

### E.    NetVersant's Claims For Contribution and Indemnification are Viable

Aside from statutory contribution, *e.g.,* Mass. Gen. L. c. 231B, Massachusetts recognizes a

right of common law indemnification under certain circumstances, one of which is where the

fault of the party seeking indemnification is "slight compared with that of the party from whom

indemnification is sought."  *Commonwealth of Massachusetts v. JEMS of New England, Inc.*, 15

Mass. L. Rep. 65, at *8 (Mass. Super. Ct. 2002).  "To recover either contribution or

indemnification, a claimant must show that the other party at least contributed to causing the

particular liability in issue."  *JEMS* at *9 *See also Cartagena v. Lotus Development Corp.*, 14

Mass. L. Rep. 581 (Mass. Super. Ct. 2002).

Here, the fraudulent misrepresentation of the Third-Party Defendants, which induced NetVersant to enter into the agreement, creates this common law right to indemnification. NetVersant's fault is slight compared to that of the Third-Party Defendants. Indeed, any fault NetVersant may have is to have acted in reliance on the Third-Party Defendants' misrepresentations. Under the common law, any liability to plaintiff that is a result of NetVersant's reliance on the Third-Party Defendants' misrepresentations should be subject to contribution and indemnification.

Indemnification is sought in this action as a remedy for the misrepresentations made by the Third-Party Defendants, which misrepresentations caused NetVersant to enter into the Local 103 Collective Bargaining Agreement and thereby to face the alleged liability asserted by the union funds. No statute or case construing Massachusetts law prevents recovery of indemnification to remedy such injustice in actions such as this for the underlying tort. Thus, whether indemnification is a separate cause of action or a remedial measure of harm caused by actionable misconduct of the Third-Party Defendants in the nature of misrepresentations, it is available to NetVersant upon proof of what is alleged.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny Third-Party Defendants' Motions to Dismiss.

Dated:  March 30, 2005

Respectfully submitted,

NETVERSANT-NEW ENGLAND, INC.

By its attorneys,

/s/ Steven A. Kaufman
Steven A. Kaufman (BBO # 262230)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

20