UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RUSSELL F. SHEEHAN, Administrator, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-10559NMG |
| | ) | |
| NETVERSANT-NEW ENGLAND, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NETVERSANT-NEW ENGLAND, INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| ELECTRICAL WORKERS, AFL-CIO, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**JOINT REPLY BRIEF OF THE THIRD-PARTY DEFENDANTS**

**INTRODUCTION**

In accordance with the Court's Order of April 11, 2005, Third-Party Defendants International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"), IBEW Local No. 103 ("Local 103"),   Frank J. Carroll and Paul Ward (together hereinafter "Third-Party Defendants"), respectfully submit this joint reply brief in support of their motions to dismiss the Third-Party Complaint, and in response to NetVersant-New England, Inc.'s ("NetVersant") opposition to the motions to dismiss. [1]

---

[1]     The Memorandum of Law in Support of the IBEW and Carroll's Motion to Dismiss will be referred to herein as "IBEW Memorandum." The Memorandum in Support of Motion to Dismiss by Third-Party Defendants Local 103 of the International Brotherhood of Electrical

The Administrator of Local 103's benefit trust funds has sued NetVersant and others alleging that NetVersant failed to make contributions to the trust funds pursuant to the Letter of Assent between Local 103 and NetVersant.[2]    In response to that suit, NetVersant filed a Third-Party Complaint alleging that the Third Party Defendants had misrepresented their intent to enter into and be bound by a Jurisdictional Agreement between NetVersant, IBEW Local No. 2222 ("Local 2222") and Local 103.   According to NetVersant, the Jurisdictional Agreement sets forth how work is to be assigned among and between members of Local 103 and members of Local 2222, and limits the scope of NetVersant's obligations under the Letter of Assent with Local 103.

The Third-Party Defendants have moved to dismiss the Third-Party Complaint, arguing that it is preempted by federal law under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185, and the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*    The Third-Party Defendants have also asserted that the claims against the individual union officers are barred by §301(b) of the LMRA.

Even if federal law did not bar the claims against the Third-Party Defendants, the motions to dismiss contend that, as a matter of state law, the Third-Party Complaint fails to state any cognizable claim.   The misrepresentation claims are barred under the doctrine of *res judicata* and non-mutual claim preclusion, and the claims for contribution and indemnification fail as a matter of law.

---

Workers and Paul Ward is referred to herein as "Local 103 Memorandum."    NetVersant's Opposition to Third-Party Defendants' Motions to Dismiss is referred to herein as "Opposition."

[2]     The Letter of Assent bound NetVersant to the Telecommunications Agreement between Local 103 and the Electrical Contractors Association of Greater Boston, Inc., a multi-employer association of which NetVersant is a member. (Third-Party Complaint ¶¶ 7, 8, 16)

In opposing the motions to dismiss, NetVersant argues that Section 301 preemption does not apply because the Court need not interpret the Jurisdictional Agreement in deciding the misrepresentation claims, and that NLRA preemption does not apply because neither the IBEW nor Local 103 were the NLRA Section 9(a) representatives of NetVersant's employees. NetVersant also contends that the individual union officers may be held liable because the immunity set forth in §301(b) of the LMRA applies only to claims brought under LMRA §301(a). NetVersant argues that non-mutual claim preclusion does not apply, and that its claims are not barred by the doctrine of *res judicata* because there is not a sufficient identicality between this case and NetVersant's 2002 federal action against Local 103. Finally, NetVersant asserts that its claims for contribution and indemnification are viable under a common-law theory. As explained in detail below, with one exception, NetVersant's arguments are without merit, and the motions to dismiss should be granted.[3]

## ARGUMENT

### I. NETVERSANT'S CLAIMS ARE PREEMPTED BY FEDERAL LABOR LAW

A.      There is no dispute that Section 301 preempts any state law cause of action that depends upon the meaning of a collective bargaining agreement. *Flibotte v. Penn. Truck Lines*,

---

[3]      NetVersant is correct that neither Local 103 nor the IBEW was the majority bargaining representative of NetVersant's employees under §9(a) of the NLRA. Instead, the Letter of Assent between Local 103 and NetVersant is a pre-hire collective bargaining agreement under §8(f) of the NLRA. During the term of a pre-hire agreement both the union and the employer have a statutory obligation to bargain under §§8(a)(5) and 8(b)(3) of the NLRA. *John Deklewa & Sons*, 282 NLRB 1375 (1987). Generally, that statutory obligation does not apply other than during the term of the agreement. The Third-Party Defendants would be required to refer to materials outside of the pleadings to show that the statutory obligation to bargain attached to the negotiations in 1998 concerning the Jurisdictional Agreement and the Letter of Assent, even prior to the signing of those agreements. Rather than convert their motions to dismiss to motions for summary judgment, however, the Third-Party Defendants withdraw their NLRA *Garmon* preemption arguments in support of their motions to dismiss, and instead rely solely on preemption under §301.

