United States District Court
District of Massachusetts

| | |
|---|---|
| RUSSELL F. SHEEHAN, as Administrator of the Local 103, I.B.E.W. Health Benefit Plan, the Electrical Workers Pension Fund, Local 103, I.B.E.W., the Electrical Workers Deferred Income Fund, the Joint Apprenticeship and Training Trust Fund, and the Electrical Industry Labor Management Cooperation Trust,<br><br>    Plaintiff,<br><br>    v.<br><br>NETVERSANT-NEW ENGLAND, INC.,<br><br>    Defendant,<br><br>    and<br><br>NETVERSANT-NEW ENGLAND, INC.,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>LOCAL 103 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al.,<br><br>    Third-Party Defendants. | Civil Action No. 04-10559-NMG |

MEMORANDUM & ORDER

GORTON, J.

    In the instant labor and ERISA dispute, plaintiff Russell F.

Sheehan ("Sheehan"), in his role as Administrator of the above-captioned trust funds, alleges that Defendant NetVersant-New England, Inc. ("NetVersant") has failed to make requisite contributions to the funds for hours worked by union employees. NetVersant, in turn, has filed a third-party claim for misrepresentation and indemnification against the International Brotherhood of Electrical Workers ("the IBEW"), Local 103 of the IBEW ("Local 103) and representatives of those unions, Frank Carroll and Paul Ward, respectively. The third-party defendants now move to dismiss the claims against them.

## I. Background

NetVersant is a telecommunications company with its principal place of business in Boston, Massachusetts. In 1998, it sought to obtain work on construction projects in the Boston area. It approached Local 103 to discuss signing onto the "Telecommunications Agreement", which is a collective bargaining agreement between Local 103 and a multi-employer association ("the Local 103 CBA").

Before signing, however, NetVersant noticed a potential conflict arising from the fact that it was already a signatory to a different collective bargaining agreement with Local 2222 of the IBEW ("the Local 2222 CBA"). That Agreement and the Local 103 CBA covered some of the same kinds of work, meaning that it

was unclear which union members would perform which work.

To resolve the potential conflict, NetVersant entered into negotiations with Local 103, Local 2222 and the IBEW. Local 103 was represented by Ward and the IBEW by Carroll. In October, 1998, an agreement with respect to the allocation of work was allegedly reached and was memorialized in a writing ("the "Jurisdictional Agreement"). Carroll signed on behalf of all three Unions. At the same time, NetVersant signed a "Letter of Assent", agreeing to abide by the terms of the Local 103 CBA. NetVersant alleges that it did so in reliance upon the fact that the Jurisdictional Agreement would be honored.

The relationship continued without incident until January 21, 2002. At that time, Local 103 complained that NetVersant was allocating work to members of Local 2222 in violation of the Local 103 CBA (but allegedly in compliance with the Jurisdictional Agreement). The Local 103 CBA called for disputes between the Union and an employer to be resolved by arbitration before a panel of union and industry representatives ("the Joint Conference Committee"). On February 4, 2002, the parties' dispute was taken before that Committee.

The Joint Conference Committee held that the Jurisdictional Agreement was unenforceable and that NetVersant had violated the Local 103 CBA. NetVersant filed suit in federal district court to challenge those findings but lost on summary judgment. JCI

Communications, Inc. v. Int'l Bhd. of Elec. Workers Union, Local 103, 2002 WL 2005852 (D.Mass. Aug. 29, 2002)(Zobel, J.). The First Circuit Court of Appeals affirmed. JCI Communications, Inc. v. International Broth. of Elec. Workers, 324 F.3d 42 (1st Cir. 2003).

After the Jurisdictional Agreement was invalidated, NetVersant contends that it was in the unenviable position of having to assign certain jobs which, under the Local 103 CBA, are to be performed by members of Local 103 and, under the Local 2222 CBA, are to be performed by members of Local 2222. Notwithstanding the ruling of invalidity, NetVersant apparently continued to allocate work in accordance with the Jurisdictional Agreement. As a result, plaintiff alleges that workers who were not members of Local 103 were performing work covered by the Local 103 CBA and NetVersant has failed to pay the requisite pension contributions to the plaintiff funds for that work.

