UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

JCI COMMUNICATIONS, INC. d/b/a
NETVERSANT-NEW ENGLAND,

        Plaintiff

vs.

INTERNATIONAL BROTHERHOOD OF
ELECTRIAL WORKERS UNION,
LOCAL 103,

        Defendant.

C. A. NO. 02-10537RWZ

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, JCI Communications, Inc. d/b/a NetVersant-New England ("NetVersant"), submits this memorandum of law in support of its opposition to Defendant's Motion for Summary Judgment.

**I.   INTRODUCTION AND OVERVIEW**

This case involves an award by a Joint Conference Committee in response to a grievance filed by Defendant, International Brotherhood of Electrical Workers Union, Local 103 ("Local 103"). The grievance involved the assignment of work by NetVersant to Local 103 as well as to another group of IBEW members in Local 2222. In response to Local 103's filing of a grievance, a Joint Conference Committee convened, allegedly pursuant to the provisions of the Telecommunications Agreement between Local 103 and the Electrical Contractors Association of Greater Boston, Inc. At that hearing, Local 103 argued that NetVersant had violated the Telecommunications Agreement by assigning work to members of Local 2222. NetVersant presented evidence to the Joint Conference Committee showing that a separate and binding

agreement dated October 2, 1998 ("the Jurisdictional Agreement") governed disputes such as the grievance brought by Local 103 concerning the assignment of work by NetVersant.

The Jurisdictional Agreement, which was signed by IBEW International Vice President Frank Carroll, was the final, authorized and binding agreement between Local 103, Local 2222 and NetVersant regarding the assignment of work to members of both locals by NetVersant. It was executed by Frank Carroll, Vice President of the International Brotherhood of Electrical Workers, ("IBEW") and Stephen Gillis on behalf of NetVersant. The agreement was signed based upon explicit and/or implicit representations made by Mr. Carroll to representatives of NetVersant that he had the authority to bind both Local 103 and Local 2222 to the Jurisdictional Agreement. In addition, it was signed in conjunction with a Letter of Assent, dated October 1, 1998. That Letter of Assent provided that NetVersant agreed to the terms of the Telecommunications Agreement between Local 103 and the Electrical Contractors Association of Greater Boston, Inc.

At the heart of the dispute in this case is whether it is the Jurisdictional Agreement, and not the Telecommunications Agreement, which governs the relationship between and among the parties and which binds Local 103 to its terms regarding NetVersant's ability to assign work to members of both Local 103 and Local 2222. Local 103 argues that the Jurisdictional Agreement has no binding effect on it or on Local 2222, thereby leaving the authority in the hands of the Joint Conference Committee to decide its grievance. The dispute over whether the Jurisdictional Agreement is binding on the parties is at the center of this lawsuit, and raises a genuine issue of fact, which alone is grounds for this Court to deny Defendant's premature Motion for Summary Judgment and to grant discovery in this case to allow NetVersant the opportunity to fully reveal the validity of that agreement.

In this case, the Joint Conference Committee decided in favor of Local 103. In reaching its decision, the Joint Conference Committee concluded that the Jurisdictional Agreement was not binding on the parties. Plaintiff asks the Court to vacate that decision on the grounds that the Joint Conference Committee acted in excess of its jurisdiction in deciding this dispute, which is governed by the Jurisdictional Agreement. The Joint Conference Committee also exceeded its authority by invalidating the Jurisdictional Agreement signed by the Vice President of the IBEW International, and adhered to by the parties for almost 3 ½ years. NetVersant also seeks to vacate the award because the Joint Conference Committee members were biased. NetVersant believes that discovery will reveal that one or more of these members had a financial interest in the outcome of this dispute, which they failed to disclose prior to or at the hearing. Additionally, NetVersant seeks to vacate this award on the grounds that the Telecommunications Agreement was the product of apparent misrepresentations by representatives of Local 103, as the Letter of Assent granting NetVersant's bargaining power to the Electrical Contractors Association of Greater Boston, Inc. was signed based upon representations by Local 103 and the IBEW that the Jurisdictional Agreement would be binding and would permit NetVersant to continue to assign work to Local 2222 as well.

