UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, Administrator, <br><br> Plaintiff, <br> v. <br><br> NETVERSANT-NEW ENGLAND, INC., et al., <br><br> Defendants, <br> and <br><br> NETVERSANT-NEW ENGLAND, INC., <br><br> Third-Party Plaintiff, <br> v. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO-CLC, et al., <br><br> Third-Party Defendants. | Civil Action No. 04-10559NMG |

**OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTIONS FOR RECONSIDERATION**

NetVersant-New England, Inc. ("NetVersant") opposes the motion for reconsideration of this Court's August 3rd Memorandum & Order ("Order") for the reason that none of the criteria justifying reconsideration is present here, and the original Order was correct in the respects challenged.

**ARGUMENT**

**1. There is No Justification for Reconsideration**

A Court should reconsider one of its orders only under "extraordinary circumstances," none of which is present here. A motion for reconsideration should be granted only upon a showing that (1) the law has changed since the original order was

entered; (2) new evidence has been discovered since then; or (3) the original order was fundamentally affected by a clear error of law or would work a manifest injustice. *See Davis v. Lehane*, 89 F. Supp. 2d 142 (D. Mass. 2000):

> A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment. . .The Supreme Court, however, has admonished that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). . .[A] court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.

89 F. Supp. 2d at 147 (internal citations omitted).

A motion for reconsideration "cannot be used as a vehicle to relitigate matters already litigated and decided upon by the Court. . .Hence, this vehicle may not be used by the losing party 'to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier.'" *Vega v. Hernandez*, No. 03-1902 (DRID), 2005 U.S. Dist. LEXIS 16644 at *4 (D.P.R. Aug. 9, 2005) (internal citations omitted). The court in *Vega* went on to state that:

> [I]n the interest of finality, at least at the district court level, motions for reconsideration should be granted sparingly because the parties should not be free to relitigate issues a court has already cited. . .'Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly.'

2005 U.S. Dist. LEXIS 16644 at *8 (internal citations ommited).

Here, there has been no intervening change in the law, new evidence discovered, or a clear error of law in the Court's Order. The Third-Party Defendants International Brotherhood of Electrical Workers ("International" or "IBEW") and Local 103 of the IBEW ("Local 103") (collectively, "Third-Party Defendants" or "unions") seek to sway

2

the Court with arguments on *res judicata* and indemnification that they previously presented and that the Court has already rejected.  The unions' blatant attempt at relitigating issues the Court has already decided on should be denied.  *See Davis,* 89 F. Supp. 2d at 148 ("'A motion for reconsideration is not a means by which parties can rehash previously made arguments'. . .[and] 'is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court.'") (internal citations omitted).

### 2. The Original Order Was Correct

#### a. Res Judicata

The Third-Party Defendants assert in their motions for reconsideration the same arguments they made in their original papers, which this Court considered and rejected.  The unions' main theme is that NetVersant should have raised its third-party claims of misrepresentation in the 2002 Federal Court action, wherein NetVersant, pursuant to 29 U.S.C. § 185, sought to vacate a labor arbitration award issued pursuant to the grievance and arbitration procedures contained within the multi-employer Telecommunications Agreement between the Boston Chapter, National Electrical Contractor's Association, and Local 103.  *See JCI Communications, Inc. d/b/a/ NetVersant-New England v. International Brotherhood of Electrical Workers, Local 103*, No. 02-10537-RWZ, 2002 U.S. Dist. LEXIS 16283 (D. Mass. Aug. 29, 2002), *aff'd* 324 F.3d 42 (1st Cir. 2003).  However, NetVersant's Third-Party Complaint seeks damages in the nature of reimbursement of amounts it is held liable to pay in respect of the claims first brought against it by the Local 103 Funds in 2004, and *not* in the 2002 Federal Court action.

Indeed, the Court has already ruled that the Third-Party Complaint and 2002 Federal Court action do not arise out of a common nucleus of operative facts.

Even if NetVersant had wanted to raise the issue of the unions' misrepresentations during the 2002 Federal Court action, it could not have done so. The IBEW was not a party to the Telecommunications Agreement and therefore could not have been joined as a party-defendant in the 2002 Federal Court action. Furthermore, as the Court stated in its Order, the dispute was centered around procedural issues relating to the arbitration, and the underlying negotiations with Local 103 and the IBEW were not an issue. Additionally, under the applicable standard of review, the underlying negotiations could not have been a relevant issue.