131 F.3d 21, 26 (1st Cir. 1997). NetVersant begins its argument in opposition by asserting that, because the Jurisdictional Agreement has been deemed unenforceable by the Joint Conference Committee, there can no longer be a contract between NetVersant and a labor organization to interpret. (Opposition at 12)

That argument is wrong because the Third-Party Complaint alleges that the parties reached a verbal agreement, memorialized in the Jurisdictional Agreement, concerning the allocation of work between employees represented by Local 103 and those represented by Local 2222. (Third-Party Complaint ¶14) It is further alleged that since the date on which the Joint Conference Committee held that the Jurisdictional Agreement was not enforceable, NetVersant has continued to allocate work in accordance with the Jurisdictional Agreement. (*Id.* ¶24) Thus, NetVersant alleges that irrespective of whether the written Jurisdictional Agreement has been set aside by the Joint Conference Committee, the parties still have an underlying agreement concerning the allocation of work.

Whether that agreement is characterized as a written agreement or an oral agreement, there is no question that NetVersant has alleged that it entered into an agreement with Locals 103 and 2222. (Third-Party Complaint at ¶14) That agreement is one "between an employer and a labor organization" under §301(a). *E.g.*, *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 24-28 (1962). Moreover, it is well settled that an agreement need not be in writing to fall within the scope of §301(a) of the LMRA. *E.g.*, *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985); *Capitol-Husting Co., Inc. v. NLRB*, 671 F.2d 237, 243 (7th Cir. 1982). Accordingly, the Jurisdictional Agreement – whether it is the written agreement attached to the Third-Party Complaint, or the underlying oral promise – constitutes an agreement between an employer and a labor organization covered by §301(a).

NetVersant's assertion to the contrary is astonishing because, if there is no binding Jurisdictional Agreement which – according to NetVersant's interpretation – limits the scope of its Letter of Assent with Local 103, then NetVersant has absolutely no basis for concluding that it reasonably continued to abide by the Jurisdictional Agreement after the Joint Conference Committee's ruling.  Indeed, if there is not an enforceable agreement between NetVersant and Local 103 which limits the scope of NetVersant's Letter of Assent with Local 103, then NetVersant's entire theory of indemnification fails.  NetVersant cannot argue that it has been harmed by an alleged misrepresentation concerning the parties' intent to be bound by the Jurisdictional Agreement, if NetVersant also contends that the Jurisdictional Agreement is not enforceable.

B.      NetVersant claims that the Court need not interpret the Jurisdictional Agreement because the relevant inquiry is limited to representations made at the time the Letter of Assent and Jurisdictional Agreement were being discussed.  This assertion ignores completely that the alleged misrepresentations at issue concern the parties' intention to be bound to the Jurisdictional Agreement, which NetVersant alleges, caused it to sign the Letter of Assent with Local 103. Thus, as explained in detail in the IBEW's Memorandum, whether the representations allegedly made by the Third-Party Defendants regarding their intent to abide by the Jurisdictional Agreement constitute actionable misrepresentations depends upon the meaning of the Jurisdictional Agreement, *i.e.*, whether the Jurisdictional Agreement limits the scope of NetVersant's obligations under its Letter of Assent with Local 103.  (IBEW Memorandum at 6-12)   Indeed, the entire premise of NetVersant's claim is that the Jurisdictional Agreement limits the scope of NetVersant's Letter of Assent with Local 103, and that the Third-Party Defendants' alleged misrepresentations regarding their intent to abide by the Jurisdictional Agreement

induced NetVersant to sign the Letter of Assent.  (*Id.* at 8; *see* Third-Party Complaint ¶¶ 14, 19-23) [4]