On March 22, 2004, Sheehan commenced the instant action against NetVersant to determine and collect deficient pension contributions due under the Local 103 CBA. On November 24, 2004, with leave of Court, NetVersant filed a third-party complaint against the unions and their representatives. Counts I through IV state claims for misrepresentation and are based upon the allegations that each of the third-party defendants "knowingly misrepresented to NetVersant its intent to enter into and be

bound by the agreement memorialized in the Jurisdictional Agreement". Count V is entitled "Indemnification and Contribution" and seeks to hold the third-party defendants liable for any damages NetVersant is required to pay Sheehan.

On February 7, 2005, the third-party defendants moved to dismiss on five grounds of which they now press four: 1) the claims for misrepresentation are preempted by 29 U.S.C. § 185(a), 2) Carroll and Ward are immune from individual liability under 29 U.S.C. § 185(b), 3) the claims for misrepresentation are barred by the doctrine of res judicata and 4) that Count V ("indemnification and contribution") fails to state a claim upon which relief can be granted.

## II. Legal Analysis

### A. Legal Standard

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial

notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollett, 83 F. Supp.2d at 208.

Where a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). The court construes the complaint liberally, "treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff". Skrizowski v. United States, 292 F.Supp.2d 277, 279 (D.N.H. 2003). Plaintiff, however, "may not rest merely on unsupported conclusions or interpretations of law." Id. (citation omitted). When ruling on a Rule 12(b)(1) motion, "the court may consider whatever evidence has been submitted in the case, including affidavits and exhibits". Id. Unless the Court is satisfied that it has subject matter jurisdiction over the case, dismissal is mandatory. Fed.R.Civ.P. 12(h)(3).

**B.   Analysis**

   1.   <u>LMRA Preemption</u>

Pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, federal courts have jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization". Over the years, that language has given rise to a "jurisprudence of preemption". <u>Flibotte</u> v <u>Pennsylvania Truck Lines, Inc.</u>, 131 F.3d 21, 25-26 (1st Cir. 1997). Section 301 preempts a state law claim "if the resolution of that claim depends on the meaning of a collective-bargaining agreement". <u>Id.</u> at 26 (quoting <u>Lingle</u> v. <u>Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-06 (1988)). A state law claim "depends" on the meaning of a collective bargaining agreement "if its resolution arguably hinges upon an interpretation of the collective bargaining agreement". <u>Id.</u>; <u>Biagini</u> v. <u>Birkshire Concrete Corp.</u>, 190 F.Supp.2d 170, 173-74 (D.Mass. 2002). For purposes of preemption analysis, a "collective bargaining agreement" is any contract between an employer and a labor organization. <u>Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633</u> v. <u>Lion</u>, 369 U.S. 17, 28 (1962). It need not be in writing. <u>Gariup</u> v. <u>Birchler Ceiling & Interior Co., Inc.</u>, 777 F.2d 370, 373 (7th Cir. 1985).

Here, the third-party defendants argue that NetVersant's claims are preempted because they require interpretation of a

contract between the parties. NetVersant responds that there is no contract to interpret because the Jurisdictional Agreement has been held invalid. The third-party defendants respond in their reply brief:

> [NetVersant's] argument is wrong because the Third-Party Complaint alleges that the parties reached a verbal agreement, memorialized in the Jurisdictional Agreement, concerning the allocation of work between employees represented by Local 103 and those represented by Local 2222.... Whether the agreement is characterized as a written agreement or an oral agreement, there is no question that NetVersant has alleged that it entered into an agreement with Local 103 and 2222.

Thus, the third-party defendants contend that there is still an agreement in place and that NetVersant's claims would require it to be interpreted.

That argument, however, is foreclosed by the rationale of the arbitrators' holding that the Jurisdictional Agreement was invalid because Carroll lacked the power to bind the unions. Following that logic, any oral agreement would also be invalid because it too would have been entered into by Carroll. Thus, no matter how the parties negotiations are characterized, there can be no contract after the decision of the arbitrators. Having argued in favor of such a result during arbitration, the third-party defendants are in no position to protest.

The rationale for § 301 preemption does not support preemption where an invalid "contract" is at issue. In <u>Lingle</u>, the Supreme Court stated that the purpose of preemption under

§ 301 is "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Id. at 404. The Court elaborated as follows:

> the subject matter of § 301(a) is peculiarly one that calls for uniform law. The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

Id. at 404 n.3. In this case, because there is no contract, there is no danger that the application of state law will provide inconsistent guidance to those who negotiate (valid) collective bargaining agreements. NetVersant's claims are not preempted.