At the request of Defendant, this Court permitted Plaintiff to file a dispositive motion before discovery would be permitted in this matter. Defendant now moves for summary judgment. NetVersant requests that this Court deny Defendant's Motion for Summary Judgment, because there are genuine issues of material fact and Defendant is not entitled to summary judgment as a matter of law. Further, NetVersant should have the opportunity to conduct discovery in order to fully develop the facts of this case before summary judgment can be decided.

II.  **ARGUMENT**

A.  **Standard Of Review For Summary Judgment**

A motion for summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . ." Fed. R. Civ. Proc. 56(c); Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvardo, 101 F.3d 223, 227 (1st Cir. 1996). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). If a district court, after canvassing the material presented, "finds that *some* genuine issue of material fact remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." Lipsett v. University of Puerto Rico, 864 F.2d at 895 (emphasis in original); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). The court should "look at the record ... in the light most favorable to ... the party opposing ... the motion ... [and] indulge all inferences favorable to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. den., 425 U.S. 904 (1976); See also, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000) (holding that the court must draw all reasonable inferences in favor of the nonmoving party and that it may not make credibility determinations or weigh the evidence; it must disregard all evidence favorable to the moving party that the jury is not required to believe). Moreover, to prevail on a motion for summary judgment, the moving party must show that there is a complete "absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

**B.     Standard of Review for Arbitration Awards**

Under § 10(a)(1)-(4) of the Federal Arbitration Act ("FAA"), an arbitration award may be vacated by a Federal District Court when: (1) an award is procured by fraud, corruption or undue means, (2) there is evident partiality or corruption in the arbitrators, (3) the arbitrators are guilty of misconduct in refusing to postpone hearings for sufficient cause shown, or in refusing to hear pertinent and material evidence or any other misbehavior which prejudices the rights of any party to the arbitration, and (4) the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final, and definite award is not made. See, 9 U.S.C. §10(a)(1)-(4). The First Circuit plainly recognizes that arbitration awards are reviewable under the Federal Arbitration Act ("FAA"). See e.g., Local Union No. 251 v. Narragansett Improvement Co., 503 F.2d 309, 311-12, (1st Cir. 1974); Kiewit/Atkinson/Kenny v. IBEW, Local 103, 76 F.Supp.2d 77, 79 fn 2 (D. Mass. 1999) (holding that the First Circuit has recognized that arbitration under a collective bargaining agreement may be reviewed under the FAA); and The Providence Journal Company v. The Providence Newspaper Guild, 271 F. 3d 16, 19 fn 3 (1st Cir. 2001) (holding that federal courts rely on FAA cases to inform their analysis under the Labor Management Relations Act).

It is well settled that although an arbitrator's award is generally granted deference by reviewing courts, "an award, even though reasonable, is not automatically entitled to enforcement." Airline Pilots Association International v. Aviation Associates, Inc., 955 F.2d 90, 93 (1st Cir. 1992). Indeed, an arbitrator's award must "draw its essence" from the parties' contract. See, generally, Elkouri and Elkouri, How Arbitration Works, 5th Ed., Bureau of National Affairs (1997) at p. 37; see, also, Airline Pilots Association International v. Aviation Associates, Inc., 955 F.2d at 93; Strathmore Paper Company v. United Paperworkers International Union, 900 F.2d 423, 425 (1st Cir. 1990) (an award that does not draw its essence from the agreement is not entitled to judicial enforcement.); Georgia-Pacific Corp. v. Local 27, United Paperworkers International Union, 864

F.2d 940, 944 (1989) ("the power and authority of an arbitrator is totally derived from the collective bargaining agreement and...he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract.") (quoting United Steelworkers v. Enterprise Wheel and Car, 363 U.S. 593, 597 (1960)).

### C. Defendant Is Not Entitled to Summary Judgment Because The Joint Conference Committee Exceeded its Authority And Plaintiff Did Not Waive Its Objections To Such Conduct

Defendant is not entitled to summary judgment as a matter of law because the Joint Conference Committee exceeded its authority in deciding Local 103's grievance, and because there are genuine issues of material fact related to the Committee's award. The Joint Conference Committee exceeded its authority in four separate ways: 1) it decided an issue governed by a different agreement than the Collective Bargaining Agreement; 2) it decided an issue involving a non-party to the arbitration; 3) it decided the validity of the Jurisdictional Agreement; and 4) it decided whether NetVersant had a current Collective Bargaining Agreement with Local 2222.