The Third-Party Defendants cite to *Rudell v. Comprehensive Account Corp.*, 802 F.2d 926 (7th Cir. 1986), *cert. denied.*, 480 U.S. 907 (1987), and *In re Iannochino*, 242 F.3d 36 (1st Cir. 2001), for the proposition that the third-party action is barred by *res judicata.* However, those two cases are inapposite, as in those cases the plaintiffs had never pursued a prior action against the defendants. The courts in *Iannochino* and *Rudell* considered the two narrow exceptions to the principle that the failure to interpose a counterclaim or defense in a prior action does not necessarily act as a bar to later actions. The first exception is when the plaintiff, as a defendant in a prior action, had a related compulsory counterclaim. "The second exception is applicable when the 'relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.' Restatement (Second) of Judgments § 22(2)(b) (1982)." *Iannochino*, 232 F.3d at 42. *See also Rudell*, 802 F.2d at 928.

4

The First Circuit, in *In re Iannochino*, found that the second exception was applicable and therefore went on to analyze the claims and facts based on the usual *res judicata* principles:

> Having determined that res judicata is generally applicable in this situation, we next evaluate whether the specific res judicata requirements are present. For the fee award to bar the Iannochinos' malpractice claim, there must be "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Mass. School of Law v. American Bar Assoc.*, 142 F.3d 26, 37 (1st Cir. 1998). The Iannochinos contend that each of these requirements is absent.

242 F.3d at 43.

In the case at hand, NetVersant had previously filed an action against Local 103 and, therefore, the principles of *res judicata* were generally applicable to NetVersant's third-party claim. However, as already argued and determined by the Court, NetVersant's claims are not barred under the principles articulated in such cases as *Mass School of Law*.

Assuming, *arguendo*, that the Court were to find the analysis from *Iannochino* and *Rudell* to have some application here, successful prosecution of the third-party action would in no way nullify or impair the rights from the 2002 Federal Court action. NetVersant, in its third-party lawsuit for indemnification against the unions, does not seek to abrogate the arbitration award, impair rights established in the arbitration, or nullify the judgment in the 2002 Federal Court action. As NetVersant stated in its opposition to the Third-Party Defendants' motions to dismiss, the Third-Party Complaint seeks indemnification based on claims brought against it in 2004, not the 2002 Federal Court action. As there is no potential in the Third-Party lawsuit to nullify the ruling or

5

impair the rights established in the 2002 Federal Court action, even if *Rudell* and *Iannochino* were applicable, the exceptions they set forth would not apply to the situation at hand.

### b.   Indemnification

The Third-Party Defendants also seek reconsideration of the Court's ruling recognizing that NetVersant has stated a claim for indemnification. Again, the unions do not present any new evidence, change in controlling law, or clear error of law or manifest injustice. They contend – exactly as they did in their joint reply brief in support of their motions to dismiss – that the common law right of indemnification applies only when the parties are joint tortfeasors. The Court has already rejected this argument, and the unions present nothing new in support of it. Instead, the party exposed to liability must show that this exposure is due largely to the misconduct of another party. *See, e.g., Omega Healthcare Investors v. First American Title Insurance Co.*, No. 01-11123-RWZ, 2003 U.S. Dist. LEXIS 321 at *8 (D. Mass. Jan. 10, 2003) (denying motion to dismiss for failure to state a claim for common law indemnification, this Court stated that "[c]ommon law indemnification is allowed when 'a party is exposed to liability because of the negligence of another. The exposed party, usually only passively negligent itself, is deemed to be constructively negligent and therefore vicariously or derivatively liable.'") (internal citation omitted); *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 387 (N.H. 1974) (a right to indemnity arises in actions in tort "'where one who, without [active] fault on his part, has been compelled by a legal obligation to pay an injured party for injuries caused by active fault of another.'") (internal citation omitted). NetVersant has alleged that any fault it may have in the lawsuit brought against it in 2004 is slight

compared to that of the Third-Party Defendants, upon whose misrepresentations as to the Jurisdictional Agreement NetVersant relied and caused NetVersant to be exposed to significant claims.  As the Court stated in its Order, while the third-party action may or may not prove to be an "exceptional" case in which NetVersant's fault is slight in comparison with that of the Third-Party Defendants, this does not matter for purposes of deciding a motion to dismiss.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny Third-Party Defendants' Motions For Reconsideration.

Dated:  August 25, 2005

Respectfully submitted,
NETVERSANT-NEW ENGLAND, INC.

By its attorneys,
/s/ Steven A. Kaufman
Steven A. Kaufman (BBO # 262230)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000