In opposing the motions to dismiss, NetVersant ignores the very elements it must prove. The relevant inquiry, as explained in the IBEW's Memorandum, is whether proof of any of the elements of NetVersant's state-law misrepresentation claim will require the Court to interpret a §301 agreement.    (IBEW Memorandum at 7-10)    Rather than conduct such an analysis, NetVersant cites three cases for the unremarkable proposition that when a misrepresentation claim does not require the interpretation of a §301 agreement, the claim is not preempted. (Opposition at 12-13)   NetVersant then simply concludes in summary fashion that, "the Court's inquiry here will not include interpreting the Jurisdictional Agreement . . . ." (*Id.* at 13)

In asserting that its claim does not require the interpretation of any collective bargaining agreement, NetVersant cites three cases: *Operating Engineers Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir. 1990); *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 234 (2d Cir. 1997); and *Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018 (6th Cir. 2001). Each is easily distinguishable.   In each, the misrepresentation claims arose separately from a collective bargaining agreement and did not involve misrepresentations concerning a party's intention to enter into and abide by a §301 agreement.

In *Wilson*, for example, a union business agent approached a contractor on a job site and represented that every employer on the job site had to be a union employer.   That representation was false.   The Ninth Circuit analyzed each element of misrepresentation under state law and concluded that the claim could be resolved without interpreting the collective bargaining

---

[4]    As explained in the IBEW's Memorandum, the Third-Party Defendants do not concede that a "Jurisdictional Agreement" was ever reached.    The Third-Party Complaint, however, alleges such an agreement (Third-Party Complaint ¶14), and the Third-Party Defendants therefore assume the existence of such an agreement for purposes of their motions to dismiss.

agreement. 915 F.2d at 538. *Wilson* did not involve, as here, an alleged misrepresentation to enter into and abide by an agreement which then induced the contractor to enter into a collective bargaining agreement. Thus, as the Ninth Circuit held, no §301 agreement needed to be interpreted to analyze the misrepresentation claim.

In so holding, the Ninth Circuit distinguished *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) and *Bale v. General Tire Tel. Co. of Cal.*, 795 F.2d 775, 780 (9th Cir. 1986); *see* 915 F.2d at 538, n. 2. In those cases, employees alleged that their employers had made actionable misrepresentations about their terms and conditions of employment. The employees were covered by a collective bargaining agreement. To demonstrate that the employers' statements were actionable misrepresentations, the Ninth Circuit held that the plaintiffs needed to show that the representations made by the employers differed significantly from the terms of the plaintiffs' collective bargaining agreement. 830 F.2d at 1001; 795 F.2d at 780. Therefore, the plaintiffs' claims were preempted by §301 because they required the court to interpret an agreement covered by §301. The same holds true in this case. To prove its misrepresentation claim, NetVersant must demonstrate that its obligations under the Jurisdictional Agreement differ significantly from its obligations under the Letter of Assent. Thus, the Court will be compelled to interpret the Jurisdictional Agreement and the Letter of Assent to determine whether the Third-Party Defendants' alleged representations that they would enter into and abide by the Jurisdictional Agreement constitute actionable misrepresentations.

In *Foy*, employees brought a misrepresentation action against their employer arguing that the employer had misrepresented to the employees that they would be given a chance to transfer before they would be laid off. 127 F.3d at 232. In finding that the claims were not preempted, the Second Circuit emphasized that the sole source of the plaintiffs' rights was state law and not

a contractual right found in the collective bargaining agreement.  127 F.3d at 235.  By contrast, in this case, the source of NetVersant's alleged right not to make contributions to Local 103's trust funds and/or to be indemnified for monies owing to Local 103's trust funds, is an alleged contractual right found in the Jurisdictional Agreement.  Indeed, NetVersant's misrepresentation claims are contract claims recast as tort claims inasmuch as NetVersant alleges that the Third-Party Defendants have failed to abide by the Jurisdictional Agreement.

Finally, *Northern Ohio Administrators* involved a situation similar to that in *Wilson*, *i.e.*, a union representative allegedly made an oral misrepresentation concerning the scope of the collective bargaining agreement.  The terms of the collective bargaining agreement, however, were not disputed and did not need to be interpreted to resolve whether the union had so deceived the employer.  270 F.3d at 1031.  Moreover, as in *Wilson*, the misrepresentation in *Northern Ohio Administrators* did not involve an alleged misrepresentation to enter into and abide by a labor agreement that was subsequently relied upon when the contractor signed the collective bargaining agreement.  Thus, unlike in this case, the court did not need to interpret a §301 agreement in *Northern Ohio Administrators* to determine whether the plaintiffs could prove the elements of their misrepresentation claim.