### 2. Claims Against Ward and Carroll

The law is well-settled that, under 29 U.S.C. § 185(b) and Atkinson v. Sinclair Refining Company, 370 U.S. 238 (1962), union agents cannot be held personally liable to third parties for acts performed on a labor union's behalf during the collective bargain process. See also Montplaisir v. Leighton, 875 F.2d 1, 4 (1st

Cir. 1989). Contrary to NetVersant's assertion, that is true regardless of whether the claims are subject to § 301(a) preemption. See id. (noting that union agents are immune from suit for all acts occurring "in the collective bargaining process"). Accordingly, the third-party defendants' motion to dismiss will be allowed with respect to the claims against Ward and Carroll.

### 3. Res Judicata

The third-party defendants also argue that NetVersant's claims are barred by the principle of res judicata because, in 2002, NetVersant filed suit in federal court to vacate the arbitration award ("the 2002 case"). JCI Communications, Inc., 2002 WL 2005852. Under federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)(citation and quotation omitted). The elements of a res judicata defense are: 1) a final judgment on the merits in an earlier proceeding, 2) sufficient identity between the causes of action asserted in the earlier and later suits and 3) sufficient identity between the parties in the two actions. Id.

With respect to the second element, Massachusetts has adopted the "transactional approach" contained in the Restatement (Second) of Judgments. Under that formulation, "[t]he necessary

identity will be found to exist if both sets of claims ... derive from a common nucleus of operative facts". Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004).

The third-party defendants characterize the "nucleus of operative facts" underlying the 2002 case as encompassing the negotiations leading up to the Jurisdictional Agreement. NetVersant, on the other hand, points out that the 2002 case was an attempt to vacate an arbitration award and, as such, the relevant facts concerned only the arbitration process.

NetVersant has the more persuasive argument. In its consideration of the 2002 case, the First Circuit Court of Appeals described the relevant inquiry as follows:

> this court and the district court are bound by the very narrow and very deferential standard of review of arbitral decisions. In general, a court may vacate an arbitral award only in rare circumstances, such as when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award was made in manifest disregard of the law.

JCI Communications, Inc., 324 F.3d at 50. It appears from the District Court's Memorandum and Order that the dispute was centered upon procedural issues relating to the arbitration. JCI Communications, Inc., 2002 WL 2005852. For instance, NetVersant argued that the arbitration panel was biased and that it exceeded its authority. Id. Apparently, the underlying negotiations were not at issue and, indeed, under the applicable standard of review, they would not have been. Thus, the "nucleus of

operative facts" concerned the arbitration process, not the underlying dispute. Because the second element is lacking, the Court need not address the first and third elements. <u>Res judicata</u> does not bar NetVersant's claims.

    4.   <u>Indemnification and Contribution</u>

Finally, the third-party defendants argue that NetVersant has failed to state a cause of action for contribution or indemnification. With respect to the issue of contribution, NetVersant apparently concedes that it is not entitled to statutory contribution under M.G.L. c. 231B § 1 because the third-party defendants and NetVersant are not alleged to be "jointly" liable to the plaintiff. Thus, to the extent Count V alleges statutory contribution, that claim fails.

Massachusetts recognizes a common law right of indemnification in "exceptional" cases where one "party's fault is slight compared with that of [the] party from whom indemnification is sought". <u>Commonwealth of Massachusetts</u> v. <u>Jems of New England, Inc.</u>, 15 Mass.L.Rptr. 65 (Mass.Super. 2002); <u>Cartagena</u> v. <u>Lotus Development Corp.</u>, 14 Mass.L.Rptr. 581 (Mass.Super. 2002). This may well prove not to be an "exceptional" case where such relief is warranted but, on a motion to dismiss for failure to state a claim, that possibility is irrelevant. NetVersant has stated a claim for indemnification.

**ORDER**

In accordance with the foregoing, the motion to dismiss of the third-party defendants (Docket Nos. 53 and 55) is, with respect to NetVersant's claims against Ward and Carroll and insofar as Count V alleges a claim for statutory contribution, **ALLOWED** and is, in all other respects, **DENIED**.

**So ordered.**

                                                       /s/ Nathaniel M. Gorton
                                                       Nathaniel M. Gorton
                                                       United States District Judge

Dated August 3, 2005