First, the Joint Conference Committee exceeded its authority by deciding an issue governed by the Jurisdictional Agreement and not by the Collective Bargaining Agreement under which it was created. Clearly, the Joint Conference Committee was created to decide matters in dispute that are governed by the Collective Bargaining Agreement involving work assigned to members of Local 103. Here, however, the Jurisdictional Agreement -- and not the Collective Bargaining Agreement with Local 103 -- explains the rights and obligations of the parties with respect to the assignment of work to members of Local 2222. The Joint Conference Committee improperly exceeded its authority by overturning the Jurisdictional Agreement, thus effectively barring the assignment of work to IBEW Local 2222 under the Jurisdictional Agreement.

Second, the Joint Conference Committee exceeded its authority as provided in the Collective Bargaining Agreement by deciding an issue that involved a non-party to the

6

arbitration, Local 2222. District Courts may vacate arbitration awards when the arbitrators exceed their powers by binding persons who were not parties to the arbitration. See, General Warehousemen and Helpers Local 767 v. Standard Brands, Inc., 579 F.2d 1282, 1293-95 (5th Cir. 1978) (refusing to enforce an award which conflicted with the rights of employees of a different, non-party union). Arbitrators exceed their powers when they determine the rights and obligations of non-parties to the arbitration. See, Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299, 300-01 (2nd Cir., 1963) cert. den 373 U.S. 949 (holding that the rights of a non-party had been determined by the arbitrator in the course of his award and therefore vacating the award in part as exceeding the power of the arbitrator); Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1026-27 (9th Cir. 1991) (holding that the arbitration panel had no jurisdiction over the third party since the third party did not consent to the arbitration panel's jurisdiction and the district court in its order compelling arbitration did not include the third party).

According to the Collective Bargaining Agreement, which allegedly provided the Joint Conference Committee with its authority to decide the grievance brought by Local 103, only Local 103 and the Electrical Contractors Association are parties to the Agreement. Local 2222 was not a party to that agreement. In addition, Local 2222 was not a party to the hearing held by the Committee. As such, the Joint Conference Committee is without authority to decide the jurisdictional dispute involving NetVersant, Local 103 and Local 2222, as this decision determined the rights and obligations of Local 2222.

Third, the Joint Conference Committee exceeded its authority by reviewing and deciding the validity of agreements other than those pertaining to the Collective Bargaining Agreement. Specifically, the Joint Conference Committee concluded that the Jurisdictional Agreement was

invalid. While Plaintiff disputes this finding, the Joint Conference Committee nevertheless does not have the authority to make findings regarding contracts or agreements outside of the Collective Bargaining Agreement, especially when those agreements involve entities that are not a party to the arbitration itself. See, S.D. Warren Company v. United Paperworkers' International Union, AFL-CIO, Local 1069, 845 F.2d 3, 8 (1st Cir. 1988) (holding award not enforceable because arbitrator acted outside his authority as provided in contract by determining remedies for violations that were not up to arbitrator to determine).

Finally, the Joint Conference Committee exceeded its authority by reviewing NetVersant's agreement with and recognition of Local 2222. The Joint Conference Committee reviewed and decided whether there was a current Collective Bargaining Agreement between NetVersant and Local 2222. See, Joint Conference Committee Decision, attached to Aff. of Feldman at Exhibit 9. Such a review by the Joint Conference Committee and its reliance on its own determination of the validity of any such agreement is beyond the scope of its authority under the Collective Bargaining Agreement.