As explained in the IBEW's Memorandum, this case is analogous to *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999), in which a group of employees adversely affected by a plant closure brought a misrepresentation claim asserting that the defendants had misrepresented that they were not bound by a plant closing agreement.  Because the alleged misrepresentation in that case was based directly on a contract covered by §301, the court recognized that interpretation of that contract was inextricably intertwined with the analysis of the state law claim.  Therefore, the court held, the misrepresentation claim was preempted.  *Id.* at

234. Like *Beidleman*, and unlike those cases on which NetVersant relies, this case is based on misrepresentations concerning the existence and intent to be bound by a labor contract, and not on promises wholly separate and independent from a labor agreement. *Beidleman*, 182 F.3d at 234. Accordingly, because §301 agreements will need to be interpreted to determine whether the Third-Party Defendants' alleged representations constitute actionable misrepresentations, NetVersant's state-law misrepresentation claims are preempted.

## II.    THE CLAIMS AGAINST CARROLL AND WARD MUST BE DISMISSED

As explained in detail in the IBEW's Memorandum, it is well-settled that, pursuant to §301(b) of the LMRA, individual union officers cannot be held liable for suits seeking to impose liability for conduct within the ambit of the collective bargaining process. (IBEW Memorandum at 13-15; *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962); *Montplaisir v. Leighton*, 875 F.2d 1, 11-12 (1st Cir. 1989)). Section 301(a) of the LMRA gives federal courts jurisdiction over suits alleging a violation of a contract between an employer and a labor organization. 29 U.S.C. §185(a). As explained above, preemption under this section applies to state-law claims that require the interpretation of a labor agreement. Section 301(b), on the other hand, binds labor organizations and employers to the acts of their agents, and provides immunity to union members and officers against a money judgment awarded against a labor organization. 29 U.S.C. §185(b).

NetVersant argues that §301(b) immunity does not apply unless the state-law claim is preempted by §301(a). (Opposition at 13-14) NetVersant's argument is mistaken for two reasons. As explained above, NetVersant's claims are preempted by §301(a), and therefore, even under NetVersant's theory, the claims against Carroll and Ward are barred under §301(b). Even if it assumed for the sake of argument that NetVersant's claims are not preempted by

§301(a), NetVersant's argument is nevertheless mistaken because Section 301(b) bars claims against individual union officers concerning conduct within the ambit of the collective bargaining process even if those claims are not preempted by §301(a) of the LMRA.

The question whether immunity is afforded union members and officers under §301(b) of the LMRA is analytically distinct from the question whether a state law claim is preempted by §301(a). A state law claim is preempted by §301(a) when it hinges upon an interpretation of a labor agreement. *E.g.*, *Flibotte*, 131 F.3d at 26. Section 301(b) immunity, by contrast, applies whenever an individual union member or officer is being sued for conduct that occurred within the ambit of the collective bargaining process. *Montplaisir*, 875 F.2d at 11-12; *Carino v. Stefan*, 376 F.3d 156, 162 (3d Cir. 2004); *Breda v. Scott*, 1 F.3d 908, 909 (9th Cir. 1993). A state-law claim may not require the interpretation of a §301 agreement, but still concern conduct within the ambit of the collective bargaining process.

In *Breda* and *Carino*, the defendants were union attorneys who were sued for legal malpractice in connection with their representation of individual grievants whose claims the union brought to arbitration. Both the Third and the Ninth Circuits clarified that even if §301(a) preemption did not apply to the claims against the union attorneys, §301(b) immunity nevertheless shielded the attorneys from individual liability. 376 F.3d at 161-62; 1 F.3d at 909.