Despite Defendant's contention to the contrary, Plaintiff did not waive its objections regarding the jurisdiction or authority of the Joint Conference Committee in this matter at the time of the arbitration. Defendant refers to this issue in its brief as one of waiver or consent to the arbitration, which is implied by the conduct of the parties. Here, however, there was no waiver or consent to the jurisdiction of the Joint Conference Committee in this matter, as NetVersant objected to the arbitration through its own conduct. NetVersant put into evidence, at the time of the hearing, the Letter of Assent dated October 1, 1998, and the Jurisdictional Agreement dated October 2, 1998 and then argued that this agreement governed Local 103's grievance. See, Joint Conference Committee Decision, attached to Aff. of Feldman at Exhibit 9.

This conduct clearly represents NetVersant's objection to the Joint Conference Committee's authority in hearing the grievance brought by Local 103. Despite this objection, the Joint Conference Committee continued with the arbitration and acted beyond its authority in evaluating the validity of the Agreement.

Moreover, while Defendant contends that "the dispute at issue here clearly concerned the terms of the Collective Bargaining Agreement," this dispute was plainly governed by the Jurisdictional Agreement. NetVersant, in its dealings with the IBEW International, reached a binding agreement with Local 103 and Local 2222 in the Jurisdictional Agreement of October 2, 1998. See, Jurisdictional Agreement attached to Aff. of Feldman at Exhibit 6. This agreement clarified any jurisdictional issues arising out of the assignment of work by NetVersant to Local 103 and Local 2222. Id. This agreement was signed by NetVersant as a condition precedent to entering into the Telecommunications Agreement with Local 103 and was signed in conjunction with a Letter of Assent dated October 1, 1998. See, Aff. of Feldman at ¶11. The agreement was also signed by IBEW International Vice President Frank Carroll on behalf of the local unions, Local 103 and Local 2222. Further, all three parties to the agreement worked under the terms of that agreement for approximately three and a half years without any objection to the assignment of work by NetVersant to Local 2222, as well as to Local 103. See, Aff. of Feldman at ¶12.

As such, there is a material dispute between the parties as to the validity of the Jurisdictional Agreement, which was explicitly raised at the time of the hearing. There is a genuine issue as to which agreement governed the grievance brought by Local 103, and whether the Joint Conference Committee had the authority to decide this issue. Plaintiff requests that this Court grant discovery on this issue including, but not limited to, depositions of Frank Carroll, Vice President of the IBEW and other representatives of the IBEW, Local 103 and Local 2222 to

allow it the opportunity to reveal the binding effect of the Jurisdictional Agreement. These depositions would allow Plaintiff the opportunity to discover whether the IBEW has entered agreements with companies such as NetVersant on behalf of local unions, has done so in the past, and whether the Vice President of the IBEW has the authority to enter these agreements. See, Bowen v. 39 Broadway Associates, 1992 U.S. Dist. LEXIS 3935, *29-31 (S.D.N.Y., 1992) (in motion to vacate arbitration award on the ground that the arbitrator exceeded its powers by binding a nonparty to its award, court held that it could not determine without discovery whether the arbitrator's ruling impermissibly exceeded his powers by binding third party). Even if this Court should not grant discovery in this matter, Defendant is not entitled to summary judgment because there is a genuine issue as to these material facts.

### D. Defendant Is Not Entitled to Summary Judgment Because the Joint Conference Committee Was Biased and Showed Evident Partiality in Its Award

Summary judgment is also not appropriate as a matter of law because there was evident partiality on the part of the members of the Joint Conference Committee in favor of Local 103. Courts have routinely vacated arbitration awards on the grounds of bias or evident partiality of an arbitrator. See, Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 147-50 (1968); Middlesex Mutual Insurance Co. v. Levine, 675 F.2d 1197, 1201-02 (11th Cir. 1982). Specifically, Courts have found that such factors as "significant business dealings" with one of the parties by an arbitrator or any predisposition by an arbitrator in favor of one party are examples of evident partiality or bias which warrant vacating an award. See, Middlesex Mutual Insurance Co. v. Levine, 675 F.2d at 1202 (vacating award on ground of evident partiality of arbitrator due to repeated and significant business dealings involving thousands of dollars with one of the parties to the arbitration over a period of four to five years, which arbitrator did not reveal).