In *Breda*, the Ninth Circuit noted that it had previously held in *Aragon v. Federated Dept. Stores, Inc.*, 750 F.2d 1447, 1457 (9th Cir. 1985) that §301(a) did not completely preempt a union member's malpractice claim against a union lawyer for mishandling a grievance. Because the federal court in *Aragon* lacked subject matter jurisdiction (because §301(a) did not grant such jurisdiction), it did not reach the issue of §301(b) immunity. In *Breda*, however, the court had diversity jurisdiction, allowing it to reach and settle the question whether §301(b) immunity

10

shielded the union attorneys from a malpractice suit. 1 F.3d at 909; *see also Carino*, 376 F.3d at 161-62 ("[a]ny court considering [the plaintiff's] suit against the union attorneys, whether it be a federal court with federal question jurisdiction, a federal court sitting in diversity, or a state court, would be compelled, as a matter of substantive law to conclude that §301(b) bars [the plaintiff's] claim under *Atkinson*."); *Ryan v. Ajami*, 2002 U.S. Dist. LEXIS 24689, *8-9 (S.D.N.Y. Dec. 20, 2002) (in dismissing a malpractice case against a union lawyer, the court noted that it lacked subject matter jurisdiction under §301(a), but that if an independent ground for jurisdiction existed, *i.e.*, diversity jurisdiction, it would apply §301(b) immunity); *see also Wolfson v. American Airlines*, 170 F. Supp. 2d 87, 95-96 (D. Mass. 2001) (§301(b) shielded union officials from tortuous interference claim even though the claim was not preempted under §301 of the LMRA).

NetVersant relies upon *Northwestern Ohio Administrators*, in which the Sixth Circuit held that a state-law action that does not involve the negotiation of a collective bargaining agreement covered by §301(a) does not give rise to section 301(b) immunity. In that case, the Sixth Circuit erroneously concluded that the misrepresentation claim concerning a pre-hire agreement did not implicate a collective bargaining agreement covered by §301(a) because the union was not the duly elected representative of a majority of the employees.

The Supreme Court made clear in *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271-72 (1983), however, that §301 covers suits predicted upon a §8(f) pre-hire collective bargaining agreement -- an agreement such as the one at issue in *Northwestern Ohio Administrators*, and in this case. Although, as conceded above, the *statutory* duty to bargain does not attach to the negotiation of a pre-hire agreement, the parties to such an agreement have *contractual* obligations enforceable through §301 of the LMRA. Accordingly, to the extent *Northwestern Ohio Administrators* holds

11

that §301(b) does not apply to a union officer's action within the ambit of negotiating a pre-hire agreement, the decision cannot be squared with Supreme Court precedent to the contrary.

Here, the Third-Party Complaint alleges that Carroll and Ward engaged in extensive negotiations with NetVersant resulting in the Jurisdictional Agreement and Letter of Assent. (Third-Party Complaint ¶¶ 14-16)  During the course of those negotiations, it is alleged that the Carroll and Ward made actionable misrepresentations concerning their intentions to enter into and abide by the Jurisdictional Agreement, thus inducing NetVersant to enter into the Letter of Assent.  (*Id.* ¶16)  Carroll and Ward unquestionably are being sued for actions taken "within the ambit of the collective bargaining process," and therefore, §301(b) shields them from liability. *Montplaisir*, 875 F.2d at 4.

### III.   NETVERSANT'S MISREPRESENTATION CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA

In opposing the Third-Party Defendant's motion to dismiss, NetVersant does not dispute the existence of the first element of *res judicata* under federal law, namely, "'(1) a final judgment on the merits in an earlier action . . .'", *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 37 (1st Cir. 1998) (quoting *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir. 1994)).  The District Court's grant of Local 103's motion for summary judgment and denial of NetVersant's motion for summary judgment, and its entry of judgment in Local 103's favor in the prior action – which was subsequently affirmed by the First Circuit – constitutes a final judgment on the merits for purposes of applying *res judicata.*

NetVersant argues that the second element  –  a "sufficient identicality between the causes of action asserted in the earlier and later suits"  (*Massachusetts School of Law at Andover, Inc.*, 142 F.3d at 37)  –  has not been met, even under the First Circuit's "transactional approach."

NetVersant's argument rests on a deliberate blurring of the two different causes of action in its complaint, as well as a failure to acknowledge the contentions it raised in the first proceeding.

NetVersant's primary argument here is that this is an action for contribution and indemnification, and that the *res judicata* argument must therefore fail.   The problem with this argument is that the Third-Party Complaint sets forth *two* causes of action.   While the contribution and indemnification claim is not *res judicata* (and therefore was not the subject of the Third-Party Defendant's *res judicata* argument[5]), the misrepresentation claim must be analyzed on its own to determine if that cause of action survives a *res judicata* defense.   It does not.