10

When evaluating bias or evident partiality, Courts have focused not on what the parties knew about the arbitrators before and at the time of the arbitration but what the arbitrators failed to disclose to the parties. See, Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. at 149 (holding that Arbitrators should disclose to the parties any dealings that might create an impression of possible bias, since "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review"). Defendant contends that it is entitled to summary judgment on this issue because Plaintiff, by its Letter of Assent, agreed to decision-making by a panel of union representatives and representatives of other employer-members of the Electrical Contractors' Association. Whether or not this is true, however, it does not mean that NetVersant or Local 103 agreed to resolve their disputes before prejudiced arbitrators. See, Bill Ward Painting Company v. Painter's District Council No. 3, 1990 U.S. Dist. LEXIS 11898, *10 (W.D.M.O. 1990).

In Bill Ward Painting Company, the Court vacated the arbitration award, because union members on the arbitration board were found not to be impartial in that they had brought the grievance initially and because they believed that their job was to protect the union's interest. Id. In that case, the Collective Bargaining Agreement provided for union-appointed members and Builders' Association-members to both comprise the arbitration panel. The Court, however, concluded that the agreement to have these individuals make up the panel did "not signify that the parties agreed to resolve their disputes before prejudiced arbitrators." Id.

Similarly, in International Brotherhood of Electrical Workers, Local Union No. 323 v. Coral Electric Corp., 104 F.R.D. 88, 89-91 (S. Dist. Fl, 1985), the Court evaluated the bias of arbitrators in a case where the collective bargaining agreement provided that the parties were

11

each to select three persons to sit as their representatives on the arbitration panel. Id. The Court stated that certainly "each party does not expect its representatives to be predisposed in favor of its opposition. But each party has every right to expect the other's representatives not to be prejudiced against them, and all parties are entitled to a fair hearing and a result that accords with the labor contract." Id. at 90.

Here, as in the above cases, the Joint Conference Committee was comprised of union members and members of an employer association. See, Joint Conference Committee Decision, attached to Aff. of Feldman at Exhibit 9. By agreeing to the terms in the Collective Bargaining Agreement regarding the Joint Conference Committee, however, NetVersant nevertheless expected the arbitrators to be impartial. NetVersant did not expect or have reason to believe that the arbitrators would be biased in favor of Local 103. NetVersant has since learned that members of the Committee were employed by competitors of NetVersant, and were likely impermissibly biased, which Local 103 disputes. See, Aff. of Feldman at ¶14.

Moreover, NetVersant did not waive any objection to the arbitration by not raising such objection at the time of the hearing. NetVersant possessed insufficient knowledge of facts to indicate improper bias prior to or at time of the arbitration. Further, the arbitrators failed to disclose any possible bias on their part. See, Aff. of Feldman at ¶14; see also, Middlesex Mutual Insurance Co. v. Levine, 675 F.2d 1197 at 1204 (holding that appellees did not waive their objection by not raising it before the decision on the merits because "(1) they possessed insufficient knowledge of facts possibly indicating bias prior to arbitration; (2) the dealings between the arbitrator and the insurers which gave the appearance of partiality were outside the ordinary course of the arbitrator's business; and (3) the affirmative duty of disclosure lies with the arbitrator); Morelite Construction Group v. New York City District Council Carpenters

12

Benefit Funds, 748 F.2d 79, 84 (1984) (vacating an arbitration award due to an undisclosed father-son relationship between the arbitrator and the president of an International labor union, a district of which was a party to the arbitration). Specifically, the arbitrators in this case failed to disclose their individual business relationships with Local 103, failed to disclose their relationship with the company who originally initiated the grievance that Local 103 eventually brought, and failed to disclose their potential business interests against NetVersant as its competitors for teledata and telecommunications work. In addition, NetVersant did not know who the members of the Committee would be until the hearing itself. See, Aff. of Feldman at ¶14. As such, Plaintiff did not waive its objection to the bias of the arbitrators because it was not aware of the apparent extent of the arbitrators' bias at the time.