Under the First Circuit's approach to *res judicata* analysis, the focus of the inquiry is the events that give rise to the cause of action, rather than the label placed on the action.   Thus, the test requires only that the causes of action both "arise out of a common nucleus of operative facts," and "are related in time, space, origin, [and] motivation."   *Massachusetts School of Law at Andover*, 142 F.3d at 38.   NetVersant's claim for contribution and indemnification is *not* related in time, space, origin and motivation, since it depends on the Plaintiff's subsequent claim against NetVersant, but NetVersant's separate claim for misrepresentation *is* related in time, space, origin and motivation to the events at issue in the first proceeding.

NetVersant argues next that the review it received on the motion to vacate was different than that due on a misrepresentation claim.   But the transactional test does not depend upon what legal theory is being used, but on what events the claim is based.   NetVersant does not, and cannot, dispute that the same set of factual allegations form the basis of NetVersant's claims in both the misrepresentation claim here and the prior claim before the Court.   That NetVersant

---

[5]      *See* Local 103 Memorandum at 15; IBEW Memorandum at 17 (seeking to dismiss only the misrepresentation claim on res judicata grounds).

chose one legal theory versus another in the first action may have afforded it less plenary review, but that choice does not allow NetVersant to bring successive claims based on the same underlying facts. *Kale v. Combined Insurance Co. of America*, 924 F.2d 1161, 1166 (1st Cir. 1991) ("it necessarily follows that a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts")

The First Circuit made clear in *Kale* that "when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." 924 F.2d at 1165. Attempting to avoid this clear rule, NetVersant argues now that the first federal court could not have assumed supplemental jurisdiction over its misrepresentation claim. (Opposition at 18) That argument is disingenuous at best in light of the fact that NetVersant has asked this Court to exercise supplemental jurisdiction over the same state law claim. Regardless, NetVersant has failed to demonstrate that its misrepresentation claim raises novel or complex issues of state law or is otherwise not subject to the normal rules permitting a court to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367.

Finally, as to the Third-Party Defendants other than Local 103, NetVersant argues that the third element for *res judicata* – a "sufficient identicality between the parties in the two suits" -- has not been met because the IBEW, Carroll, and Ward were not parties to NetVersant's prior lawsuit. The Third-Party Defendants' Memoranda anticipated and squarely addressed NetVersant's argument regarding the alleged lack of identicality between these parties. The IBEW, Carroll and Ward showed that the federal doctrine of non-mutual claim preclusion, which permits a non-party defendant in a prior action to assert *res judicata* as a defense in a subsequent

14

lawsuit, is appropriate in cases such as the instant one, where the IBEW, Carroll and Ward each have a "close and significant relationship" with the defendants named in the original action.  *See In re San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988) (providing as example of close and significant relationship for purposes of claim preclusion, "when the new defendants were named as conspirators in the first proceeding but were not joined in the action").  In its prior lawsuit NetVersant raised the same alleged misrepresentations it claims here, alleging generally that the IBEW, Carroll and Ward conspired with Local 103 to defraud NetVersant, and making virtually identical allegations in both actions regarding the alleged wrongdoing.    Under these circumstances there is sufficient identicality of parties or privies in the two lawsuits to support a *res judicata* defense.

## IV.    NETVERSANT'S CLAIM FOR CONTRIBUTION AND INDEMNIFICATION STILL FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

NetVersant's Opposition implicitly concedes that its claim for contribution must fail because the Third-Party Defendants are not joint tortfeasors with respect to the Administrator of Local 103's funds – the Plaintiff in the underlying action.  NetVersant seeks to avoid this general rule, however, by arguing that its claim is based on "common law indemnification."    The critical problem with NetVersant's argument, however, is that even common law indemnification requires that the Third-Party Defendant owed, and breached, a duty to the original Plaintiff.

"The theory of common law indemnification is similar to contribution between tortfeasors in that both parties must be liable to the plaintiff." *Samos Imex Corp. v. Nextel Communications, Inc.*, 20 F. Supp. 2d 248, 252 (D. Mass. 1998) (citing *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d 1, 3 (1st Cir. 1982)).  The critical distinction between indemnification and contribution thus is not that the former does not include

15

the threshold requirement of a liability to the plaintiff, but rather, that one theory versus the other may be used depending on the defendant's degree of fault.