Even if NetVersant could have known of the bias of the Joint Conference Committee members before the award was rendered, its failure to object on these grounds until after the award is still not fatal to its claim. Early v. Eastern Transfer, 699 F.2d 552, 558 (1st Cir. 1983)(noting that exceptional circumstances, such as egregious fraud, would permit a court to entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies); Sphere Drake Ins. Ltd. v. All American Life Ins. Co., 2002 U.S. Dist. LEXIS 8876, *9 (D. Il 2002) (holding that "to the extent [the arbitrator] understated or misrepresented his relationship with [the Plaintiff], [the Defendant] did not waive its right to raise the issue.")

Finally, Defendant argues that it is entitled to summary judgment on the claim that the arbitrators were biased because the decision by the Joint Conference Committee was "reasonable on its face." As discussed above, the decision by the Joint Conference Committee was manifestly unreasonable as it was beyond the Joint Conference Committee's authority to decide, as it did, on several matters, including the validity of the Jurisdictional Agreement and even the

13

issue raised in Local 103's grievance itself. It is also a dispute of fact as to whether any of the members of the Joint Conference Committee were impermissibly biased against NetVersant as direct competitors. In light of these genuine issues of material fact, summary judgment should be denied, and discovery should be permitted on these issues.

> E.  **Defendant Is Not Entitled to Summary Judgment Because the Collective Bargaining Agreement Under Which the Joint Conference Committee Acted Was A Product of Apparent Misrepresentations by Representatives of Local 103 to NetVersant**

Summary judgment is also not appropriate in this case because the Collective Bargaining Agreement between Local 103 and NetVersant under which the Joint Conference Committee assumed authority was the product of misrepresentations. As described above, NetVersant contracted with Local 103 and Local 2222 in the Jurisdictional Agreement of October 2, 1998. See, Jurisdictional Agreement, attached to Aff. of Feldman at Exhibit 6. At the time that agreement was executed, members of Local 103, and more importantly, Frank Carroll, Vice President of the IBEW, represented to NetVersant that Mr. Carroll had the authority to bind Local 103 and Local 2222 with his signature on the jurisdictional agreement. See, Aff. of Feldman at ¶9. NetVersant relied on that representation in executing the Letter of Assent of October 1, 1998 and the Jurisdictional Agreement of October 2, 1998. See, Aff. of Feldman at ¶9.

Whether or not the Letter of Assent was executed before or after the Jurisdictional Agreement, NetVersant relied on representations that the Jurisdictional Agreement was valid based on the signature of Mr. Carroll on behalf of the local unions and IBEW when it executed that agreement and the Letter of Assent. See, Aff. of Feldman at ¶9. In addition, the letter of Paul Ward, Local 103 Business Manager, to Stephen Gillis, NetVersant President, dated March 23, 1998, clearly memorializes the representations made by Local 103 in regards to the Letter of

Assent and Jurisdictional Agreement. <u>See</u>, letter dated March 23, 1998 from Paul Ward to Stephen Gillis, attached to Aff. of Feldman at Exhibit 5. In that letter, Mr. Ward writes that Local 103 "will continue to work with Local 2222 in order to formalize a jurisdictional agreement in line with our previous discussions and would be willing to sign an Assent form with a side letter on the jurisdictional guidelines." <u>Id</u>. Later, at the time that these two documents were executed, Mr. Carroll represented that he had the authority to execute the Jurisdictional Agreement on behalf of the two unions, Local 103 and Local 2222. <u>See</u>, Aff. of Feldman at ¶9. NetVersant reasonably relied on these clear representations in executing the documents and entering into the Collective Bargaining Agreement with Local 103. <u>Id</u>.

Local 103's attempt to now repudiate the Jurisdictional Agreement is disingenuous at best. Local 103 worked under the terms of that agreement for three and a half years with no objection, thereby expressly and impliedly assenting to its validity and terms. <u>See</u>, Aff. of Feldman at ¶12. In addition, the Constitution for the IBEW provides that Mr. Carroll, as an International Vice President, could be authorized by the International President to enter agreements with companies to cover the entire jurisdiction of the IBEW. <u>See</u>, Constitution of IBEW at Article IV, Sec. 3(l), attached to Aff. of Feldman at ¶7. As described above, to the extent that Local 103 now contends that the Jurisdictional Agreement was not valid because it was not signed by Local 103 or Local 2222, or by the International President, there is a dispute of material fact, and NetVersant is entitled to discovery to reveal whether that agreement was in fact binding and whether or not Mr. Carroll was misrepresenting his authority at the time he signed the agreement.