The two superior court cases cited by NetVersant do not contradict the rule that, for common-law indemnification to apply, the third-party defendant must be a joint tortfeasor. Indeed, each involves cases in which the proposed indemnitee was a joint tortfeasor.  In *Cartagena v. Lotus Development Corp.*, 2002 WL 1283669 at *2-3 (Mass. Super.), the plaintiff suffered a personal injury while working for Lotus.   When the plaintiff sued Lotus for negligence, Lotus asserted third party claims for statutory contribution and common law indemnification against the manufacturer of the piece of equipment that allegedly malfunctioned and caused plaintiff's injuries, and against the company that serviced the equipment. *Commonwealth of Massachusetts v. JEMS of New England*, 2002 WL 1839253 at *3 (Mass. Super.) involved an oil leak at a gas station that allegedly contaminated the well water of a neighboring home.   After the Commonwealth brought an action against JEMS seeking civil penalties and injunctive relief, JEMS filed a third-party complaint against a company that had installed certain equipment at the gas  station, alleging that that company's negligence had caused the leak and the contamination.

Similarly, Massachusetts Supreme Judicial Court decisions acknowledging the theory of common law indemnification involve joint tortfeasors.   *Rathbun v. Western Massachusetts Electric Co.*, 395 Mass. 361, 364 (1985), is a case in which two individuals were seriously injured when a dump truck they were unloading contacted a high voltage electric line.   The tort claims brought by the individuals against the utility company and the city in which the accident occurred were settled, with the two defendants contributing equally to the settlement.   On appeal, the utility company argued that it was entitled to indemnification from the city under a common

law theory.  In *Economy Engineering*, 413 Mass. 791, 794 (1992), at issue was whether the Commonwealth had a common law right of indemnity against the manufacturer of a ladder from which a state college student jumped and was injured.  The court held it did not.  "This is not one of those rare cases where the fault of one joint tortfeasor (the Commonwealth) is so slight as to grant it rights of indemnity against another joint tortfeasor."   413 Mass. at 794.   The critical difference between these cases and the instant case, of course, is that the Third-Party Defendants are not liable to Local 103's trust funds.

Even if indemnification did not require that the Third-Party Defendant be a joint tortfeasor with respect to the Plaintiff, it is unclear if the theory remains viable under Massachusetts law at all or why this exceptional doctrine should apply in this case.  *See Economy Engineering Co.*, 413 Mass. at 794 (finding case "not one of those rare cases" where common law right of indemnity recognized, noting that common law indemnification available "traditionally" only to defendants with "vicarious" or "formal", rather than actual, liability); *Rathbun*, 395 Mass. at 364 ("Only in exceptional cases, however, has indemnity been allowed to one who was not free from fault."); *JEMS of New England, Inc.*, 2002 WL 1839253 at *3 (noting common law indemnification recognized only "under limited circumstances" and "in rare cases"); *Cartagena*, 2002 WL 1283669 at *2-3.  Indeed, in *Cartagena*, *supra*, one of the two superior court decisions upon which NetVersant relies, a Superior Court found that although the Supreme Judicial Court acknowledged the existence of the theory of common law indemnification in *Economy Engineering* and *Rathbun*, "it appears to have actually applied that theory to approve an award of indemnification only once, a full century ago, before the existence of statutory contribution.  In light of this history, one could fairly question the continued viability

17

of the theory." *Id.* (citing *Gray v. Boston Light Co.*, 114 Mass. 149 (1873) as lone example where common law indemnification allowed).

For these reasons, NetVersant's claims for contribution and indemnification, including common law indemnification, must fail.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the IBEW's Memorandum and Local 103's Memorandum, the Third-Party Complaint should be dismissed.

Respectfully submitted,

s/Jonathan D. Newman

_____

Jonathan D. Newman
SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
1125 Fifteenth Street, N.W., Suite 801
Washington, D.C.  20005
(202) 785-9300

Christopher N. Souris (BBO # 556343)
KRAKOW & SOURIS
225 Friend Street, 8th Floor
Boston, MA 02114
(617) 723-8440

Attorneys for the IBEW and Carroll

s/Indira Talwani

_____

Ira Sills (BBO #46220)
Indira Talwani (BBO #64557
SEGAL, ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
(617) 742-0208

Attorneys for Local 103 and Ward