### F. Defendant's Motion for Summary Judgment Should Be Denied Or, In The Alternative, Plaintiff Should Be Entitled To A Continuance To Permit Discovery To Be Had Under Fed. R. Civ. P. 56(f)

For the reasons stated above, Local 103's Motion for Summary Judgment should be denied. In the alternative, NetVersant should be permitted to conduct discovery pursuant to Fed. R. Civ. P. 56(f), before the motion is decided on the merits. Fed. R. Civ. P. 56(f) permits discovery in a case such as this where NetVersant cannot fully present all facts needed to justify its opposition to the motion for summary judgment. See, Fed. R. Civ. P. 56(f). "The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment." Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure §2740 (1998). Courts have held that this rule should be applied with "a spirit of liberality." Id. (citing to Buchanan v. Stanships, Inc., 744 F.2d 1070, 1074 (5th Cir. 1984)).

NetVersant attaches the Affidavit of Andrew C. Pickett, counsel for NetVersant, which explains the grounds, under Rule 56(f), as to why this case requires discovery. Specifically, summary judgment is premature in this matter as NetVersant has not been given an opportunity to conduct discovery. See, Affidavit of Pickett at ¶3. As a result, NetVersant cannot yet fully present facts regarding the validity of the Jurisdictional Agreement, the bias of the members of the Joint Conference Committee, and the conduct of the IBEW and Local 103 in misrepresenting facts to NetVersant. Id.

NetVersant expects that discovery, such as the depositions of Frank Carroll and other officials of the IBEW, Local 103, and Local 222, will reveal that the Jurisdictional Agreement was binding on Local 103, that the Letter of Assent was executed by NetVersant based upon misrepresentations by members of Local 103, and that the IBEW knew and acted in such a manner that the Jurisdictional Agreement was in fact valid. NetVersant further expects discovery to reveal the bias of the arbitrators in this case, who apparently had a financial interest

16

in the outcome. Federal Courts have permitted discovery in similar cases on these grounds. See, Frere v. Orthofix, 2000 U.S. Dist. LEXIS 17467, *21-24 (S.D.N.Y., 2000) (discovery allowed on issues of whether arbitrator exceeded her authority because these issues were of "at least some cloudiness that may impact on a resolution of the vacatur motion"); Sanko v. Cook Industries, Inc., 495 F.2d 1260, 1263 (2nd Cir. 1973) (remanding case involving motion to vacate arbitration award on the basis of arbitrator partiality "so that an evidentiary hearing may be held and the full extent and nature of the relationships at issue may be ascertained"). Therefore, NetVersant requests that this Court allow it the opportunity to conduct discovery, at the very least, if it does not deny Defendant's motion outright.

**Local 103 is Not Entitled to Attorneys Fees**

Attorneys' fees are plainly not appropriate in this case as NetVersant has clearly raised legitimate issues that are in dispute and that raise doubt as to the appropriateness of the Joint Conference Committee's award.

## III. CONCLUSION

For all the foregoing reasons, the Court should deny Local 103's motion for summary judgment and/or should grant NetVersant discovery in this matter in regards to the disputed facts presented.

Respectfully submitted,

JCI COMMUNICATIONS, INC. d/b/a
NETVERSANT-NEW ENGLAND,

_/s/ Andrew C. Pickett_
Herbert L. Turney, BBO No. 504980
Andrew C. Pickett, BBO No. 549872
Richard W. Paterniti, BBO No. 645170
JACKSON LEWIS LLP
One Beacon Street, Suite 3300
Boston, MA 02108
Phone: (617) 367-0025; Fax: (617) 367-2155

Dated: August 16th, 2002

### CERTIFICATE OF SERVICE

This is to certify that on this 16th day of August, 2002, a copy of the foregoing document was served upon Indira Talwani, Segal, Roitman & Coleman, 11 Beacon Street, Suite 500, Boston, MA 02108, by first class mail, postage pre-paid.

_/s/ Andrew C. Pickett_
Jackson Lewis LLP

18